UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN BERRY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 3:08-CV-0248-B |
| v. | § | |
| | § | |
| INDIANAPOLIS LIFE INSURANCE | § | |
| COMPANY, et al., | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION

Having considered Defendants Economic Concepts, Inc., ECI Pension Services, LLC, and Kenneth R. Hartstein's (collectively, "Consultant Defendants") Motion to Dismiss and Brief in Support (docs. # 51-52), Plaintiffs' Consolidated Response, Consultant Defendants' Reply, and all arguments in support and opposition, the Court GRANTS the Motion as set forth herein.

## I.

## BACKGROUND

The Court takes its factual account from Plaintiffs' First Amended Complaint filed May 23, 2008. Plaintiffs in this matter are generally individual professionals, such as doctors, dentists, and construction company owners, and companies they operate. (Compl. ¶¶ 5-38). Plaintiffs' claims concern certain defined benefit plans, funded by life insurance policies, ostensibly designed and marketed as plans under Section 412(i) of the Internal Revenue Code. (Compl. ¶ 1). Plaintiffs allege that the plans they set up and funded with life insurance policies were actually tax shelters that Defendants knew or should have known would be scrutinized by the IRS and deemed abusive

- 1 -

and illegal. (Compl. ¶¶ 59-60). Plaintiffs further allege that four insurance companies, two consultant companies, one individual consultant, and a law firm conspired to market these plans and to sell the life insurance policies used to fund them by making fraudulent or negligent misrepresentations about the tax benefits of the plans and without disclosing any of the risk that the IRS would deem or had deemed the plans illegal.[1] (Compl. ¶¶ 59, 73-74).

In the late 1990's Consultant Defendants, with assistance from the law firm of Bryan Cave, designed a defined benefit plan, called the Pendulum Plan, which purported to be compliant with section 412(i). (Compl. ¶ 69). In September 1999, the law firm of Bryan Cave, LLP issued a legal opinion that stated that the Pendulum Plan "more likely than not" would be a qualified plan under section 412(i) and "should not be considered a tax shelter." (Compl. ¶ 70). The legal opinion also found that the life insurance policy issued by Defendant Indianapolis Life Insurance Company ("Indianapolis Life") "more likely than not…can meet the requirements of section 412(i) of the Code" when used as "the funding vehicle" for the defined benefit plans being developed by the Consultant Defendants. (*Id*). After receiving the Bryan Cave opinion, Consultant Defendants worked with the Insurance Defendants to further develop and market the Pendulum Plan and other similar plans. (Compl. ¶ 71).

In the early 2000's the IRS began to scrutinize certain defined benefit plans under section 412(i), giving speeches warning that the IRS intended to take steps to prevent the misuse of

---

[1]The four insurance company defendants, Indianapolis Life Insurance Company, Hartford Life and Annuity Insurance Company, Pacific Life Insurance Company, and American General Life Insurance Company are referred to collectively herein as the "Insurance Defendants." Defendants ECI Pension Services, LLC, Economic Concepts, Inc., and Kenneth Hartstein are referred to collectively herein as the "Consultant Defendants."

insurance products in 412(i) plans. (Compl. ¶ 195). The IRS focused on insurance policies designed to have low cash surrender values and high premiums for a fixed number of years as well as the sale of those policies at artificially suppressed prices. (*Id.*). Consultant Defendants, along with the rest of the Defendants, were aware of IRS announcements and notices about 412(i) plans at the time they were marketing the Pendulum Plan (Compl. ¶ 72). At least by December 2002, Consultant Defendants knew about the IRS' concerns about 412(i) plans funded by insurance policies and had prepared a statement downplaying the scrutiny. (Compl. ¶ 197).

Insurance Defendants' agents failed to disclose the IRS' concerns about the 412(i) plans, as funded with life insurance policies, that they were selling to Plaintiffs. (*Id.*). Relying both on this lack of information and on the allegedly identical representations of Insurance Defendants' agents regarding the suitability of the defined benefit plans being marketed as section 412(i) plans, each of the Plaintiffs established defined benefit plans and purchased the policies underlying the plans from one of the Insurance Defendants. (Compl. ¶¶ 80, 88, 96, 104, 112, 120, 128, 136, 144, 152, 160, 168, 176, 184, 192). Each Plaintiff who is an entity paid premiums on those policies and recorded corresponding federal income tax deductions for those payments. (Compl. ¶¶ 80-81, 88-89, 96-97, 104-105, 112-113, 120-121, 129, 137, 145, 153, 161, 169, 177, 185, 193).

In February 2004, the IRS issued a press release, two revenue rulings, and proposed regulations regarding abusive tax shelters "involving specially designed life insurance policies in retirement plans, section '412(i) plans.'" (Compl. ¶ 201). The IRS's proposed regulations, finalized in August 2005, indicated that the issuance of life insurance policies greatly in excess of the permissible death benefit under a 412(i) plan is a "listed transaction" that is an abusive tax shelter. (Compl. ¶¶ 200-201). The IRS stated that a plan holding such policies cannot be a 412(i) plan.

(Compl. ¶ 201). In a 2004 revenue ruling, the IRS indicated that funding a 412(i) plan with a different type of insurance policy for highly compensated employees compared with other employees will result in disqualification of the plan. (Compl. ¶ 202). In 2005, the IRS began a nationwide audit directed at 412(i) plans and has commenced or is likely to commence audits of Plaintiffs. (Compl. ¶ 203).

Although Plaintiffs assert several claims against Insurance Defendants, including a claim for fraud, the only claim asserted against Consultant Defendants is Count One of the Complaint for conspiracy. (Compl. ¶¶ 204-210). Consultant Defendants move to dismiss the conspiracy claim arguing that Plaintiffs fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II.

## ANALYSIS

**A. Legal Standard**

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004). A 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, __, 127 S. Ct. 1955, 1974 (2007). To survive a 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions." *Id.*, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level [. . .] on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)[.]" *Southwestern Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 127 S.Ct. at 1965). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

**B.     Choice of Law**

Because all claims in this matter are state law claims, the Court's jurisdiction is based on diversity. 28 U.S.C. §1332. Thus, the Court applies Texas state substantive law, including precedent on choice of law, and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).

In order to evaluate whether a claim for conspiracy has been stated, as an initial matter, the Court must determine which state's substantive law applies to Plaintiffs' claim of conspiracy. The characterization of a claim is controlled by the law of the forum state, in this case Texas. *Fahs v. Martin*, 224 F.2d 387, 396-97 (5th Cir. 1955). In Texas, "[c]ivil conspiracy, generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, might be called a derivative tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). In other words, a conspiracy is not an end to itself--one must conspire to commit some underlying tort.

The Texas Supreme Court applies the "most significant relationship" test as set forth in the Restatement (Second) of Conflict of Laws to decide choice of law issues. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). For an issue in tort, such as the conspiracy claim, the

court applies the general choice of law principles to determine which state has the most significant relationship to the occurrence and the parties with respect to that issue. Restatement (Second) Conflict of Laws § 145(1). This analysis includes an evaluation of (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the residence and/or place of incorporation of the parties, and (4) the place where the relationship between the parties is centered. *Id.* at § 145(2). The factors are evaluated qualitatively as some factors are more important than others depending on the state policies implicated by the claim. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421(Tex. 1984). In tort cases, "the applicable law will usually be the local law of the state where the injury occurred." *Id.* at § 156(2).

Although Plaintiffs assume in their briefing that Texas law applies to their conspiracy claim, the Court finds that the conclusory allegations in the Complaint do not fully allow it to determine choice of law for the conspiracy claim. With respect to the first and third factors used in evaluating choice of law, Plaintiffs are currently residents of many different states, including California, Texas, Arizona, Utah, Washington, Colorado, Wisconsin, and Illinois. Defendants are currently either residents of, or are incorporated in, Indiana, Connecticut, Illinois, California, Texas, Arizona, and Nebraska. Other alleged members of the conspiracy (although unnamed as Defendants in this suit) are residents of Arizona. The alleged injury in this case is identical for each Plaintiff--the funding of a defined benefit plan using life insurance policies purchased from one of the four Insurance Defendants in a manner that is not legally allowed for a 412(i) plan in compliance with the Internal Revenue Code. *See, e.g.*, Compl. ¶¶ 80-82, 88-90. Thus, the injuries appear to have taken place in each of the resident states, as there are no allegations that any Plaintiff left its resident state to enter

into the life insurance policies or lived in another state at the time of the transaction.[2] Moreover, it can be assumed from the state of residency that premium payments made on the policies originated from each of the states listed above. Thus, under the Restatement followed by Texas state courts, it appears that with respect to the Indianapolis Life Plaintiffs, the applicable law would tend to be the law of each of California, Texas, Arizona, Utah, Washington, Colorado, Wisconsin, and Illinois.

However, because qualitative evaluation of the choice of law factors is required, it is insufficient to merely conclude that laws of the states in which injuries most likely occurred are necessarily the appropriate choices. In fact, based on the instant allegations, the residence of Defendants should be weighed as heavily as that of the Plaintiffs. This derivative tort claim is for a wide-spread conspiracy that is alleged to have resulted in intentionally uniform, false marketing materials and directions for agents to make uniform misrepresentations verbally and in writing to prospective life insurance policy purchasers like Plaintiffs. *See* Compl. ¶¶ 59, 69, 74. The place(s) where the Defendants had their meeting of the minds and/or committed overt acts in furtherance of their plans, including where they developed the allegedly identical materials and directions, is central to the conspiracy claim.

Although consideration of the wide-spread and uniform nature of the allegedly tortious acts is encompassed by the second and fourth factors of the Texas choice of law test, analysis of those factors presents a substantial obstacle considering the dearth of specific allegations concerning the

---

[2]It is certainly possible that Plaintiffs were not residents of the same states in which they currently reside during the time the alleged wrongs were committed--a factor that is important under the Restatement evaluation of choice of law. However, given the similarity of the law on the elements of conspiracy among the states, particularly with respect to the requirement of the element central to the Court's analysis herein, at this time the residency of a particular Plaintiff does not appear to affect the analysis with respect to the conspiracy claim.

conspiracy claim. It is entirely unclear from the allegations where the conspiratorial acts that caused the alleged injury took place. It is unclear where the parties allegedly communicated in forming or carrying out their alleged conspiracy. Nor is it any clearer where the relationship among the parties is centered. Despite its inability to reach a final determination on the choice of law issue with respect to conspiracy, if the laws of each of the resident states of Plaintiffs and Defendants are substantially identical, the Court can still evaluate the legal viability of that claim. *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 (5th Cir. 2001) (evaluating motion to dismiss under the laws of both potentially applicable states).

To state a claim for conspiracy under Texas law, Plaintiffs must allege facts to support each of the following elements: (1) Consultant Defendants were members of a combination of two or more persons; (2) the object of the combination was either to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means; (3) the members of the combination had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) Plaintiffs suffered injuries as a proximate result of the wrongful acts. *Tri v. J.T.T.*, 162 S.W3d 552, 556 (Tex. 2005). The laws of the other potentially applicable states are in accord.[3] As noted above, conspiracy is not a stand-alone claim, it depends on participation in some underlying tort. In Texas, because conspiracy requires specific

---

[3]*See Wells Fargo Bank v. Arizona Laborers, Teamsters, & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36(Ariz. 2002); *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (Ind. 1966); *Corbit v. J.I. Case Co.*, 424 P.2d 290, 295 (Wash. 1967); *Williams v. Maislen*, 165 A. 455, 456 (Conn. 1933); *Adcock v. Brakegate, Ltd.*, 654 N.E.2d 888, 894 (Ill. 1994); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457, 459(Cal. 1994); *Thomas ex rel. Gramling v. Mallett*, 701 N.W.2d 523, 566(Wis. 2005); *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1064 (Utah 2002); *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989); *Eicher v. Mid America Fin. Inv. Corp.*, 702 N.W.2d 792, 805(Neb. 2005).

intent, one cannot agree or conspire to be negligent. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996).[4] Thus, the Court views the conspiracy claim as a claim of conspiracy to defraud.

**C.     Plaintiffs' Allegations**

The Consultant Defendants contend that Plaintiffs' allegations of civil conspiracy should be dismissed since "Plaintiffs' First Amended Complaint fails to plead any facts demonstrating any agreements reached between the [Consultant Defendants] and the other Defendants nor do Plaintiffs allege any facts regarding the details of the alleged joint enterprise." Consul. Def. Mot. at 2. (doc. # 51). In response, Plaintiffs argue that they "allege multiple facts showing an agreed collaboration among the Consultant Defendants and Insurance Defendants to design and market special insurance policies to fund abusive 412(i) plans." Pl. Consol. Resp. at 55. (doc. # 65).

Having carefully considered the First Amended Complaint, the parties' arguments and applicable law, the court determines that Plaintiffs have failed to plead a viable claim for conspiracy under Rule 8(a) and *Twombly*.[5] Plaintiffs' Complaint is devoid of any factual allegations supporting their formulaic recitation of at least one of the legal elements of conspiracy. The only remotely specific allegation of an agreement between Consultant Defendants and any Defendant is the

---

[4]Although other potentially applicable state law may be to the contrary, it is of no ultimate import as the only other tort alleged by Plaintiffs is negligent misrepresentation based on identical facts to those of their conspiracy claim. The same reasoning discussed herein with respect to conspiracy to defraud would apply to a conspiracy to commit negligent misrepresentation.

[5]While the Court agrees with the Consultant Defendants that Plaintiffs' First Amended Complaint is deficient under Rule 8(a) and *Twombly*, the Court is mindful that *Twombly* involved a claim under Section 1 of the Sherman Act, whereas this case concerns a state law civil conspiracy claim. Accordingly, the court rejects the Consultant Defendants' attempt to analogize the "parallel conduct" allegations, held insufficient in *Twombly*, with Plaintiffs' allegations in this case. See Mot. to Dismiss at 5-6 (doc. # 52). *See generally Twombly*, 127 S.Ct. at 1966 ("when allegations of parallel conduct are set out in order to make a section 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.").

allegation that "Consultant Defendants…proceeded to work together with the Insurance Defendants to further develop and market this purported 412(i) arrangement…" (Compl. ¶ 71). Read as broadly as possible, the Court cannot say that an allegation of "working together" satisfies the requirement of pleading a meeting of the minds on a plan to commit unlawful acts or acts in furtherance of an unlawful purpose. Nor is it clear whether Plaintiffs allege a conspiracy between Consultant Defendants and any particular Insurance Defendant or every Insurance Defendant, as there are no facts alleging who was involved, what the interaction was, when it occurred, what actions were decided upon, what overt acts Consultant Defendants committed in the context of the conspiracy, or when or how any meeting of the minds occurred between the Consultant Defendants and any other Defendant. *Cf. Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) (dismissing conspiracy claim "in the absence of factual allegations from which a conspiracy…can reasonably be inferred."). The Court does not imply that the conspiracy allegations necessarily have to meet the particularity standards of Rule 9(b), as no argument has been made as to the applicable standard. However, the allegations must be at least a "short and plain statement" under Rule 8(a) to enable Consultant Defendants to develop a response, not mere conclusions.

Mindful that the conspiracy being pled is a conspiracy to commit fraud, the Court finds no factual support for the element that Consultant Defendants had a meeting of the minds with any other Defendant to do anything in furtherance of committing fraud. The only allegations about an agreement between the Insurance Defendants and Consultant Defendants are conclusions of the type to which Consultant Defendants would have no idea where to begin responding. *See Twombly*, 127 S.Ct. at 1970 n.10. *See, e.g.*, Pls.' Resp. Br. at 52-53 (notes 285-286, 290-293 and accompanying text using language such as "defendants devised a scheme," "Insurance Defendants conspired with

each other [and] Consultant Defendants," and "Defendants had a meeting of the minds on the object of...this conspiracy"). *See also Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (affirming 12(b)(6) dismissal finding that a complaint alleging that coaches "encouraged and/or allowed" a student's behavior did not allege specific facts to show an agreement as to that behavior between the coach and the student).

In *Twombly*, the Court noted that but for the parallel conduct allegations, it doubted that the complaint met the Rule 8 notice requirements as it lacked mention of "specific time, place, or person involved in the alleged conspiracy." 127 S.Ct. at 1970 n. 10. The only references in the instant Complaint to the alleged time frame in which Defendants conspired are the legally insufficient "in the late 1990's" and some time after September 1999. (Compl. ¶¶ 59, 71). A period of several years is not definitive enough in the context of the conspiracy claim as alleged to put any defendant on sufficient notice to be able to defend. The conspiracy claim identifies no specific time or place in which any meeting of the minds between Defendants occurred and no individuals from any Defendant who allegedly participated in such meetings, conversations, or communications. Plaintiffs have not pled the factual specificity to push their claim above the speculative level from conceivable to plausible. *Twombly*, 127 S.Ct. at 1974; *cf. Love Terminal Partners, LP v. City of Dallas, Texas*, 527 F. Supp.2d 538, 554 (N.D. Tex. 2007) (dismissing conspiracy claim under 12(b)(6) in antitrust case for insufficient factual pleading where allegations included that the partes "were already secretly discussing," "Defendants had the parameters of their illegal combination in place," and "Defendants had agreed the [object of their conspiracy] should be destroyed."). As such, Count

One alleging civil conspiracy is dismissed.[6]

## III.

## CONCLUSION

The Court does not take dismissal of a claim without reaching its merits lightly. Thus, a plaintiff will be given the opportunity to amend a complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). In this case, Plaintiffs also specifically requested the opportunity to replead. Pls.' Resp. Br. at 108.

Thus, for the reasons discussed above, Defendants Economic Concepts, Inc., ECI Pension Services, LLC, and Kenneth R. Hartstein's Motion to Dismiss is GRANTED as follows. Count One is dismissed without prejudice to repleading. If Plaintiffs are able to replead this Count to overcome the grounds stated herein for dismissal, they should do so by no later than twenty (20) days from the date of this Memorandum Opinion. Further, any repleading shall be accompanied by a synopsis of no more than five (5) pages, explaining how the amendments overcome the grounds stated herein for dismissal. Should Plaintiffs replead, the Consultant Defendants are hereby granted leave to file a response to Plaintiffs' synopsis. Any such response shall not exceed five (5) pages and must be filed

---

[6]The Court notes that Consultant Defendants adopted the Reply of Indianapolis Life in support of its Motion to Dismiss as their Reply in Support of the instant motion. (Doc #86). To the extent that the Indianapolis Life Reply contains arguments not made by Consultant Defendants in their original Motion and Brief, the Court will not, and did not, consider those arguments made by Consultant Defendants for the first time in a reply. *See, e.g., Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991).

within ten calendar days of the repleading.  No further briefing will be permitted.

**SO ORDERED.**

Dated: February 19, 2009

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE