# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN BERRY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 3:08-CV-0248-B |
| v. | § | |
| | § | |
| INDIANAPOLIS LIFE INSURANCE | § | |
| COMPANY, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Having considered Defendant Indianapolis Life Insurance Company's ("Indianapolis Life")
Motion to Dismiss and Brief in Support (doc. # 47), Plaintiffs' Consolidated Response, Indianapolis
Life's Reply, and all arguments in support and opposition, the Court GRANTS the Motion as set
forth herein.

## I.

## BACKGROUND

The Court takes its factual account from Plaintiffs' First Amended Complaint filed May 23,
2008. Plaintiffs in this matter are generally individual professionals, such as doctors, dentists, and
construction company owners, and companies they operate. (Compl. ¶¶ 5-38). Plaintiffs' claims
concern certain defined benefit plans, funded by life insurance policies, ostensibly designed and
marketed as plans under Section 412(i) of the Internal Revenue Code. (Compl. ¶ 1). Plaintiffs
allege that the plans they set up and funded with life insurance policies were actually tax shelters
that Defendants knew or should have known would be scrutinized by the IRS and deemed abusive

and illegal. (Compl. ¶¶ 59-60). Plaintiffs further allege that four insurance companies, two consultant companies, one individual consultant, and a law firm conspired to market these plans and to sell the life insurance policies used to fund them by making fraudulent or negligent misrepresentations about the tax benefits of the plans and without disclosing any of the risk that the IRS would deem the plans illegal.[1] (Compl. ¶¶ 59, 73-74).

In September 1999, the law firm of Bryan Cave, LLP issued a legal opinion that the life insurance policy issued by Indianapolis Life "more likely than not...can meet the requirements of section 412(i) of the Code" when used as "the funding vehicle" for the defined benefit plans being developed by the Consultant Defendants. (Compl. ¶ 70). In December 1999, Indianapolis Life received "explicit warnings regarding the tax risks and problems associated with" the use of their life insurance policies in funding defined benefit plans from an expert in the pension industry. (Compl. ¶ 72). In the early 2000's the IRS began to scrutinize certain defined benefit plans under section 412(i), giving speeches warning that the IRS intended to take steps to prevent the misuse of insurance products in 412(i) plans. (Compl. ¶ 195). The IRS focused on insurance policies designed to have low cash surrender values and high premiums for a fixed number of years as well as the sale of those policies at artificially suppressed prices. (*Id.*). In January 2003, Department of Treasury and IRS officials gave a speech at a conference indicating that the IRS intended to give high priority to examining insurance funded defined benefit plans. (Compl. ¶ 196). Defendant Indianapolis Life

---

[1]The four insurance company defendants, Indianapolis Life Insurance Company, Hartford Life and Annuity Insurance Company, Pacific Life Insurance Company, and American General Life Insurance Company are referred to collectively herein as the "Insurance Defendants." Defendants ECI Pension Services, LLC, Economic Concepts, Inc., and Kenneth Hartstein are referred to collectively herein as the "Consultant Defendants."

provided a summary of that speech on a website for its agents. (Compl. ¶197). Indianapolis Life and the other Defendants are also alleged to have known about the IRS' scrutiny and intentions to examine the plans at least as early as December 2002. (*Id.*).

In February 2004, the IRS issued a press release, two revenue rulings, and proposed regulations regarding abusive tax shelters "involving specially designed life insurance policies in retirement plans, section '412(i) plans.'" (Compl. ¶ 201). The IRS's proposed regulations, finalized in August 2005, indicated that the issuance of life insurance policies greatly in excess of the permissible death benefit under a 412(i) plan is a "listed transaction" that is an abusive tax shelter. (Compl. ¶¶ 200-201). The IRS stated that a plan holding such policies cannot be a 412(i) plan. (Compl. ¶ 201). In a 2004 revenue ruling, the IRS indicated that funding a 412(i) plan with a different type of insurance policy for highly compensated employees compared with other employees will result in disqualification of the plan. (Compl. ¶ 202). In 2005, the IRS began a nationwide audit directed at 412(i) plans and has commenced or is likely to commence audits of Plaintiffs. (Compl. ¶ 203).

Thirteen of the named Plaintiffs asserting claims against Indianapolis Life allege that they purchased life insurance policies from that company. (Compl. ¶¶ 147-162). Two of the Plaintiffs who allegedly purchased policies from Indianapolis Life are Arizona residents--Stephen Berry and Fader Higher LLC (collectively, "Berry"). (Compl. ¶¶ 5-6). Two of the Plaintiffs who allegedly purchased policies from Indianapolis Life are Utah residents-- Dr. Robert P. Young and Rocky Mountain Dermatology, Inc. (collectively "Young"). (Compl. ¶¶ 12-13). Four of the Plaintiffs who allegedly purchased policies from Indianapolis Life are California residents-- Tyrone Seils, DP Search, Inc. (collectively "Seils"), Richard Sarmiento, and Richard Sarmiento and Leilani, a Sole

Proprietorship (collectively "Sarmiento"). (Compl. ¶¶ 14-15, 31-32). Two of the Plaintiffs who allegedly purchased policies from Indianapolis Life are Texas residents-- Dr. Hodan Rabile and Rabile Family Dentistry (collectively "Rabile"). (Compl. ¶¶ 19-20). Three of the Plaintiffs who allegedly purchased policies from Indianapolis Life are Illinois residents-- David Hallman, Lynn Hallman, and Accessibility Unlimited, Inc. (collectively "Hallman") (all thirteen Plaintiffs listed by name, collectively "Indianapolis Life Plaintiffs"). (Compl. ¶¶ 28-30). The background of two of the sets of Indianapolis Life Plaintiffs' claims is substantively identical.

In early 2002, Indianapolis Life agent David L. West approached Young regarding establishing a defined benefit plan funded by Indianapolis Life insurance policies in compliance with section 412(i) of the Internal Revenue Code.[2] (Compl. ¶ 83). Mr. West discussed the plan with Young throughout 2002, including around January 20, 2002, and recommended that the plan be funded in a particular manner with particular insurance policies.[3] (Compl. ¶ 83-84). Mr. West represented that the plan would provide retirement benefits to Dr. Young and Rocky Mountain Dermatology's employees as well as federal income tax deductions for Rocky Mountain Dermatology, which was to pay the premiums on the policies used to fund the plan.[4] (Compl. ¶ 85). Mr. West also promised that Young would have large tax-free returns from the plan as he proposed to fund it.[5] (Compl. ¶ 87).

---

[2]The allegations regarding discussions with Dr. Rabile by Indianapolis Life agent Flannery are identical. (Compl. ¶ 99).

[3]See also Compl. ¶¶ 99-100 regarding identical discussions with Dr. Rabile in late 2001 and early 2002, including around December 26, 2001 and January 25, 2002.

[4]See also Compl. ¶ 101.

[5]See also Compl. ¶ 103.

Mssrs. West and Flannery also made several identical representations upon which Young and Rabile relied in entering into their respective defined benefit plans including:

1. The life insurance policies were appropriate for use in funding the plan as a qualified 412(i) plan;

2. The life insurance policies provided a permissible death benefit under the plan;

3. The premiums to be paid for the policies qualified as federal income tax deductions; and

4. The plan and the insurance policies used to fund it complied with all federal tax laws and regulations.

(Compl. ¶¶ 86, 102). Relatedly, Indianapolis Life's agents did not disclose (1) the risks of the investment activity, (2) the potentially abusive nature of the program (including operation of the surrender charge), or (3) the IRS' refusal to recognize the purported tax benefits of that type of program. (Compl. ¶¶ 87, 103).

The background of the other four sets of Indianapolis Life Plaintiffs' claims is substantively identical, and largely identical to the facts alleged with respect to Young and Rabile. In September 2000, Indianapolis Life agent Kenneth Hartstein approached Berry regarding establishing a defined benefit plan funded by Indianapolis Life insurance policies in compliance with section 412(i) of the Internal Revenue Code.[6] (Compl. ¶ 75). Mr. Hartstein discussed the plan with Berry throughout 2001, including around March 1, 2001 and June 25, 2001, and recommended that the plan be funded in a particular manner with particular insurance policies.[7] (Compl. ¶ 75-76). Mr. Hartstein

---

[6] The allegations regarding discussions with Hallman, Seils, and Sarmiento by Indianapolis Life agents Mssrs. Thornhill, Dermody, Lewis, and Smith are identical. (Compl. ¶ 91, 107, 115).

[7] See also Compl. ¶¶ 91-92 regarding identical discussions with Seils in late 2001 and early 2002, including around November 14, 2001, November 30, 2001 and February 2, 2002; Compl. ¶¶ 107-108

represented that the plan would provide retirement benefits to Mr. Berry and Fader Higher's employees as well as federal income tax deductions for Fader Higher, which was to pay the premiums on the policies used to fund the plan.[8] (Compl. ¶ 77). Mr. Hartstein also promised that Berry would have large tax-free returns from the plan as he proposed to fund it.[9] (Compl. ¶ 79).

The various Indianapolis Life agents who brokered policies for Berry, Hallman, Seils, and Sarmiento made the same specific representations to those Plaintiffs as were made to Young and Rabile. (Compl. ¶¶ 78, 94, 110,118). However, five additional representations were made to Berry, Hallman, Seils, and Sarmiento, namely:

1. That their defined benefit plans would be "a fully insured qualified plan under Section 412(i) of the Internal Revenue Code";

2. That each defined benefit plan "satisfies each of the [] requirements" of Section 412(i);

3. That contributions to the defined benefit plans "are tax deductible to the business, and non-taxable to the participant";

4. That each individual plaintiff could eventually "purchase the policy from the plan for its net case value" and "report the policy's net cash value as the taxable income"; and

5. That the Consultant Defendants had "secured a letter opinion of 'more likely than not' from the international firm of Bryan Cave LLP" with respect to the viability of this arrangement."

(*Id.*) The Indianapolis Life agents involved with Berry, Hallman, Seils, and Sarmiento also failed to disclose the same information about risks to those plaintiffs as West and Flannery failed to disclose

---

regarding identical discussions with Hallman in the latter half of 2002; and Compl. ¶¶ 115-116 regarding identical discussions with Sarmiento in late 2002 and early 2003, including around November 14, 2002, November 21, 2002, February 10, 2003, and March 6, 2003.

[8]See also Compl. ¶ 93, 109, 117.

[9]See also Compl. ¶ 95, 111, 119.

to Young and Rabile.  (Compl. ¶¶ 79, 95, 111, 119).

All of the Indianapolis Life Plaintiffs established defined benefit plans and purchased the policies underlying the plans from Indianapolis Life.  (Compl. ¶¶ 80, 88, 96, 104, 112, 120).  Each of the Indianapolis Life Plaintiffs who are entities paid premiums on those policies and recorded corresponding federal income tax deductions for those payments.  (Compl. ¶¶ 80-81, 88-89, 96-97, 104-105, 112-113, 120-121).

Indianapolis Life Plaintiffs assert claims for conspiracy, common law fraud, negligent misrepresentation, violations of California Business and Professions Code section 17500 for false advertising and fraud, violation of the California Consumer Legal Remedies Act, violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act, and unjust enrichment against Indianapolis Life.[10]  Indianapolis Life has moved to dismiss all claims under Federal Rules of Civil Procedure 12(b)(6) and/or 9(b).

## II.

## ANALYSIS

### A.    Legal Standard

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).  Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely

---

[10]In the Analysis section below, the Court refers to the Young Plaintiffs (Dr. Young and Rocky Mountain Dermatology) and the Berry Plaintiffs (Mr. Berry and Fader Higher) for simplicity.  Because the allegations of the remaining named Plaintiffs who purchased life insurance policies from Indianapolis Life are identical to  either the Young or Berry Plaintiffs, the following analysis applies equally to all.

granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004). A 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, __, 127 S. Ct. 1955, 1974 (2007). To survive a 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions." *Id.*, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level [. . .] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Southwestern Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 127 S.Ct. at 1965). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

**B.      Plaintiffs' Consolidated Motion to Strike Exhibits**

Plaintiffs have filed Plaintiffs' Consolidated Motion to Strike Exhibits Attached to Defendants' Motions to Dismiss and Supporting Memorandum of Law ("Consolidated Motion to Strike") (doc. #66). To the extent the Consolidated Motion to Strike pertains to the exhibits submitted by Indianapolis Life, the court now addresses the motion. Plaintiffs argue that the exhibits submitted by Indianapolis Life in support of its Motion to Dismiss should be stricken and not considered by the Court essentially, because they are not authenticated and are neither referred to in the complaint nor central to the claims. Indianapolis Life responds that Plaintiffs have not questioned the authenticity of the documents and argues that the policy is central to Rabile's claims. The Fifth Circuit has consistently stated that the Court may consider documents on a motion to

dismiss without converting that motion into one for summary judgment where the documents are central to the plaintiffs' claims and are referred to in the complaint. *In Re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007) (considering insurance contracts on a motion to dismiss); *Causey*, 394 F.3d at 299 (affirming dismissal of defendant under 12(b)(6) based on consideration of documents that explained the legal relationship between the defendants); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (approving consideration of documents attached to motion to dismiss noting that "[i]n so attaching, the defendant merely assists...the court in making the elementary determination of whether a claim has been stated.").

Considering each of Indianapolis Life's Exhibits in turn, the first exhibit is a copy of a New York state court decision in *Denenberg v. Rosen*, No. 110441/06, slip op. (N.Y. Sup. Ct. Feb. 19, 2008). The Court finds no need to consider this opinion in its analysis and therefore does not reach the question of whether such consideration is appropriate. The second exhibit submitted by Indianapolis Life is a policy listing Plaintiff Hodan Rabile as the insured along with associated redacted application documents. The policy issued by Indianapolis Life is clearly referenced repeatedly in the Complaint. *See, e.g.*, Compl. ¶¶ 100, 102, 104-106. All of the Indianapolis Life Plaintiffs', including Rabile's, claims originate from the marketing and sale of the Indianapolis Life policies to them. (Compl. ¶¶ 1, 205, 212, 220). Further, the Indianapolis Life Plaintiffs have prayed for the remedy of rescission--a remedy that by its nature implicates the policy contract. (Compl. at Prayer). The copy of the Rabile policy submitted by Indianapolis Life in its Appendix appears to be the policy referred in the Complaint and Plaintiffs, while pointing out that the document is unauthenticated, have not argued that it is not in fact authentic. Plaintiffs have not argued that the policy contract submitted is incomplete, and the Court has not independently found it to be

incomplete. The Court finds that it can consider the policy at Exhibit 2 of the Indianapolis Life Appendix without converting the 12(b)(6) motion into a motion for summary judgment. However, the Court will not consider the associated redacted application documents, as they do not appear to be central to the claims and are not referenced in the Complaint. Accordingly, Plaintiffs' Consolidated Motion to Strike is **granted in part and denied in part**.

C.  **Indianapolis Life's Motion to Dismiss**

Because Indianapolis Life moves to dismiss each count of the Complaint, the Court examines the claims in turn. Because all claims in this matter are state law claims, the Court's jurisdiction is based on diversity. 28 U.S.C. §1332. Thus, Texas state substantive law, including precedent on choice of law, and federal procedural law will be applied. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).

<u>Count One: Conspiracy</u>

In order to evaluate whether a claim has been stated, as an initial matter, the Court must determine which state's substantive law applies to Plaintiffs' claim of conspiracy. The characterization of a claim is controlled by the law of the forum state, in this case Texas. *Fahs v. Martin*, 224 F.2d 387, 396-97 (5th Cir. 1955). In Texas, "[c]ivil conspiracy, generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, might be called a derivative tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). In other words, a conspiracy is not an end to itself--one must conspire to commit some underlying tort.

The Texas Supreme Court applies the "most significant relationship" test as set forth in the Restatement (Second) of Conflict of Laws to decide choice of law issues. *Hughes Wood Prods., Inc.*

*v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). For an issue in tort, the court applies the general choice of law principles to determine which state has the most significant relationship to the occurrence and the parties with respect to that issue. Restatement (Second) Conflict of Laws § 145(1). This analysis includes an evaluation of (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the residence and/or place of incorporation of the parties, and (4) the place where the relationship between the parties is centered. *Id.* at § 145(2). The factors are evaluated qualitatively as some factors are more important than others depending on the state policies implicated by the claim. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421(Tex. 1984). In tort cases, "the applicable law will usually be the local law of the state where the injury occurred." *Id.* at § 156(2).

Although Plaintiffs assume in their briefing that Texas law applies to their conspiracy claim, the Court finds that the conclusory allegations in the Complaint do not fully allow it to determine choice of law for the conspiracy claim. With respect to the first and third factors used in evaluating choice of law, Plaintiffs are currently residents of many different states, including California, Texas, Arizona, Utah, and Illinois. Defendants are currently either residents of, or are incorporated in, Indiana, Connecticut, Illinois, California, Texas, Arizona, and Nebraska. Other alleged members of the conspiracy (although unnamed as Defendants in this suit) are residents of Arizona. The alleged injury in this case is identical for each Plaintiff--the funding of a defined benefit plan using life insurance policies purchased from one of the four insurance company Defendants in a manner that is not legally allowed for a 412(i) plan in compliance with the Internal Revenue Code. *See, e.g.*, Compl. ¶¶ 80-82, 88-90. Thus, the injuries appear to have taken place in each of the resident states, as there are no allegations that any Plaintiff left its resident state to enter into the life insurance

policies or lived in another state at the time of the transaction.[11]  Moreover, it can be assumed from the state of residency that premium payments made on the policies originated from each of the states listed above.  Thus, under the Restatement followed by Texas state courts, it appears that with respect to the Indianapolis Life Plaintiffs, the applicable law would tend to be the law of each of California, Texas, Arizona, Utah, and Illinois.

However, because qualitative evaluation of the choice of law factors is required, it is insufficient to merely conclude that laws of the states in which injuries most likely occurred are necessarily the appropriate choices.  In fact, based on the instant allegations, the residence of Defendants should be weighed as heavily as that of the Plaintiffs.  This derivative tort claim is for a wide-spread conspiracy that is alleged to have resulted in intentionally uniform, false marketing materials and directions for agents to make uniform misrepresentations verbally and in writing to prospective life insurance policy purchasers like Plaintiffs.  *See* Compl. ¶¶ 59, 69, 74.  The place(s) where the Defendants had their meeting of the minds and/or committed overt acts in furtherance of their plans, including where they developed the allegedly identical materials and directions, is central to the conspiracy claim.

Although consideration of the wide-spread and uniform nature of the allegedly tortious acts is encompassed by the second and fourth factors of the Texas choice of law test, analysis of those factors presents a substantial obstacle considering the dearth of specific allegations concerning the

---

[11]It is certainly possible that Plaintiffs were not residents of the same states in which they currently reside during the time the alleged wrongs were committed--a factor that is important under the Restatement evaluation of choice of law.  In fact, Indianapolis Life makes this argument with respect to the Rabile Plaintiffs.  However, given the similarity of the law on the elements of conspiracy among the states, particularly with respect to the requirement of the element central to the Court's analysis herein, at this time the residency of a particular Plaintiff does not appear to affect the analysis with respect to the conspiracy claim.

conspiracy claim. It is entirely unclear from the allegations where the conspiratorial acts that caused the alleged injury took place. It is unclear where the parties allegedly communicated in forming or carrying out their alleged conspiracy. Nor is it any clearer where the relationship between the parties is centered. Despite its inability to reach a final determination on the choice of law issue with respect to conspiracy, if the laws of each of the resident states of Plaintiffs and Defendants are substantially identical, the Court can still evaluate the legal availability of that claim. *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 (5th Cir. 2001) (evaluating motion to dismiss under the laws of both potentially applicable states).

To state a claim for conspiracy under Texas law, Plaintiffs must allege facts to support each of the following elements: (1) Indianapolis Life was a member of a combination of two or more persons; (2) the object of the combination was either to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means; (3) the members of the combination had a meeting of the minds on the object or course of action; (4) one of the member committed an unlawful, overt act to further the object or course of action; and (5) Plaintiffs suffered injuries as a proximate result of the wrongful acts. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). The laws of the other potentially applicable states are in accord.[12] As noted above, conspiracy is not a stand-alone claim, it depends on participation in some underlying tort. In Texas, because conspiracy requires specific intent, one cannot agree or conspire to be negligent. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex.

---

[12]*See Wells Fargo Bank v. Arizona Laborers, Teamsters, & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36(Ariz. 2002); *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (Ind. 1966); *Williams v. Maislen*, 165 A. 455, 456 (Conn. 1933); *Adcock v. Brakegate, Ltd.*, 654 N.E.2d 888, 894 (Ill. 1994); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457, 459(Cal. 1994); *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1064 (Utah 2002); *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989); *Eicher v. Mid America Fin. Inv. Corp.*, 702 N.W.2d 792, 805(Neb. 2005).

1996).[13] Thus, the Court views the conspiracy claim as a claim of conspiracy to defraud.

Indianapolis Life contends that Plaintiffs' civil conspiracy claims should be dismissed because "1) the Complaint fails to allege facts from which it can plausibly be inferred that the insurers conspired together; and 2) the conspiracy count is a transparent attempt to multiply the size of the class and create standing for Plaintiffs who have no relationship with Indianapolis Life." Mot. at 21 (doc. # 47). In response, as to a conspiracy between Indianapolis Life and the Consultant Defendants, Plaintiffs argue that they "allege multiple facts showing an agreed collaboration among the Consultant Defendants and Insurance Defendants to design and market special insurance policies to fund abusive 412(i) plans." Pl. Consol. Resp. at 55. (Doc. # 65). As to a conspiracy between Indianapolis Life and the other Insurance Defendants, Plaintiffs contend that the Complaint read as a whole contains "allegations support[ing] a plausible inference that Defendants had a 'meeting of the minds' regarding this conspiracy to market and sell abusive 412(i) plans." *Id.* at 64.

As already stated (*see supra*), to survive a 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions." *Twombly*, 127 S. Ct. at 1965. Having carefully considered the First Amended Complaint, the parties' arguments and applicable law, the court determines that Plaintiffs have failed to plead a viable claim for conspiracy under Rule 8(a) and *Twombly*.[14] Plaintiffs' Complaint is devoid of any factual allegations

---

[13]Although other potentially applicable state law may be to the contrary, it is of no ultimate import as the only other tort alleged by Plaintiffs is negligent misrepresentation based on identical facts to those of their conspiracy claim. The same reasoning discussed herein with respect to conspiracy to defraud would apply to a conspiracy to commit negligent misrepresentation.

[14]While the Court agrees with Indianapolis Life that Plaintiffs' First Amended Complaint is deficient under Rule 8(a) and *Twombly*, the Court is mindful that *Twombly* involved a claim **under**

supporting their formulaic recitation of at least one of the legal elements of conspiracy. The Complaint alleges identical acts, misrepresentations, and omissions by each Insurance Defendant and each Insurance Defendant's purported agent in marketing and selling life insurance policies for use in defined benefit plans under section 412(i) of the Internal Revenue Code. However, there are no allegations to suggest that any acts took place in the context of, or as result of, some prior agreement among the Insurance Defendants.

The only remotely specific allegation of an agreement between Indianapolis Life and any other Defendant is the allegation that "Consultant Defendants...proceeded to work together with the Insurance Defendants to further develop and market this purported 412(i) arrangement..." (Compl. ¶ 71). This allegation is insufficient to support a conspiracy between Indianapolis Life and Consultant Defendants, as it fails to specify who was involved, precisely what the interaction was or what actions were decided upon, or when any meeting of the minds occurred between those parties or provide factual background to allow an understanding of how "working together" is equivalent to a conspiracy to defraud. Moreover, this allegation does not support the claim that the Insurance Defendants conspired with one another. In fact, the Court finds the gist of Plaintiffs' claims--that these competitors all got together and agreed to market and sell competing life insurance policies as part of defined benefit plans when they all knew such a scheme would not result in a legal section 412(i) plan--highly implausible. Even to the extent that Plaintiffs allege that the Insurance

Section 1 of the Sherman Act, whereas this case concerns a state law civil conspiracy claim. Accordingly, the court rejects Indianapolis Life's attempt to analogize the "parallel conduct" allegations, held insufficient in *Twombly*, with Plaintiffs' allegations in this case. *See* Indianapolis Life Mot. to Dismiss at 22-24 (doc. # 47); *see generally Twombly*, 127 S.Ct. at 1966 ("when allegations of parallel conduct are set out in order to make a section 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.").

Defendants are each connected with the Consultant Defendants, any connection is just as readily explained by the independent goals of Indianapolis Life and the other companies to offer products to compete with each other than by some conspiratorial agreement. *Cf. Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) (dismissing conspiracy claim "in the absence of factual allegations from which a conspiracy...can reasonably be inferred.").

Mindful that the conspiracy being pled is a conspiracy to commit fraud, the Court finds no factual support for the element that Indianapolis Life had a meeting of the minds with any other Defendant to do anything in furtherance of committing fraud. The only allegations about an agreement between the Insurance Defendants are conclusions of the type to which Indianapolis Life would have no idea where to begin responding. *See Twombly*, 127 S.Ct. at 1970 n.10. *See, e.g.*, Pls.' Resp. Br. at 52-53 (notes 285-286, 290-293 and accompanying text using language such as "defendants devised a scheme," "Insurance Defendants conspired with each other," and "Defendants had a meeting of the minds on the object of...this conspiracy"). *See also Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (affirming 12(b)(6) dismissal finding that a complaint alleging that coaches "encouraged and/or allowed" a student's behavior did not allege specific facts to show an agreement as to that behavior between the coach and the student).

In *Twombly*, the Court noted that but for the parallel conduct allegations, it doubted that the complaint met the Rule 8 notice requirements as it lacked mention of "specific time, place, or person involved in the alleged conspiracy." 127 S.Ct. at 1970 n. 10. The only references in the instant Complaint to the alleged time frame in which Defendants conspired are the legally insufficient "in the late 1990's" and some time after September 1999. (Compl. ¶¶ 59, 71). A period of several years is not definitive enough in the context of the conspiracy claim as alleged to put any

defendant on sufficient notice to be able to defend. The conspiracy claim identifies no specific time or place in which any meeting of the minds between the Insurance Defendants occurred and no individuals from any Insurance Defendants who allegedly participated in such meetings, conversations, or communications. Plaintiffs have not pled the factual specificity to push their claim above the speculative level from conceivable to plausible. *Id.* at 1974; *cf. Love Terminal Partners, LP v. City of Dallas, Texas*, 527 F. Supp.2d 538, 554 (N.D. Tex. 2007) (dismissing conspiracy claim in antitrust case under 12(b)(6) for insufficient factual pleading where allegations included that the partes "were already secretly discussing," "Defendants had the parameters of their illegal combination in place," and "Defendants had agreed the [object of their conspiracy] should be destroyed."). As such, Count One is dismissed.

## Count Two: Fraud

A dismissal for failure to plead with particularity in accordance with Federal Rule of Civil Procedure 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). Rule 9(b) provides, in pertinent part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*,

407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Essentially, the standard requires the Complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

Indianapolis Life argues that Plaintiffs' fraud allegations fail to satisfy the Fifth Circuit's test in several respects. The Court agrees. First, Indianapolis Life argues that the Complaint lacks specificity by failing to match the alleged misrepresentations to the time and place where they were made and by not identifying whether they were made orally or in writing. With respect to Dr. Young, the Complaint alleges that Mr. West spoke to him "throughout 2002," including on January 12, 2002, and later alleges that Mr. West made four specific representations "during the above-referenced discussions." (Compl. ¶¶ 83, 86). The Complaint similarly alleges with respect to Mr. Berry that Mr. Hartstein spoke to him on "throughout 2001," including on March 1, 2001 and June 25, 2001, and also later alleges that Mr. Hartstein made nine specific representations "during the above-referenced discussions."[15] (Compl. ¶¶ 75, 78). Indianapolis Life is correct that it is less than clear whether the "above-referenced discussions" refer to the specific dates identified. Moreover, if the Court were to assume the representations alleged were made on the specific dates, it would essentially be allowing Plaintiffs to amend their Complaint to add specificity through briefing-- wherein Plaintiffs point to the listed specific dates in response to various Defendants' arguments that

---

[15]The Court disagrees with Indianapolis Life's argument that the "what" statements are not particular enough, because they are substantially boilerplate for each Plaintiff and each Insurance Defendant. Although the alleged misrepresentations are boilerplate, the identical nature of the allegations is irrelevant in examining their specificity to satisfy the "what" question with respect to each Plaintiff and Insurance Defendant/agent thereof.

they have not identified "when" the alleged representations were made. Such an amendment would be improper. *Skidmore Energy, Inc. v. KPMG, LLP*, No. Civ A 3:03-2138-B, 2004 WL 3019097, at * 5 (N.D. Tex. Dec. 28, 2004) ("Plaintiffs may not amend their Complaint through briefs submitted [in response to a motion to dismiss.]") (citations omitted). To the extent that Plaintiffs would purport to allege that the representations were made on some occasion that is not one of the dates specifically identified, a fraud claim based on such an allegation would be unsupported by the Complaint. Further, while the current allegations are specific enough to answer the "who and what," they do not answer the "how" by failing to specify whether a statement was oral or written nor do they answer the "where" question by failing to specify even the state, much less a more precise location, in which these representations were made. As currently pled, the Complaint does not sufficiently connect the alleged representations and their form (oral or written) to the time and place in which they were made to meet the specificity required in the Fifth Circuit.[16]

Indianapolis Life further argues that the allegations in the Complaint fail to explain "why the statement or omission complained of was false or misleading." *Williams*, 112 F.3d at 178-179 (noting that "[a] complaint can be long-winded, even prolix, without pleading with particularity"). The Court examines the explanation as to the falsity of each specific alleged misrepresentation.[17] First,

---

[16]The Court notes that while more than half of the representations allegedly made to Berry Plaintiffs contain specific quotations that imply that the representations were in written form, Berry Plaintiffs still failed to identify what the document was and when and where it was presented. (Compl. ¶ 78(e)-(i)).

[17]

The representations made to Dr. Young that the Court finds specific enough to satisfy the "what" requirement of the fraud particularity pleading are identified in paragraph 86 of the Complaint. Although paragraph 85 generally states that Mr. West represented that the defined benefit plan would provide "certain retirement benefits" and "federal income tax deductions for Rocky Mountain Inc.," the alleged retirement benefits are not specifically identified. Further, the allegation regarding the federal income tax

- 19 -

Plaintiffs allege that Dr. Young and Mr. Berry were told that the life insurance policies to be issued by Indianapolis Life were appropriate for use in funding their companies' defined benefit plans as qualified 412(i) plans. (Compl. ¶¶ 78(a), (e),(f); 86(a)). However, there is no explanation as to why those statements *were false when made* in 2001 and 2002. Although Plaintiffs generally allege that the IRS was scrutinizing 412(i) plans funded by insurance policies in the early 2000's, they fail to allege that prior to Dr. Young and Mr. Berry's purchase of the Indianapolis Life policies, the IRS had made any definitive statement about the legality of a 412(i) plan funded with that type of Indianapolis Life (or even a similar competitor's) policy. (Compl. ¶¶ 195). To the contrary, in fact, Plaintiffs allege that in September 1999 the law firm of Bryan Cave LLP issued a legal opinion that funding the type of defined benefit plan being marketed to Plaintiffs with a life insurance policy issued by Indianapolis Life "more likely than not" would satisfy section 412(i).[18] (Compl. ¶70(b)).

Second, there is no explanation as to why the alleged representation that the Indianapolis Life policies provided a permissible death benefit under a 412(i) plan was false when made. (Compl. ¶¶ 78(b), 86(b).) The only allegation regarding permissible death benefits relates to a 2004 IRS revenue ruling in which the IRS allegedly stated that the issuance of life insurance policies greatly in excess of the permissible death benefit under a 412(i) plan was a listed transaction that the IRS considers to be an abusive tax shelter. (Compl. ¶ 201). There are no pre-2004 allegations

_____

deductions appears entirely duplicative of the allegation in paragraph 86(b) discussed herein. The same is true of representations made to Mr. Berry. *Cf.* paragraphs 77 and 78.

[18]Although Mr. Berry lists the representation by the Consultant Defendants that they had secured a letter opinion of "more likely than not" from Bryan Cave assessing the proposed funding structure as one of the allegedly false representations, Plaintiffs also state earlier in the Complaint that such an opinion was in fact rendered. Compare Compl. ¶ 70 to ¶78(i). Thus, in addition to failing to explain how this representation is false, Berry simultaneously relies on its truth. Berry therefore fails to state a claim for fraud based on this representation, as it has alleged it to be true.

explaining why any 2001 or 2002 statement about death benefits was false when made. Third, Plaintiffs allege that the representation that the premiums paid on the Indianapolis Life policies by Rocky Mountain Dermatology and Fader Higher were deductible for income tax purposes was false. (Compl. ¶¶ 78(c), (g); 86(c)). Similarly, Plaintiffs allege that the representation that the defined benefit plans, as funded with the Indianapolis Life insurance policies, complied with all federal tax laws and regulations was also false. (Compl. ¶¶ 78(d), 86(d)). Plaintiffs' citation to "early 2000's" IRS speeches "expressing concern" about the funding of defined benefit plans with insurance policies and the IRS' intent to examine 412(i) plans for misuse is ambiguous and insufficient to explain why any statements regarding the federal income tax ramifications of the plans were false when made in 2001-02.

Overall, Plaintiffs appear to be attempting to use the ultimate rulings and rule making by the IRS in 2004-2005, which they allege resulted in the illegality of Dr. Young's and Mr. Berry's defined benefit plans under section 412(i), to retroactively demonstrate that representations made by Indianapolis Life's alleged agents in 2001-02 were false when made. That leap of logic does not suffice to provide, as currently pled, an explanation as to why each representation was false when made, particularly in light of a legal opinion to the contrary. Alleging that Indianapolis Life "received warnings" in 1999 about the tax risks of the defined benefit plan being marketed by Consultant Defendants and funded with Indianapolis Life policies and knew of IRS scrutiny of this type of 412(i) plan in the early 2000's is not the same as alleging that the plans and policies were illegal when they were sold or that any specific representation allegedly made was false at any time prior to 2004, much less when it was made. (Compl. ¶ 72).

With respect to the substantive merits of the fraud allegations, the Court is again faced with

a potential choice of law issue, as Plaintiffs have not pleaded enough facts to allow it to determine which states' laws should apply to the fraud claim. However, it appears that the various states' laws are sufficiently congruous to allow analysis even based on the current pleadings. To succeed on their fraud claim, Plaintiffs must plead and prove to following elements: (1) Indianapolis Life made a material misrepresentation (false representation or nondisclosure under certain circumstances); (2) with knowledge of its falsity; (3) intending to induce reliance; (4) Plaintiffs in fact justifiably relied on the misrepresentation; and (5) Plaintiffs were damaged as a result. *Ins. Co. of North Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *see also Armed Forces Ins. Exch. v. Harrison,* 70 P.3d 35, 40 (Utah 2003); *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (Cal. 1995); *Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996).

To the extent that Plaintiffs are alleging that any of the statements listed in paragraphs 78 and 86 are forward-looking or are opinions as to how the IRS would treat 412(i) plans at any time after Dr. Young and Mr. Berry funded their plans with Indianapolis Life insurance policies in 2001-02, the Court finds those opinions as to future events unactionable as the basis for a fraud claim under these circumstances. Each statement allegedly made by Mssrs. West and Hartstein is a statement regarding federal income tax law or policy, including the policies of a third party government agency--the IRS. As a matter of law, any representation or prediction by any alleged Indianapolis Life agent as to how the IRS would treat the 412(i) plans, and the funding thereof, in the future is either an unactionable opinion or was unjustifiably relied upon. *Dawson v. Withycombe,* 163 P.3d 1034, 1047 (Ariz. App. 2007) (finding statements regarding company's future financial prospects unactionable as bases for fraud); *Duperier v. Texas State Bank,* 28 S.W.3d 740, 749 (Tex.

App.--Corpus Christi 2000, rev. dismissed) (finding investment advisor's representations that future resetting of interest rate on notes was unlikely to be a non-actionable opinion); *Lidecker v. Kendall College*, 550 N.E.2d 1121, 1125 (Ill. App. 1990) (finding assurances made to prospective students that nursing program would become accredited to be unactionable as predictions about the future); *Nibbi Bros., Inc. v. Home Federal Sav. & Loan Ass'n*, 253 Cal. Rptr 289, 294 (Cal. App. 1988) (finding inactionable as fraud a representation as to the future performance of a third party); *Borba v. Thomas*, 138 Cal. Rptr. 565, 570 (Cal. App. 1977) (finding no reasonable reliance upon a statement that a government agency would approve the parties' contract noting that there is no right to rely on the representation of the "future conduct of public officials").[19] There is no allegation that Indianapolis Life or any of its agents had any special knowledge or ability to control the IRS' enactment or enforcement of its policies related to section 412(i).[20] In any event, Plaintiffs also argue in their briefing that they are not alleging that the agents were opining as to future treatment of the defined benefit plans. Pls.' Resp. Br. at 74.

In addition to the affirmative representations discussed above, Plaintiffs also allege fraud by

---

[19]There are three recognized exceptions to the general rule that a prediction as to future events is unactionable: (1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion. *See, e..g, Borba*, 138 Cal. Rptr. at 570. However, even if one of these exceptions applied, the Court finds that it is inherently unreasonable for any person to rely on a prediction of future IRS enactment, enforcement, or non-enforcement of the law by someone unaffiliated with the federal government. As such, the reasonable reliance element of any fraud claim based on these predictions fails as a matter of law.

[20]The allegation that each agent told each Indianapolis Life Plaintiff that "they would receive large, tax-free returns from this arrangement" is also an unactionable opinion of future performance by the IRS. (Compl. ¶¶ 79, 87, 95, 103, 111, 119). As alleged, the "tax-free returns" happen "usually after five years" or in any event after the 412(i) plan participant buys the insurance policy from the trust holding it. (Compl. ¶ 65). Again, Defendants are not alleged to be specially situated to predict future tax treatment by the IRS, nor would it be reasonable for Plaintiffs to rely on such a projection.

nondisclosure for Indianapolis Life's failure to disclose the risks associated with the defined benefit plans funded by their life insurance policies, the potentially abusive nature of the plans, and the IRS' refusal to recognize the purported tax benefits of the plans. (Compl. ¶¶ 79, 87). Indianapolis Life argues that the alleged omissions are not actionable fraud because it owed Plaintiffs no duty of disclosure, and Plaintiffs allege no facts supporting the conclusory assertion that such a duty to disclose arose. Plaintiffs respond that a fiduciary relationship is not a prerequisite to the creation of a duty to disclose. Plaintiffs argue that they have alleged facts to show that a duty arose. The Court agrees with Plaintiffs in part.

Plaintiffs are correct that a duty to disclose can arise in an arms-length business transaction without a fiduciary or confidential relationship. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (noting that "[a] duty to disclose may arise 'where one makes a representation and fails to disclose new information that makes the earlier representations misleading or untrue.'"); *see also Highland Crusader Offshore Ptrs. LP v. Lifecare Holdings, Inc.*, No. 3:08-CV-102-B, 2008 WL 3925272, at * 11-12 (N.D. Tex. Aug. 27, 2008) (discussing the history of the existence of a duty of disclosure under Fifth Circuit and Texas authority); *Warner Constr. Corp. v. City of Los Angeles*, 466 P.2d 996, 1001 (Cal. 1970) ("In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; or (3) the defendant actively conceals discovery from the plaintiff."); *Wells Fargo,* 38 P.3d at 34 (approvingly discussing *Frazier v. Southwest Sav. & Loan Ass'n*, 653 P.2d 362 (Ariz. Ct. App. 1982)

which adopts section 551 of the Restatement (Second) of Torts on liability for non-disclosure); *First Sec. Bank of Utah NA v. Banberry Dev. Corp.*, 786 P.2d 1326, 1330-31 (Ut. 1990) (citing section 551 of the Restatement (Second) of Torts on liability for non-disclosure including duty of a party to exercise reasonable care to disclose matters known to it necessary to prevent a statement of the facts from being misleading); *Heider v. Leewards Creative Crafts, Inc.*, 613 N.E.2d 805, 811 (Ill. Ct. App. 1993) (noting that "[a] statement which is technically true as far as it goes may nonetheless be fraudulent if it is misleading because it does not state matters which materially qualify that statement.").

Here, Plaintiffs allege that Indianapolis Life's agents made certain representations to them regarding the suitability of certain life insurance policies for use in funding defined benefit plans in compliance with section 412(i). *See, e.g.*, Compl. ¶ 78. Plaintiffs also allege that the agents failed to disclose the risks associated with the investments and the "potentially abusive nature of the program." *See, e.g.*, Compl. ¶ 79.[21] If properly pled, these statements considered together could state a claim for fraud based on non-disclosure under the legal theory that parties must exercise reasonable care to prevent partial disclosures from becoming misleading. *See* cases cited in paragraph above and Restatement (Second) of Torts, sec. 551(2)(b)-(c).

Although the nature of an omission renders it more difficult to pled with particularity than an affirmative misrepresentation, Plaintiffs must still comply with Rule 9(b). *U.S. ex rel Riley v. St.*

---

[21]Plaintiffs also allege that Plaintiffs failed to disclose "the IRS refusal to recognize the purported tax benefits of this kind of program." *See, e.g.*, Compl. ¶ 79. However, this allegation appears to simply be a generic mirror-image restatement of Plaintiffs' various allegations of false affirmative representations of the qualities of the defined benefit plans as funded with insurance policies. To the extent that it is duplicative, this allegation is dismissed as a basis for a fraudulent omission claim. If Plaintiffs intend it to encompass something else, they may replead. Any repleading should also include more specificity as this allegation fails to sufficiently answer the "what, when, where, and why" questions required in this Circuit.

*Luke's Episcopal Hosp.*, 355 F.3d 370, 381 (5th Cir. 2004) ("In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."); *In Re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp.2d 880, 892-94 (N.D. Tex. 2005) (dismissing claim for failure to explain how alleged omission made an alleged statement misleading). Plaintiffs' fraud claim based on omissions is premised on the affirmative statements made by Indianapolis Life's agents, which Plaintiffs claim were false or created a false impression because the agents failed to disclose the risks of the plans they recommended. Because Plaintiffs' affirmative statements are not well pled under Rule 9(b), as discussed above, their omissions suffer from the same defects by association. Further, the alleged omissions of failing to disclose "the risks" and the "potentially abusive nature of this program" are insufficiently specific to explain exactly what information Plaintiffs claim Indianapolis Life knew and did not tell Plaintiffs prior to their purchase of life insurance policies. Thus, Indianapolis Life is correct that currently there are insufficient facts pled with particularity to support any omission as the basis for a fraud claim. Count Two is therefore dismissed for failure to comply with Rule 9(b) with respect to both the alleged affirmative misrepresentations and omissions.

Plaintiffs' failure to state a claim for fraud-- the offense underlying its conspiracy claim-- also provides a separate basis upon which the Court finds the Count One conspiracy claim should be, and is therefore, dismissed. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997) (granting summary judgment on conspiracy claim noting that "allegations of conspiracy are not actionable absent an underlying [tort]"); *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) (noting that "because the fraud claim fails[,] the fraud based conspiracy claim must fail also").

## Count Three: Negligent Misrepresentation

Indianapolis Life argues that Plaintiffs' claim for negligent misrepresentation should be dismissed for the same reasons as its fraud claim. Plaintiffs oppose for the same reasons discussed and evaluated by the Court in connection with the fraud claim. Additionally, however, Plaintiffs argue that their negligent misrepresentation claim is not subject to the heightened particularity pleading standard of Rule 9(b). The Court disagrees. Relying on an unpublished Fifth Circuit opinion, *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662 (5th Cir.2004), and a subsequent opinion from this court, *American Realty Trust, Inc. v. Travelers Cas. & Surety Co. of Am.*, 362 F. Supp.2d 744 (N.D. Tex. 2005) (Godbey, J.), Plaintiffs argue that they should not have to plead with particularity because their negligence and fraud claims are not intertwined. This argument misinterprets those cases and ignores the reality of the Complaint. Plaintiffs have effectively pled negligent misrepresentation as a lesser-included offense to their fraud claims. Although they correctly point out that they have labeled the claims separately as two different counts in the Complaint, the factual allegations underlying the claims are verbatim. *Compare* Compl. ¶ 212 to ¶ 220. Under those circumstances, "when the parties have not urged a separate focus on the negligent misrepresentation claims," the Fifth Circuit has found negligent misrepresentations claims subject to Rule 9(b) in the same manner as fraud claims. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (evaluating negligent misrepresentation in the same manner as fraud in part because both were "based on the same set of alleged facts"); *see also Biliouris v. Sundance Res., Inc.*, 559 F. Supp.2d 733, 737 (N.D. Tex. 2008) (dismissing negligent misrepresentation claim that was based on the same operative facts as an insufficient fraud claim); *Kougl v. Xspedius Mgmt. Co.*, No. 3:04-CV-2518-D, 2005 WL 1421446, at * 5-6 (N.D. Tex. Jun. 1,

2005)(dismissing negligent misrepresentation claim that restated the same factual basis as a fraud claim for failure to satisfy Rule 9(b)). Plaintiffs' negligent misrepresentation claim fails to satisfy Rule 9(b) to the same extent and for the same reasons as its fraud claim discussed above. Thus, Count Three is dismissed.

## Counts Four and Five: Violations of Texas Statutory Law

It is axiomatic that the Court has no jurisdiction over a claim that does not meet the requirements of Article III, which restricts federal judicial authority to resolution of "cases and controversies." U.S. Const., art. III §2 ("The judicial Power shall extend to all Cases...arising under...the Laws of the United States...[and] to Controversies...between Citizens of different States."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). A case or controversy is present only where a plaintiff purporting to bring a claim has standing to assert that claim. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006). A prospective plaintiff has standing only if each of three prongs are satisfied: (1) that it has suffered an injury in fact (one that is concrete and actual, not hypothetical), (2) there is a casual connection between the injury and the challenged conduct of the defendants, and (3) the injury will likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 560 (internal citations omitted). "That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 (1976). The party seeking review must be among the alleged injured. *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972).

Plaintiffs allege that they have standing to bring claims under the Texas Insurance Code and

Deceptive Trade Practices Act because each of the "Texas Insurance Code Plaintiffs...is a 'consumer' as defined under Section 17.45(4) of the Texas Business and Commerce Code"). (Compl. ¶¶ 231, 237). However, section 17.50 of the Texas Business and Commerce Code provides that a consumer may maintain any action where, *inter alia*, the use by any person of a false or misleading deceptive act or of an act in violation of the Insurance Code is a producing cause of economic damages to the plaintiff. Tex. Bus. & Comm. Code §17.50(a). The only Plaintiffs who allege that Indianapolis Life has caused them economic damages by any acts are Berry, Young, Seils, Sarmiento, Hallman, and Rabile.[22] Only Dr. Rabile and his company Rabile Family Dentistry PC allege that they are Texas residents or have any contacts with Texas. (Compl. ¶¶ 18-19). However, there are no allegations as to the Rabile Plaintiffs' residency at the time of the alleged representations or at any time prior to the date of the filing of the Complaint. As discussed earlier, there are no allegations of when and where any particular misrepresentation occurred to allow the Court to determine whether Texas state law should apply to Rabile. *Enigma Holdings, Inc. v. Gemplus Int'l, SA*, No. 3:05-CV-1168-B, 2006 WL 2859369, at *7 (N.D. Tex. Oct. 6, 2006). Indianapolis Life is not alleged to be a Texas resident or to have any connection with Texas in association with the subject matter of this lawsuit. The Court will not apply Texas state laws where a plaintiff does not allege at least either that its transaction directly or indirectly impacted Texas or that the defendant is a Texas resident. *See, e.g.,* Texas Ins. Code § 541.003 ("A person may not engage *in this state* in a trade practice that is...an

---

[22]In light of the Court's determination that the conspiracy claim should be dismissed, Plaintiffs cannot rely on their purported authority that a conspiracy claim conveys standing on all plaintiffs as to claims against all defendants. Moreover, considering that Plaintiffs do not appear to argue a conspiracy to commit a violation of the Texas statutes, it is questionable how that authority would apply to these claims (and Plaintiffs do not explain how it would). *See* Pls.' Resp. Br. at 83.

unfair or deceptive act or practice in the business of insurance.") (emphasis added).

Jurisdiction and standing are threshold matters and the Court cannot determine whether Rabile Plaintiffs have a sufficient connection to Texas during the time in which the alleged wrongs occurred to assert Texas statutory claims. Further, there is no other possible named Plaintiff with standing to represent the "Texas Insurance Code Plaintiffs," as there is no Plaintiff with any alleged connection to Texas also with the requisite connection of an injury caused by Indianapolis Life to have individual standing to bring Counts Four or Five against Indianapolis Life.[23] Therefore, Counts Four and Five are dismissed.

## Counts Six and Seven: Violation of California Business and Professions Code 17200 (Unlawful Business Acts and Fraudulent Business Acts)

Plaintiffs allege that Indianapolis Life, an Indiana resident, is liable under the California Business and Professions Code section 17200 for violations of (1) California Business and Professions Code section 17500 for false advertising, (2) violation of the California Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §1770), and (3) fraud . The only Plaintiffs who purchased insurance policies from Indianapolis Life who also allege any connection to California are alleged California residents Sarmiento and Seils. Just as with the Rabile Plaintiffs with respect to Texas, there are no allegations as to the Sarmiento and Seils Plaintiffs' residency at the time of the alleged representations or at any time prior to the date of the filing of the Complaint. There are no

---

[23]Plaintiffs' argument that choice of law prevents the Court from dismissing these claims is disingenuous at best. Pls. Resp. Br. at 81. With the exception of Rabile, the Complaint clearly lacks any allegations connecting any named Texas resident to Indianapolis Life or Indianapolis Life to Texas generally. Although, as discussed earlier, the Complaint may lack sufficient allegations to allow the Court to make a choice of law determination in full, for all plaintiffs except Rabile, the Court can at least determine that Texas will not be the choice of law. A state with no connection to the allegations between any given plaintiff and defendant certainly will not have the "most significant relationship" as used in Texas to decide choice of law issues. *Hughes*, 18 S.W.3d at 205.

allegations of when and where any particular misrepresentation occurred to allow the Court to determine whether California state law should apply to Sarmiento and Seils. Thus, the Court finds that Counts Six and Seven should be dismissed for lack of a Plaintiff with standing. Although it finds that the Counts should be dismissed, because this is the type of pleading deficiency that potentially can be remedied by amendment, the Court also considers Indianapolis Life's arguments for dismissal.

Indianapolis Life moves to dismiss both Counts Six and Seven arguing that neither Sarmiento nor Seils have standing under section 17204 because they have not "suffered injury in fact" and have not "lost money or property as a result of [the alleged] unfair competition." Reading the current allegations as broadly as possible, the Court finds the allegation of injury sufficient. While Sarmiento and Seils do not spell out the basis for their alleged injury or loss of money or property in the section of their Complaint entitled Count Six (paragraphs 245-253), earlier they allege that they purchased policies and paid premiums on those policies because they relied on Indianapolis Life's alleged misrepresentations and omissions concerning the policies' suitability for funding a section 412(i) plan. (Compl. ¶¶ 96-97, 120-121). Those allegations are incorporated by reference in Count Six. (Compl. ¶ 245).

False advertising under California Business and Professions Code section 17500 occurs when "any person...to induce the public to enter into any obligation relating thereto...make[s] or disseminate[s] from this state...any statement concerning any circumstance or matter of fact connected with the proposed performance...which is untrue or misleading." Cal. Bus. & Prof. Code §17500. The Court views Sarmiento and Seils' allegation of "Insurance Defendants' dissemination of uniformly deceptive advertisements and statements" as referring to the alleged oral and/or written

misrepresentations of alleged agents Mr. Lewis and Mr. Smith, which are uniform in that they are allegedly identical.[24] This view is buttressed by the allegation in the Complaint that the Insurance Defendants' agents were given uniform materials and scripts. (Compl. ¶ 74). Thus, because the bases for the false advertising claim are the same misrepresentations identified as a cause of Sarmiento and Seils' allegations that they spent money they otherwise would not have, they have stated an injury- in-fact as well as money lost under section 17204.[25] *See Aron v. U-Haul Co. Of California*, 143 Cal. App.4th 796, 802-03, 49 Cal. Rptr.3d 555 (Cal. Ct. App. 2006) (finding that plaintiff who paid for gas for U-Haul damage as a result of the practice of not having working fuel gauges he sought to have declared unlawful alleged an injury-in-fact). These allegations are sufficient to provide standing and therefore survive a motion to dismiss on that basis.

However, to state a claim under California Business and Professions Code section 17200 for false advertising, one must show that "members of the public are likely to be deceived." *Bank of the West v. Super. Ct.*, 833 P.2d 545, 546 (Cal. 1992). Although this claim is subject to Rule 8, not Rule 9, the Court finds that the Complaint fails to provide facts to support a "short and plain statement of the claim." This is particularly so because the Complaint fails even to allege this required element of a false advertising claim. As such, to the extent based on a violation of section 17500, Count Six must be dismissed for that reason as well.

---

[24]Although it is unclear whether the alleged statements were written or oral, as discussed above, the precise form of the communication is irrelevant to the analysis of this Count, as even oral deceptive sales dialogue has been held to be false advertising under California law. *People v. Super. Ct.*, 507 P.2d 1400, 1403 (Cal. 1973).

[25]Indianapolis Life apparently overlooks these damages allegations, as it argues that Plaintiffs only alleged that they "will likely" be audited by the IRS, which would likely lead to audit-related fees and tax liability. If that was all that Plaintiffs alleged, the Court would agree that injury is too speculative and does not reflect "lost money" as required by section 17200.

Indianapolis Life also argues that the Complaint fails to state a claim based on the alleged violation of the CLRA, because the CLRA applies only to the "sale or lease of goods and services." Cal. Civ. Code § 1770(a). The term "goods" is defined in the CLRA as "tangible chattels" while the term "services" is defined as "work, labor, and services for other than a commercial or business use." Cal Civ. Code § 1761(a)-(b). Indianapolis Life argues that insurance is neither a good nor a service as those terms are defined in the CLRA. The parties do not dispute that the California Supreme Court has not rendered an opinion directly addressing this issue. In applying state law on an issue of first impression, it is the duty of this Court to determine how the highest court of a given state would rule based on its precedent. *Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 41 F.3d 429, 432 (9th Cir. 1994) ("The panel applies California law as it believes the California Supreme Court would apply it.").

It appears that the California Supreme Court would find that insurance is neither a good nor service under the CLRA. *Civil Serv. Employees Ins. Co. v. Super. Ct.*, 22 Cal. 3d 362, 376 (Cal. 1978) (stating in dicta that "[section 1781(d)] does not directly apply to [an insurance contract] because insurance is technically neither a 'good' nor a 'service' within the meaning of the [CLRA section 1761(a) and (b)]"). The great weight of authority applying California law has dismissed CLRA claims based on insurance contracts. *See, e.g., Mahoney v. Fidelity Nat. Title Co.*, No. SACV 08-0561-AG, 2008 WL 4286934, at *3 (C.D. Cal. Sept. 15, 2008) (dismissing CLRA claim finding that insurance is not a "service"); *Estate of Migliaccio v. Midland Nat'l. Life Ins. Co.*, 436 F. Supp.2d 1095, 1108-1109 (C.D. Cal. 2006) (dismissing CLRA claim on the ground that annuities, which are defined in the California Insurance Code as part of life insurance, are not "goods" or "services"); *Bacon ex. rel. Maroney v. Am. Int'l Group*, 415 F. Supp.2d 1027, 1035-36 (N.D. Cal. 2006) (same);

*Newland v. Progressive Corp.*, No. CIV-S-05-01405 DFL PAN, 2006 WL 2536625 at *5 (E.D. Cal. Aug. 31, 2006) (insurance is neither a "good" nor a "service" within the meaning of the CLRA); *Bufano v. State Farm Gen. Ins. Co.*, No. B166899, 2004 WL 2526422, at *7 (Cal. Ct. App. Nov. 9, 2004) (same); *Lynch v. Commercial Union Ins. Co.*, No. A094846, 2001 WL 1660035 at *7 (Cal. Ct. App. Dec. 28, 2001) (holding that insurance is not a "good" or "service" and noting that "insurance is a contract by which indemnification is provided for loss arising from a contingent or unknown event").[26] As the parties have pointed out, the California Supreme Court currently has the issue of whether insurance contracts are subject to the CLRA under advisement since it granted review of *Fairbanks v. Super. Ct.*, 64 Cal. Rptr.3d 623 (Cal. Ct. App. 2007), *rev. granted*, 68 Cal. Rptr. 3d 273 (Cal. 2007).[27] Thus, although the Court dismisses this claim, having found no claim as a matter of law, Plaintiffs may move for reconsideration of the dismissal in the event of a contrary ruling from the California Supreme Court in *Fairbanks*.

Indianapolis Life is also correct that because Count Seven is a section 17200 claim based on "fraudulent business act or practice," that claim must be alleged with particularity in accordance with Federal Rule of Civil Procedure 9(b). For the reasons stated above with respect to Count Two (the fraud claim), the Court finds that Count Seven has not been stated with sufficient particularity and

---

[26]The cases cited by Plaintiffs are inapposite. *Kagan v. Gibraltar Sav. & Loan Ass'n*, 200 Cal. Rptr 38, 35 Cal. 3d 582, 587-89 (Cal. 1984) concerns management fees for an IRA, not insurance. In *Mass. Mutual Life Ins. Co. v. Super. Ct.*, 119 Cal. Rptr.2d 190 (Cal. Ct. App. 2002), there is no indication that any party argued that the CLRA did not apply and the court did not address that issue.

[27]In fact, the Court has found only one case arguably applying California law in the insurance context in which a court has allowed a claim under the CLRA where the argument has been made that insurance does not fall within the definition of "goods" and "services." *Keck v. Bank of Am.*, No. C 08-01219 CRB, 2008 WL 1743445, at * 1 (N.D. Cal. Apr. 15, 2008) (denying motion to dismiss without prejudice to renewal after *Fairbanks* decision and without comment as to whether alleged basis of suit was insurance or a lending service).

must be dismissed.

**Count Eight: Unjust Enrichment**

Indianapolis Life moves for dismissal of Plaintiff's unjust enrichment claim arguing that such a claim does not exist under California or Texas law. Putting a label on unjust enrichment has posed some difficulty for the California courts. *Compare McKell v. Washington Mutual, Inc.*, 49 Cal. Rptr.3d 227, 254 (Cal. Ct. App. 2006) (noting that "there is no cause of action for unjust enrichment" under California law) *with First Nationwide Savings v. Perry*, 15 Cal. Rptr.2d 173, 176 (Cal. Ct. App. 1992) (finding that complaint stated a cause of action for unjust enrichment). Debating whether unjust enrichment is a cause of action seems a pointless exercise, as regardless of the characterization unjust enrichment is fundamentally a description of "the result of a failure to make restitution under circumstances where it is equitable to do so." *Lauriedale Assocs, Ltd v. Wilson*, 9 Cal. Rptr.2d 744, 780 (Cal. Ct. App. 1992); *see also Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.-- Dallas 2006, no pet.) ("Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay."). "Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself [. . . and] is synonymous with restitution." *Melchior v. New Line Productions, Inc.*, 131 Cal. Rptr.2d 347, 357 (Cal. Ct. App. 2003) (internal quotations and citations omitted).

Plaintiffs appear to agree with the general principle that unjust enrichment is not available as a claim or equitable basis of recovery when a valid contract exists. *California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 114 Cal. Rptr.2d 109, 125 (Cal. Ct. App. 2001) ("as a

matter of law, "a quasi-contract action for unjust enrichment does not lie where...express binding agreements exist and define the parties' rights."); *see* Pls.' Resp. Br. at 94. Plaintiffs argue though that their unjust enrichment claim is not based on the insurance policies, but instead on "Defendants' misrepresentations and are separate and apart from the insurance contracts." Pls.' Resp. Br. at 94. Plaintiffs are correct that "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud." *McBride v. Boughton*, 20 Cal. Rtpr.3d 115, 121 (Cal. Ct. App. 2004). Nonetheless, because a contract exists, the quasi-contract theory of unjust enrichment, whether characterized as a cause of action or not, will not be available if they do not succeed on their fraud claim. *Nibbi Bros.*, 253 Cal. Rptr at 294 (applying requirements for fraud claim to unjust enrichment action predicated on misrepresentations). Under these circumstances, where the success of the unjust enrichment claim rises and falls with the fraud claim, the Court finds that the attempt to plead "unjust enrichment" as a separate claim adds nothing. *See Jogani v. Super. Ct.*, 81 Cal. Rptr.3d 503, 511 (Cal. Ct. App. 2008). If Plaintiffs are successful on their fraud claim, they may seek restitution as a remedy. There is no need for a separately labeled claim for the same relief based on the same underlying allegations. As such, Count Eight is dismissed.

## III.

## CONCLUSION

The Court does not take dismissal of a claim without reaching its merits lightly. Thus, a plaintiff will be given the opportunity to amend a Complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply

with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). Moreover, Plaintiffs in this case have specifically requested the opportunity to replead. Pls.' Resp. Br. at 108.

Thus, for the reasons discussed above, Indianapolis Life's Motion to Dismiss is GRANTED as follows. Counts One, Two, Three, Four, Five, and Seven of the Complaint are dismissed without prejudice to repleading. Count Six is dismissed with prejudice with respect to the claim based on the California Consumer Legal Remedies Act. Count Six is otherwise dismissed without prejudice to repleading the claim based on section 17500 for false advertising. Count Eight of the Complaint is dismissed with prejudice. All claims by any Plaintiff, who does not allege specifically purchasing a life insurance policy issued by Indianapolis Life, are dismissed for lack of standing. If Plaintiffs are able to replead any Counts to overcome all of the grounds stated herein for dismissal, they should do so by no later than twenty (20) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than five (5) pages, explaining how the amendments overcome the grounds stated herein for dismissal. Should Plaintiffs replead, Indianapolis Life is hereby granted leave to file a response to Plaintiffs' synopsis. Any such response shall not exceed five (5) pages and must be filed within ten calendar days of the repleading. No further briefing will be permitted.

**SO ORDERED.**

Dated: February 19, 2009

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE