| | | |
|---|---|---|
| STEPHEN BERRY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 3:08-CV-0248-B |
| v. | § | |
| | § | |
| INDIANAPOLIS LIFE INSURANCE | § | |
| COMPANY, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Before the Court is Defendant American General Life Insurance Company's Motion to Dismiss and Brief in Support (doc. # 40, 42), Plaintiffs' Consolidated Response, and American General's Reply. Having considered the motion, response, reply, pleadings and applicable law, for the reasons set forth below, the Court GRANTS the motion.

## I.

## BACKGROUND

The Court takes its factual account from Plaintiffs' First Amended Complaint filed May 23, 2008. (Compl., Doc. # 34).[1] Plaintiffs in this matter are professionals, such as doctors, dentists, and construction company owners, and companies they operate. (Compl. ¶¶ 5-38). Their claims concern certain defined benefit plans, funded by life insurance policies, ostensibly designed and marketed as plans under Section 412(i) of the Internal Revenue Code. (Compl. ¶ 1). Plaintiffs

---

[1] See, e.g., Manguno v. Prudential Prop. and Ins. Co., 276 F.3d 720, 725 (5th Cir. 2002) (Stating that when reviewing a motion to dismiss, "all facts pleaded in the complaint must be taken as true.").

allege that the plans they set up and funded with life insurance policies were actually tax shelters that Defendants knew or should have known would be scrutinized by the IRS and deemed abusive and illegal. (Compl. ¶¶ 59-60). They further allege that four insurance companies, two consultant companies, one individual consultant, and a law firm conspired to market these plans and to sell the life insurance policies used to fund them by making fraudulent or negligent misrepresentations about the tax benefits of the plans and without disclosing any of the risk that the IRS would deem the plans illegal. (Compl. ¶¶ 59, 73-74). The four insurance company defendants are Indianapolis Life Insurance Company ("Indianapolis Life"), Hartford Life and Annuity Insurance Company ("Hartford"), Pacific Life Insurance Company ("Pacific Life"), and American General Life Insurance Company ("American General") (collectively, the "Insurance Defendants"). The consultant companies are Defendants ECI Pension Services, LLC and Economic Concepts, Inc., and the individual consultant is Kenneth Hartstein (collectively, the "Consultant Defendants"). The law firm defendant is Bryan Cave, LLP.

As alleged in Plaintiffs' First Amended Complaint, in September 1999, Bryan Cave, LLP issued a legal opinion that the life insurance policy issued by Indianapolis Life or a "substantially similar policy" "more likely than not...can meet the requirements of section 412(i) of the Code" when used as "the funding vehicle" for the defined benefit plans being developed by the Consultant Defendants. (Compl. ¶ 70). Thereafter, American General and the other Insurance Defendants received "explicit warnings regarding the tax risks and problems associated with" the use of their life insurance policies in funding defined benefit plans from an expert in the pension industry. (Compl. ¶ 72). In the early 2000's the IRS began to scrutinize certain defined benefit plans under section 412(i), giving speeches warning that the IRS intended to take steps to prevent the misuse of

insurance products in 412(i) plans. (Compl. ¶ 195). The IRS focused on insurance policies designed to have low cash surrender values and high premiums for a fixed number of years as well as the sale of those policies at artificially suppressed prices. (*Id.*). In January 2003, Department of Treasury and IRS officials gave a speech at a conference indicating that the IRS intended to give high priority to examining insurance funded defined benefit plans. (Compl. ¶ 196).

In February 2004, the IRS issued a press release, two revenue rulings, and proposed regulations regarding abusive tax shelters "involving specially designed life insurance policies in retirement plans, section '412(i) plans.'" (Compl. ¶ 201). The IRS's proposed regulations, finalized in August 2005, indicated that the issuance of life insurance policies greatly in excess of the permissible death benefit under a 412(i) plan is a "listed transaction" that is an abusive tax shelter. (Compl. ¶¶ 200-201). The IRS stated that a plan holding such policies cannot be a 412(i) plan. (Compl. ¶ 201). In a 2004 revenue ruling, the IRS indicated that funding a 412(i) plan with a different type of insurance policy for highly compensated employees compared with other employees will result in disqualification of the plan. (Compl. ¶ 202). In 2005, the IRS began a nationwide audit directed at 412(i) plans and has commenced or is likely to commence audits of Plaintiffs. (Compl. ¶ 203). Thereafter, Plaintiffs filed suit.

Of the thirty-four (34) Plaintiffs in the Complaint, only ten (10) who assert claims against American General allege that they purchased life insurance policies from American General. (Compl. ¶¶ 163-194). Seven of the ten Plaintiffs who allegedly purchased policies from American General are California residents--Jamie Hughes, Stanton Greene, Valley Vista Mortgage, Inc. (collectively with Hughes and Greene, "Valley Vista"), Douglas A. DeSalvo, Douglas A. DeSalvo Chiropractic, Inc. (collectively "DeSalvo"), Brian E. Kilcourse, and BEK Consulting LP (collectively

"BEK")(Compl. ¶¶ 9-11, 33-36). Three of the ten Plaintiffs who allegedly purchased policies from American General are Colorado residents--David George, Deborah George, and Audio Book Services, Inc. (collectively "ABS"). (Compl. ¶¶ 25-27) (all ten Plaintiffs listed by name, collectively "American General Plaintiffs"). The factual background of all of the American General Plaintiffs' claims is substantively identical.

According to the First Amended Complaint, in December 2002, American General agent John Hohman approached BEK regarding establishing a defined benefit plan funded by American General insurance policies in compliance with section 412(i) of the Internal Revenue Code.[2] (Compl. ¶ 187). Mr. Hohman discussed the plan with BEK in late 2002 and early 2003, including around December 16, 2002, December 30, 2002, and May 9, 2003, and recommended that the plan be funded in a particular manner with particular insurance policies.[3] (Compl. ¶ 187-88). Mr. Hohman represented that the plan would provide retirement benefits to Mr. Kilcourse and BEK Consulting's employees as well as federal income tax deductions for BEK Consulting, which was to pay the premiums on the policies used to fund the plan.[4] (Compl. ¶ 189). Mr. Hohman also promised that BEK would have large tax-free returns from the plan as he proposed to fund it.[5]

---

[2]The allegations regarding discussions with Valley Vista, ABS, and DeSalvo by American General agents Cunning, Sanders, Thornhill, Trujillo, Kemper, and Jenkins are identical. (Compl. ¶ 163, 171, 179).

[3]See also Compl. ¶¶ 163-164 regarding identical discussions with Valley Vista in late 2003 and early 2004, including around March 17, 2004; Compl. ¶¶ 171-172 regarding identical discussions with ABS in the latter half of 2002 and early 2003, including around September 24, 2002, September 26, 2002, October 1, 2002, October 23, 2002, November 8, 2002, November 19, 2002, December 10, 2002, December 18, 2002, and May 20, 2003; and Compl. ¶¶ 179-180 regarding identical discussions with DeSalvo in late 2002 and early 2003, including around February 5, 2003, February 10, 2003, and February 11, 2003.

[4]See also Compl. ¶ 165, 173, 181.

[5]See also Compl. ¶ 167, 175, 183.

(Compl. ¶ 191).

Mssrs. Hohman, Cunning, Thornhill, Trujillo, Kemper, Jenkins, and Ms. Sanders also made several identical representations upon which BEK, Valley Vista, ABS, and DeSalvo allegedly relied in entering into their respective defined benefit plans including:

1. The life insurance policies were appropriate for use in funding the plan as a qualified 412(i) plan;

2. The life insurance policies provided a permissible death benefit under the plan;

3. The premiums to be paid for the policies qualified as federal income tax deductions; and

4. The plan and the insurance policies used to fund it complied with all federal tax laws and regulations.

(Compl. ¶¶ 166, 174, 182, 190). Mssrs. Trujillo and Kemper also represented to ABS that the Consultant Defendants had "secured a letter opinion of 'more likely than not' from the international firm of Bryan Cave LLP with respect to the viability of this arrangement." (Compl. ¶ 174). Relatedly, American General's agents did not disclose (1) the risks of the investment activity, (2) the potentially unlawful nature of the program (including operation of the surrender charge), or (3) the IRS's refusal to recognize the purported tax benefits of that type of program. (Compl. ¶¶ 167, 175, 183, 191).

All of the American General Plaintiffs established defined benefit plans and purchased the policies underlying the plans from American General. (Compl. ¶¶ 168, 176, 184, 191). Each of the American General Plaintiffs who are entities paid premiums on those policies and recorded corresponding federal income tax deductions for those payments. (Compl. ¶¶ 168-169,176-177, 184-185, 104-105, 191-192).

American General Plaintiffs assert claims for conspiracy, common law fraud, negligent misrepresentation, violations of California Business and Professions Code section 17500 for false advertising and fraud, violation of the California Consumer Legal Remedies Act, violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act, and unjust enrichment against American General.[6] American General has moved to dismiss all claims under Federal Rules of Civil Procedure 12(b)(6) and/or 9(b). The Court's analysis follows.

## II.

## <u>ANALYSIS</u>

### A.    Legal Standard

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004). A 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, __, 127 S. Ct. 1955, 1974 (2007). To survive a 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions." *Id.*, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level [. . .] on the assumption that all

---

[6]In the Analysis section below, the Court refers to the BEK Plaintiffs for simplicity. Because the allegations of the remaining named Plaintiffs who purchased life insurance policies from American General are identical to  the BEK Plaintiffs, the following analysis applies equally to all.

the allegations in the complaint are true (even if doubtful in fact)[.]" *Southwestern Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (quoting *Twombly*, 127 S.Ct. at 1965). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

**B.    Plaintiffs' Consolidated Motion to Strike Exhibits**

Plaintiffs move to strike certain of the Defendants' exhibit. Specifically, they filed Plaintiffs' Consolidated Motion to Strike Exhibits Attached to Defendants' Motions to Dismiss and Supporting Memorandum of Law. ("Consolidated Motion to Strike") (Doc. #66). To the extent the Consolidated Motion to Strike pertains to the exhibits submitted by American General, the Court resolves the motion as follows.

Plaintiffs argue that the exhibits submitted by American General in support of its Motion to Dismiss should be stricken and not considered by the Court because they are not authenticated and are neither referred to in the complaint nor central to the claims. American General counters that Plaintiffs have not questioned the authenticity of the documents, that the documents are identical to those documents produced to American General by Plaintiffs in their Initial Disclosures, and that the documents are policies which are central to American General Plaintiffs' claims.

The Fifth Circuit has consistently stated that the Court may consider documents on a motion to dismiss without converting that motion into one for summary judgment where the documents are central to the plaintiffs' claims and are referred to in the complaint. *In Re Katrina Canal Breaches Lit.*, 495 F.3d 191, 205 (5th Cir. 2007) (considering insurance contracts on a motion to dismiss);

*Causey*, 394 F.3d at 299 (affirming dismissal of defendant under 12(b)(6) based on consideration of documents that explained the legal relationship between the defendants); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (approving consideration of documents attached to motion to dismiss noting that "[i]n so attaching, the defendant merely assists [. . .] the court in making the elementary determination of whether a claim has been stated.").

The exhibits submitted by American General purport to be redacted copies of the policies for the individual American General Plaintiffs. (*See generally* App. to Defs.' Mot. to Dismiss). The policies issued by American General are clearly referenced repeatedly in the Complaint. (*See , e.g.*, Compl. ¶¶ 163, 164, 168-169). All of the American General Plaintiffs' claims originate from the marketing and sale of the American General policies to them. (Compl. ¶¶ 1, 205, 212, 220). Further, the American General Plaintiffs have prayed for the remedy of rescission--a remedy that by its nature implicates the policy contract. (Compl. at Prayer). The copies of the parts of the policies submitted by American General in its Appendix appear to be the policies referred in the Complaint and Plaintiffs, while pointing out that the documents are unauthenticated, have not argued that they are not in fact authentic. Further, the bates numbered documents produced by Plaintiffs as their life insurance policies are substantially identical to the documents in American General's Appendix. In short, based on these considerations and applicable law, the Court determines that consideration of the policy documents in the American General Appendix is appropriate without converting the 12(b)(6) motion into a motion for summary judgment. Accordingly, the Court DENIES Plaintiffs' Consolidated Motion to Strike with regard to the policy documents in the American General Appendix. The Court, however, GRANTS Plaintiffs' Consolidated Motion to Strike as to all other associated documents, as they do not appear to be central to the claims nor are they referenced in

the Complaint.  *See Collins*, 224 F.3d at 498-99.

### C.    American General's Motion to Dismiss

American General moves to dismiss each count of the Complaint.  The Court examines the claims in turn.  Because all claims in this matter are state law claims, the Court's jurisdiction is based on diversity.  28 U.S.C. §1332.  Thus, Texas state substantive law, including precedent on choice of law and federal procedural law, will be applied.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).

### 1.    ERISA Preemption

American General argues that Plaintiffs' claims are all preempted by the Employee Retirement Income Security Act ("ERISA").  29 U.S.C. §1001 *et. seq.*  The Court disagrees.  ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . .." 29 U.S.C. §1144(a).  Although this express statutory preemption is very broad, courts focus on "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."  *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001). In accounting for the objectives of Congress as embodied in the ERISA statute, the Fifth Circuit requires a defendant asserting preemption to prove that: (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan" and (2) the claim "directly affects the relationship among traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries."  *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 (5th Cir. 2008) (finding no preemption where employees' complaint was fraudulent inducement to end their employment for which they "need not prove that any aspect of [plan] administration [. . .] was improper").

American General fails to satisfy this two-part test. In fact, American General has not presented any argument regarding the test. (*See* Am. Gen Brief in Support of Mot. at 40-41) (Doc. # 42); (Am. Gen. Reply at 29) (Doc. #83). With respect to the first prong of the test, Plaintiffs' claims are all state tort or state statutory claims. The claims do involve defined benefit plans but it is the tax consequences of the insurance policies used to fund the plans rather than the merits of plans themselves that underlie the Plaintiffs' case. While evaluation of the claims will potentially involve interpretation of the underlying insurance policies and the Internal Revenue Code, American General has not demonstrated that it will require an evaluation of the defined benefit plan itself. Nor has American General shown that the claim directly affects a relationship between traditional ERISA entities. There are no claims brought by the plan administrators or anyone purporting to act on behalf of any of Plaintiffs' defined benefit plans. The Fifth Circuit has repeatedly found, under similar circumstances, that ERISA does not preempt a state fraud claim. *Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th Cir. 1996) (finding fraud claim not preempted by ERISA because resolution did not depend on the scope of plaintiff's rights under the ERISA plan); *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 946-47 (5th Cir. 1995) (finding no preemption of fraudulent inducement claim even though it involved traditional ERISA entities); *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990) (finding claims for fraudulent inducement to enter into a plan not preempted by ERISA). In sum, Plaintiffs' claims are not preempted by ERISA as American General has not established that Plaintiffs' claims, as currently pled, necessitate an analysis of the scope of Plaintiffs' defined benefit plans or involve plan interpretation or administration.

### 2. Count One - Civil Conspiracy

American General has moved to dismiss Plaintiffs' civil conspiracy claim for failure to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and *Twombly*, *supra*. (*See* Am. Gen. Brief in Supp. of Mot. at 14-17) ( Doc. # 42). Plaintiffs assume in their briefing that Texas substantive law applies to their civil conspiracy claim, and American General does not argue the application of any other particular state's substantive law. Accordingly, as the parties appear to assume the application of Texas law to the civil conspiracy claim, the Court similarly assumes, without deciding, that Texas law governs. *See Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 705 (5th Cir. 1999) (applying Texas law to dispute where parties assumed that Texas law applied).[7] Moreover, to the extent American General is challenging the pleadings under Rule 8 and *Twombly*, in diversity actions, federal law governs pleading requirements. *Colonial Penn. Ins. Co. v. Market Planners Ins. Agency*, 1 F.3d 374, 376 (5th Cir. 1993). To state a claim for conspiracy under Texas law, Plaintiffs must allege facts to support each of the following elements: (1) American General was a member of a combination of two or more persons; (2) the object of the combination was either to accomplish an unlawful purpose or to accomplish a lawful purpose by

---

[7]In any event, because the laws of the states which could potentially govern under the Restatement (Second) Conflict of Laws § 145 (1) are in accord with Texas law as to the elements of a civil conspiracy claim, the Court would still apply Texas law. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984) (before undertaking a choice of law analysis, the court "must first determine whether there is a difference between the rules of New Mexico and Texas on this issue"); *Fraud-Tech, Inc v. Choicepoint, Inc.*, 102 S.W.3d 366, 377-78 (Tex. App. -- Fort Worth 2003, pet. denied) ("Before undertaking a choice of law analysis, we look to whether a conflict of law exists. If no conflict exists on the issues, we need not decide which state's laws govern."). *Compare Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005) (setting forth the elements of a civil conspiracy claim under Texas law) *with Wells Fargo Bank v. Arizona Laborers, Teamsters, & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 36 (Ariz. 2002); *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (Ind. 1966); *Williams v. Maislen*, 165 A. 455, 456 (Conn. 1933); *Adcock v. Brakegate, Ltd.*, 654 N.E.2d 888, 894 (Ill. 1994); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457, 459 (Cal. 1994); *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989); *Eicher v. Mid America Fin. Inv. Corp.*, 702 N.W.2d 792, 805 (Neb. 2005).

unlawful means; (3) the members of the combination had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) Plaintiffs suffered injuries as a proximate result of the wrongful acts. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Under Texas law, "[c]ivil conspiracy, generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, might be called a derivative tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). In Texas, because conspiracy requires specific intent, one cannot agree or conspire to be negligent. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996).[8] Thus, the Court views the conspiracy claim as a claim of conspiracy to defraud.

Plaintiffs allege that, on information and belief, all Defendants "agreed to join in a conspiracy related to the design, marketing, and sale of life insurance policies for defined benefit pension plans seemingly in compliance with Section 412(i) of the Code."(Compl. ¶ 205). Plaintiffs further allege on information and belief that all Defendants "knew that the object of this conspiracy was (a) to market and sell defined pension benefit plans, such as those held by Plaintiffs, (b) to design, market, and sell life insurance policies that were not appropriate or legally permissible for such plans, and (c) to market and sell life insurance policies to be used in funding purported 412(i) plans without disclosing the known risks associate with such arrangements." *(Id.* ¶ 206). Plaintiffs allege on information and belief that Defendants "knew that this object was both unlawful and would be accomplished by unlawful means, such as fraud and other misrepresentations." *(Id.)* Plaintiffs further

---

[8]Although other potentially applicable state law may be to the contrary, it is of no ultimate import as the only other tort alleged by Plaintiffs is negligent misrepresentation based on identical facts to those of their conspiracy claim. The same reasoning discussed herein with respect to conspiracy to defraud would apply to a conspiracy to commit negligent misrepresentation.

allege that Defendants, on information and belief, "had a meeting of the minds on the object of or course of action for this conspiracy," "committed multiple unlawful and overt acts to further the object or course of action for this conspiracy," and that these "unlawful acts proximately caused the damages suffered by Plaintiffs." (*Id.* ¶¶ 207-08).

American General contends that Plaintiffs' civil conspiracy claims should be dismissed because the Complaint "fails the pleading standard recently established by the United States Supreme Court in *Twombly* for pleading a conspiracy claim." (Am. Gen. Brief at 14). In response, as to a conspiracy between American General and the Consultant Defendants, Plaintiffs argue that they "allege multiple facts showing an agreed collaboration among the Consultant Defendants and Insurance Defendants to design and market special insurance policies to fund abusive 412(i) plans." (Pl. Consol. Resp. at 55) (Doc. # 65). As to a conspiracy between American General and the other Insurance Defendants, Plaintiffs contend that the Complaint read as a whole contains "allegations support[ing] a plausible inference that Defendants had a 'meeting of the minds' regarding this conspiracy to market and sell abusive 412(i) plans." (*Id.* at 64).

As already stated (*see supra*), to survive a 12(b)(6) motion, the complaint must contain plausible grounds to show entitlement to relief, not just "labels and conclusions." *Twombly*, 127 S. Ct. at 1965. Having carefully considered the First Amended Complaint, the parties' arguments and applicable law, the court concludes that Plaintiffs have failed to plead a viable claim for conspiracy under Rule 8(a) and *Twombly*.[9] Plaintiffs' Complaint is devoid of any factual allegations supporting

---

[9]While the Court determines that Plaintiffs' First Amended Complaint is deficient under Rule 8(a) and *Twombly*, the Court is mindful that *Twombly* involved a claim under Section 1 of the Sherman Act, whereas this case concerns a state law civil conspiracy claim. The Court rejects American General's suggestion that a wholesale adoption of *Twombly* is appropriate.

their formulaic recitation of at least one of the legal elements of conspiracy.  The Complaint alleges identical acts, misrepresentations, and omissions by each Insurance Defendant and each Insurance Defendant's purported agent in marketing and selling life insurance policies for use in defined benefit plans under section 412(i) of the Internal Revenue Code.  However, there are no allegations to suggest that any acts took place in the context of, or as result of, some prior agreement among the Insurance Defendants.

The only remotely specific allegation of an agreement between American General and any other Defendant is the allegation that "Consultant Defendants [...] proceeded to work together with the Insurance Defendants to further develop and market this purported 412(i) arrangement . . .." (Compl. ¶ 71).  This allegation is insufficient to support a conspiracy between American General and Consultant Defendants, as it fails to specify who was involved, precisely what the interaction was or what actions were decided upon, or when any meeting of the minds occurred between those parties or provide factual background to allow an understanding of how "working together" is equivalent to a conspiracy to defraud.  Moreover, this allegation does not support the claim that the Insurance Defendants conspired with one another.  In fact, the Court finds the gist of Plaintiffs' claims--that these competitors all got together and agreed to market and sell competing life insurance policies as part of defined benefit plans when they all knew such a scheme would not result in a legal section 412(i) plan--highly implausible.  Even to the extent that Plaintiffs allege that the Insurance Defendants are each connected with the Consultant Defendants, any connection is just as readily explained by the independent goals of American General and the other companies to offer products to compete with each other than by some conspiratorial agreement.  *Cf. Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987) (dismissing conspiracy claim "in the absence of factual allegations from

which a conspiracy [. . .] can reasonably be inferred.").

Mindful that the conspiracy being pled is a conspiracy to commit fraud, the Court finds no factual support for the element that American General had a meeting of the minds with any other Defendant to do anything in furtherance of committing fraud. The only allegations about an agreement among the Insurance Defendants are conclusions of the type to which American General would have no idea where to begin responding. *Twombly*, 127 S.Ct. at 1970 n.10. *(See, e.g.*, Pls.' Consol. Resp. at 52-53) (notes 285-286, 290-293 and accompanying text using language such as "defendants devised a scheme," "Insurance Defendants conspired with each other," and "Defendants had a meeting of the minds on the object of...this conspiracy"). *See also Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (affirming 12(b)(6) dismissal finding that a complaint alleging that coaches "encouraged and/or allowed" a student's behavior did not allege specific facts to show an agreement as to that behavior between the coach and the student).

In *Twombly*, the Court noted that but for the parallel conduct allegations, it doubted that the complaint met the Rule 8 notice requirements as it lacked mention of "specific time, place, or person involved in the alleged conspiracy." 127 S.Ct. at 1970 n.10. The only references in the instant Complaint to the alleged time frame in which Defendants conspired are the legally insufficient "in the late 1990's" and some time after September 1999. (Compl. ¶¶ 59, 71). A period of years is not definitive enough in the context of the conspiracy claim as alleged to put any defendant on sufficient notice to be able to defend. The conspiracy claim identifies no specific time or place in which any meeting of the minds between the Insurance Defendants occurred and no individuals from any Insurance Defendants who allegedly participated in such meetings, conversations, or communications. Plaintiffs have not pled the factual specificity to elevate their claim above the speculative level from

conceivable to plausible. *Twombly*, 127 S.Ct. at 1974; *Love Terminal Partners, LP v. City of Dallas, Texas*, 527 F. Supp.2d 538, 554 (N.D. Tex. 2007) (dismissing conspiracy claim in antitrust case under 12(b)(6) for insufficient factual pleading where allegations included that the partes "were already secretly discussing," "Defendants had the parameters of their illegal combination in place," and "Defendants had agreed the [object of their conspiracy] should be destroyed."). As such, Count One is DISMISSED.[10]

### 3.     Count Two - Fraud

American General has moved to dismiss Plaintiffs' fraud claims for failure to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. (*See* Am. Gen. Brief at 5-14). Again, to the extent American General is challenging the pleadings under Rule 9(b)'s particularity requirements, in diversity actions, federal law governs pleading requirements. *Colonial Penn. Ins. Co.*, 1 F.3d at 376; *see also Hanna v. Plumer*, 380 U.S. 460, 465-74 (1965). Unlike Indianapolis Life Insurance Company which moved to dismiss Plaintiffs' fraud claims pursuant to Rule 9(b) *and* based on the merits of the claim, American General limits its motion to Plaintiffs' failure to satisfy the particularity requirements of Rule 9(b). (*See* Am. Gen. Brief at 5-14). Accordingly, as federal law pertaining to pleading requirements controls, the Court need not undertake a choice of law analysis.

A dismissal for failure to plead with particularity in accordance with Federal Rule of Civil Procedure 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software*

---

[10]Having determined that Plaintiffs' civil conspiracy allegations are deficient under Rule 8(a) and *Twombly*, the Court need not reach American General's argument that the pleading standard in this conspiracy to defraud case "is actually greater than that set forth in *Twombly*[.]" *See* Am. Gen. Reply at 15 (Doc. # 83).

*Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). Rule 9(b) provides, in pertinent part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Essentially, the standard requires the Complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

American General argues that Plaintiffs' fraud allegations fail to satisfy the Fifth Circuit's test in several respects. First, American General argues that the Complaint lacks specificity by failing to match the alleged misrepresentations to the time and place where they were made and by not identifying whether they were made orally or in writing. With respect to Mr. Kilcourse and BEK Consulting, the Complaint alleges that Mr. Hohman spoke to them in late 2002 and early 2003, including around December 16, 2002, December 30, 2002, and May 9, 2003, and later alleges that Mr. Hohman made four specific representations "during the above-referenced discussions." (Compl. ¶¶ 187, 190).

American General is correct that it is less than clear whether the "above-referenced

discussions" refer to the specific dates identified. Moreover, if the Court were to assume the representations alleged were made on the specific dates, it would essentially be allowing Plaintiffs to amend their Complaint to add specificity through briefing--wherein Plaintiffs point to the listed specific dates in response to various Defendants' arguments that they have not identified "when" the alleged representations were made. Such an amendment would be improper. *Skidmore Energy, Inc. v. KPMG, LLP*, No. 3:03-cv-2138-B, 2004 WL 3019097, at * 5 (N.D. Tex. Dec. 28, 2004). To the extent that Plaintiffs would purport to allege that the representations were made on some occasion that is not one of the dates specifically identified, a fraud claim based on such an allegation would be unsupported by the Complaint. Further, while the current allegations are specific enough to answer the "who and what," they do not answer the "how" by failing to specify whether a statement was oral or written, nor do they answer the "where" question by failing to specify even the state, much less a more precise location, in which these representations were made. As currently pled, the Complaint does not sufficiently connect the alleged representations and their form (oral or written) to the time and place in which they were made to meet the specificity required in the Fifth Circuit.[11]

American General further argues that the allegations in the Complaint fail to explain "why the statement or omission complained of was false or misleading." *Williams*, 112 F.3d at 178-179 (noting that "[a] complaint can be long-winded, even prolix, without pleading with particularity"). The Court examines the explanation as to the falsity of each specific alleged misrepresentation.[12]

---

[11]The Court notes that while some of the representations allegedly made to ABS Plaintiffs contain specific quotations that imply that the representation was in written form, ABS Plaintiffs still failed to identify what the document was and when and where it was presented. (Compl. ¶ 174).

[12]The representations made to BEK that the Court finds specific enough to satisfy the "what" requirement of the fraud particularity pleading are identified in paragraph 190 of the Complaint. Although paragraph 189 generally states that Mr. Hohman represented that the defined benefit plan would provide

First, Plaintiffs allege that Mr. Kilcourse and BEK Consulting were told that the life insurance policy to be issued by American General was appropriate for use in funding the company's defined benefit plan as a qualified 412(i) plan. (Compl. ¶¶ 190(a)).[13] However, there is no explanation as to why those statements *were false when made* in 2002 and early 2003. Although Plaintiffs generally allege that the IRS was scrutinizing 412(i) plans funded by insurance policies in the early 2000's, they fail to allege that prior to the BEK Plainitffs' purchase of the American General policy, the IRS had made any definitive statement about the legality of a 412(i) plan funded with that type of American General policy. (Compl. ¶ 195). To the contrary, in fact, Plaintiffs allege that in September 1999 the law firm of Bryan Cave LLP issued a legal opinion that funding the type of defined benefit plan being marketed to Plaintiffs with a life insurance policy "substantially similar" to one issued by Indianapolis Life "more likely than not" would satisfy section 412(i).[14] (Compl. ¶70(b)).

Second, there is no explanation as to why the alleged representation that the American General policy provided a permissible death benefit under a 412(i) plan was false when made. (Compl. ¶¶ 166(b), 174(b), 182(b), 190(b)). The only allegation regarding permissible death benefits

---

"certain retirement benefits" and "federal income tax deductions for the BEK Plaintiffs," the alleged retirement benefits are not specifically identified. Further, the allegation regarding the federal income tax deductions appears entirely duplicative of the allegation in paragraph 190(c) discussed herein.

[13]As already stated (*see supra* notes 1-4), the allegations regarding discussions with Valley Vista, ABS and DeSalvo by American General agents Cunning, Sanders, Thornhill Trujillo, Kemper and Jenkins are identical to the allegations pertaining to Mr. Kilcourse and BEK Consulting. Though the Court refers to the BEK Plaintiffs for simplicity, its analysis applies to all the American General Plaintiffs.

[14]Although ABS lists the representation that the Consultant Defendants had secured a letter opinion of "more likely than not" from Bryan Cave assessing the proposed funding structure as one of the allegedly false representations, Plaintiffs also state earlier in the Complaint that such an opinion was in fact rendered. Compare Compl. ¶ 70 to ¶ 174(e). Thus, in addition to failing to explain how this representation is false, ABS simultaneously relies on its truth. ABS therefore fails to state a claim for fraud based on this representation, as it has alleged it to be true.

relates to a 2004 IRS revenue ruling in which the IRS allegedly stated that the issuance of life insurance policies greatly in excess of the permissible death benefit under a 412(i) plan was a listed transaction that the IRS considers to be an abusive tax shelter. (Compl. ¶ 201). There are no pre-2004 allegations explaining why any 2002 or 2003 statement about death benefits was false when made.

Third, Plaintiffs allege that the representation that the premiums paid on the American General policy by BEK were deductible for income tax purposes was false. (Compl. ¶ 190(c)). Similarly, Plaintiffs allege that the representation that the defined benefit plan, as funded with the American General insurance policy, complied with all federal tax laws and regulations was also false. (Compl. ¶ 190(d)). Plaintiffs' citation to "early 2000's" IRS speeches "expressing concern" about the funding of defined benefit plans with insurance policies and the IRS's intent to examine 412(i) plans for misuse is ambiguous and insufficient to explain why any statements regarding the federal income tax ramifications of the plans were false when made in 2002-03.

Overall, Plaintiffs appear to be attempting to use the ultimate rulings and rule making by the IRS in 2004-2005, which they allege resulted in the illegality of BEK's defined benefit plans under section 412(i), to retroactively demonstrate that representations made by American General's alleged agents in 2002-03 were false when made. That leap of logic does not suffice to provide, as currently pled, an explanation as to why each representation was false when made, particularly in light of a legal opinion to the contrary. Alleging that the Insurance Defendants "received warnings" at some time after September 1999 about the tax risks of the defined benefit plans funded by life insurance policies and knew of IRS scrutiny of this type of 412(i) plan in the early 2000's is not the same as alleging that the plans and policies were illegal when they were sold or that any specific representation allegedly

made was false at any time prior to 2004, much less when it was made.  (Compl. ¶ 72).[15]

Based on the foregoing, Count Two is DISMISSED for failure to comply with Rule 9(b) with respect to both the alleged affirmative misrepresentations and omissions.  Plaintiffs' failure to state a claim for fraud-- the offense underlying its conspiracy claim-- provides a separate basis upon which the Court finds the Count One conspiracy claim should be, and is therefore, DISMISSED.  *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997) (granting summary judgment on conspiracy claim noting that "allegations of conspiracy are not actionable absent an underlying [tort]"); *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) (noting that "because the fraud claim fails[,] the fraud based conspiracy claim must fail also").

### 4.      Count Three - Negligent Misrepresentation

American General argues that Plaintiffs' claim for negligent misrepresentation should be dismissed for the same reasons as its fraud claim. (*See* Am. Gen. Brief at 13-14).  Plaintiffs oppose for the same reasons discussed and evaluated by the Court in connection with the fraud claim. Additionally, however, Plaintiffs argue that their negligent misrepresentation claim is not subject to the heightened particularity pleading standard of Rule 9(b).  The Court disagrees.  Relying on an unpublished Fifth Circuit opinion, *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662 (5th Cir. 2004), and a subsequent opinion from this court, *American Realty Trust, Inc. v.*

---

[15]Plaintiffs' fraud claims based on omissions is premised on the affirmative statements made by American General's agents, which Plaintiffs claim were false or created a false impression because the agents failed to disclose the risks of the plans they recommended.  Because Plaintiffs' affirmative statements are not well pled under Rule 9(b), as discussed above, their omissions suffer from the same defects by association. Further, the alleged omissions of failing to disclose "the risks" and the "potentially abusive nature of this program" are insufficiently specific to explain exactly what information Plaintiffs claim American General knew and did not tell Plaintiffs prior to their purchase of life insurance policies. Thus, the Court determines there are insufficient facts pled with particularity to support any omission as the basis for a fraud claim.

*Travelers Cas. & Surety Co. of Am.*, 362 F. Supp.2d 744 (N.D. Tex. 2005) (Godbey, J.), Plaintiffs argue that they should not have to plead with particularity because their negligence and fraud claims are not intertwined. This argument misinterprets those cases and ignores the reality of the Complaint.

Plaintiffs have effectively pled negligent misrepresentation as a lesser-included offense to their fraud claims. Although they correctly point out that they have labeled the claims separately as two different counts in the Complaint, the factual allegations underlying the claims are verbatim. (*Compare* Compl. ¶ 212 to ¶ 220). Under those circumstances, "when the parties have not urged a separate focus on the negligent misrepresentation claims," the Fifth Circuit has found negligent misrepresentations claims subject to Rule 9(b) in the same manner as fraud claims. *See Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (evaluating negligent misrepresentation in the same manner as fraud in part because both were "based on the same set of alleged facts"); *see also Biliouris v. Sundance Res., Inc.*, 559 F. Supp.2d 733, 737 (N.D. Tex. 2008) (dismissing negligent misrepresentation claim that was based on the same operative facts as an insufficient fraud claim); *Kougl v. Xspedius Mgmt. Co.*, No. 3:04-cv-2518-D, 2005 WL 1421446, at * 5-6 (N.D. Tex. Jun. 1, 2005) (dismissing negligent misrepresentation claim that restated the same factual basis as a fraud claim for failure to satisfy Rule 9(b)). Plaintiffs' negligent misrepresentation claim fails to satisfy Rule 9(b) to the same extent and for the same reasons as its fraud claim discussed above. Thus, Count Three is DISMISSED.

### 5. Counts Four and Five - Violations of Texas Statutory Law

Plaintiffs allege American General's fraudulent misrepresentations and omissions regarding, among other things, the tax benefits of the 412i plans violated the Texas Insurance Code Chapter

541 (Compl. ¶¶ 225-35) and the Texas Deceptive Trade Practices Act (Compl. ¶¶ 236-44). American General has moved to dismiss the Texas statutory claims of the ten (10) American General Plaintiffs under Rule 9(b) and for failure to state a claim under Rule 12(b)(6), and has moved to dismiss the Texas statutory claims of the twenty-four (24) non-American General Plaintiffs for lack of standing. The Court will first consider the motion to dismiss as to the American General Plaintiffs.

   *a. The American General Plaintiffs*

American General moves as a general matter to dismiss Plaintiffs' Texas statutory claims for failure to satisfy Rule 9(b). In addition, American General argues that the Texas statutory claims should be dismissed because Texas law does not apply to transactions that have the most significant relationship (under the Restatement test) to another state. Alternatively, American General contends that, assuming the application of Texas law, American General Plaintiffs' DTPA claims fall within a statutory exemption and should be dismissed.

The Court first turns to American General's argument that the Texas statutory claims should be dismissed under Rule 9(b), for the same reasons the Court dismissed Plaintiffs' fraud and negligent misrepresentation claims. As to the DTPA claims, the Court agrees that Plaintiffs have failed to satisfy Rule 9(b). It is well-established that "[c]laims alleging violations of the DTPA are subject to the requirements of Rule 9(b)." *Patel v. Holiday Hospitality Franchising, Inc.*, 172 F.Supp.2d 821, 824-25 (N.D. Tex. 2001) (and cases cited therein). A comparison of Plaintiffs' DTPA claim in the First Amended Complaint with its fraud claim reveals that the DTPA claim is predicated on the same misrepresentations and omissions as the fraud claim. (*See* Compl. ¶ 239) (DTPA claim making the same fraudulent misrepresentation claims as earlier alleged in the fraud claim). Plaintiffs' DTPA allegations are deficient under Rule 9(b) for the same reasons as its fraudulent and negligent

misrepresentation claims are insufficient under Rule 9(b) (*see supra*).

As to Count 4 alleging violations of Chapter 541 of the Texas Insurance Code, the Court also agrees with American General that this claim should be dismissed for failure to satisfy Rule 9(b). Although American General has failed to provide the Court with any cases in this circuit applying Rule 9(b) to Chapter 541 claims, case law supports applying Rule 9(b) to all averments of fraud, "whether they are part of a claim of fraud or not[.]" *See Lone Star Ladies Investment Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ( stating that the "proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated."). Plaintiffs' Chapter 541 allegations are based on the identical misrepresentations and omissions as the fraud claims, the negligent misrepresentation claims and DTPA claims. (*See* Compl. ¶¶ 228-29). Absent the allegations of fraudulent misrepresentations and omissions, no claim would remain for violations of Chapter 541 of the Texas Insurance Code.

Accordingly, the Court grants American General's motion to dismiss Plaintiffs' DTPA claim and Chapter 541 Texas Insurance Code claim for failure to satisfy Rule 9(b). Thus, Counts Four and Five are DISMISSED pursuant to Rule 9(b).[16]

---

[16]Alternatively, the Texas statutory claims should be dismissed because the allegations do not allow the Court sufficient factual detail to make a considered choice of law analysis as to whether Texas law applies at all. A complaint should be dismissed when the governing law cannot be determined from the facts alleged therein. *See Enigma Holdings v. Gemplus Int'l. S.A.*, No. 3:05-cv-01168-B, 2006 WL 2859369, at *7 (N.D. Tex. Oct. 6, 2006) (Boyle, J.). In *Enigma*, the Court dismissed fraud based claims because the facts alleged "only cursorily addressed the place where the defendants made the misrepresentations, and [did] not address the place, or places, where plaintiff acted in reliance upon the defendant's representations or the place where plaintiff received the representations." *Id.* Other than asserting that American General is incorporated in Texas, Plaintiffs provide the Court with no other reasons for the application of Texas law to this dispute. Further, the Court rejects Plaintiffs' argument that determining whether Texas law governs is premature, as the choice of law issue is normally a "threshold inquiry that must be made before the Court can adequately address the sufficiency of the pleadings." *Id.*

*b. The Twenty-Four (24) Non-American General Plaintiffs*

As to the twenty-four (24) non-American General Plaintiffs, American General moves to dismiss their Texas statutory claims for lack of standing. The Court agrees.

The Court has no jurisdiction over a claim that does not meet the requirements of Article III, which restricts federal judicial authority to resolution of "cases and controversies." U.S. Const., art. III §2 ("The judicial Power shall extend to all Cases...arising under...the Laws of the United States...[and] to Controversies...between Citizens of different States."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). A case or controversy is present only where a plaintiff purporting to bring a claim has standing to assert that claim. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006). A prospective plaintiff has standing only if each of three prongs are satisfied: (1) that it has suffered an injury in fact (one that is concrete and actual, not hypothetical), (2) there is a casual connection between the injury and the challenged conduct of the defendants, and (3) the injury will likely be redressed by a favorable decision. *Lujan*, 504 U.S. at 560 (internal citations omitted). "That a suit may be a class action [. . .] adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 (1976). The party seeking review must be among the alleged injured. *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972).

Plaintiffs allege that they have standing to bring claims under the Texas Insurance Code and Deceptive Trade Practices Act because each of the "Texas Insurance Code Plaintiffs [. . .]is a 'consumer' as defined under Section 17.45(4) of the Texas Business and Commerce Code". (Compl.

¶¶ 231, 237). However, section 17.50 of the Texas Business and Commerce Code provides that a consumer may maintain any action where, *inter alia*, the use by any person of a false or misleading deceptive act or of an act in violation of the Insurance Code is a producing cause of economic damages to the plaintiff. TEX. BUS. & COMM. CODE §17.50(a). The only Plaintiffs who allege that American General has caused them economic damages by any acts are Valley Vista, DeSalvo, BEK and ABS. Thus, because they plead no insurance transaction with American General and no economic injury caused by American General, the Court concludes that the twenty-four (24) non-American General Plaintiffs have no standing to make these Texas statutory claims against American General.[17] Accordingly, the Court grants American General's motion to dismiss the Texas statutory claims of the twenty-four (24) non-American General Plaintiffs. Counts four and five are DISMISSED for lack of standing.

6. **Counts Six and Seven: Violation of California Business and Professions Code 17200 (Unlawful Business Acts and Fraudulent Business Acts)**

Plaintiffs allege that American General is liable under the California Business and Professions Code section 17200 for (1) violations of the California Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code §1770), (2) violations of section 17200 based on false advertising, and (3) fraud. American General, in support of its motion to dismiss, argues that (1) Plaintiffs' § 17200 claims based on alleged violations of the CLRA should be dismissed because the CLRA does not govern insurance products; (2) Plaintiffs' § 17200 claims which are based on fraud should be

---

[17]Moreover, in light of the Court's determination that the conspiracy claim should be dismissed, Plaintiffs cannot rely on their purported authority that a conspiracy claim confers standing on all plaintiffs as to claims against all defendants. Further, considering that Plaintiffs do not appear to argue a conspiracy to commit a violation of the Texas statutes, it is questionable how that authority would apply to these claims (and Plaintiffs do not explain how it would). (*See* Pls.' Resp. Br. at 83).

dismissed under Rule 9(b) for the same reasons the Court dismissed Plaintiffs' fraud claims (3) the § 17200 claims by DeSalvo and BEK are barred by the statute of limitations; and (4) the 24 Non-American General Plaintiffs have no standing to sue American General under § 17200. (*See* Am. Gen. Mot. at 1-2; Am. Gen Brief at 24-25).

First, as the parties appear to assume without argument the application of California law , the Court similarly assumes, without deciding, that California law governs. *See Access Telecom*, 197 F.3d at 705 (applying Texas law to dispute where parties assumed, without argument, that Texas law applied).

Count Six alleges violations of § 17200 based on violations of the CLRA. The Court agrees with American General that Plaintiffs' § 17200 claim based on alleged violations of the CLRA should be dismissed because the CLRA does not govern insurance products. American General argues that the Complaint fails to state a claim based on the alleged violation of the CLRA, because the CLRA applies only to the "sale or lease of goods and services." CAL. CIV. CODE § 1770(a).

The term "goods" is defined in the CLRA as "tangible chattels" while the term "services" is defined as "work, labor, and services for other than a commercial or business use." CAL CIV. CODE § 1761(a)-(b). American General argues that, under California law, insurance is neither a good nor a service as those terms are defined in the CLRA. The parties do not dispute that the California Supreme Court has not rendered an opinion directly addressing this issue. In applying state law on an issue of first impression, it is the duty of this Court to determine how the highest court of a given state would rule based on its precedent. *Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 41 F.3d 429, 432 (9th Cir. 1994) ("The panel applies California law as it believes the California Supreme Court would apply it.").

- 27 -

It appears that the California Supreme Court would find that insurance is neither a good nor service under the CLRA. *Civil Serv. Employees Ins. Co. v. Super. Ct.*, 22 Cal. 3d 362, 376 (Cal. 1978) (stating in dicta that "[section 1781(d)] does not directly apply to [an insurance contract] because insurance is technically neither a 'good' nor a 'service' within the meaning of the [CLRA section 1761(a) and (b)]"). The great weight of authority applying California law has dismissed CLRA claims based on insurance contracts. *See, e.g., Mahoney v. Fidelity Nat. Title Co.*, No. SACV 08-0561-AG, 2008 WL 4286934, at *3 (C.D. Cal. Sept. 15, 2008) (dismissing CLRA claim finding that insurance is not a "service"); *Estate of Migliaccio v. Midland Nat'l. Life Ins. Co.*, 436 F. Supp.2d 1095, 1108-09 (C.D. Cal. 2006) (dismissing CLRA claim on the ground that annuities, which are defined in the California Insurance Code as part of life insurance, are not "goods" or "services"); *Bacon ex. rel. Maroney v. Am. Int'l Group*, 415 F. Supp.2d 1027, 1035-36 (N.D. Cal. 2006) (same); *Newland v. Progressive Corp.*, No. CIV-S-05-01405 DFL PAN, 2006 WL 2536625 at *5 (E.D. Cal. Aug. 31, 2006) (insurance is neither a "good" nor a "service" within the meaning of the CLRA); *Bufano v. State Farm Gen. Ins. Co.*, No. B166899, 2004 WL 2526422, at *7 (Cal. Ct. App. Nov. 9, 2004) (same); *Lynch v. Commercial Union Ins. Co.*, No. A094846, 2001 WL 1660035 at *7 (Cal. Ct. App. Dec. 28, 2001) (holding that insurance is not a "good" or "service" and noting that "insurance is a contract by which indemnification is provided for loss arising from a contingent or unknown event").[18] As the parties have pointed out, the California Supreme Court currently has the issue of whether insurance contracts are subject to the CLRA under advisement since it granted review of *Fairbanks v. Super. Ct.*,

---

[18]The cases cited by Plaintiffs are inapposite. (*See* Pl. Resp. Br. at 88 n.454). *Kagan v. Gibraltar Savings & Loan Association*, 200 Cal. Rptr 38, 35 Cal. 3d 582, 587-89 (Cal. 1984), concerns management fees for an IRA, not insurance. In *Massachusetts Mutual Life Insurance Company v. Superior Court of San Diego County*, 119 Cal. Rptr.2d 190 (Cal. Ct. App. 2002), there is no indication that any party argued that the CLRA did not apply and the court did not address that issue.

64 Cal. Rptr.3d 623 (Cal. Ct. App. 2007), *rev. granted*, 68 Cal. Rptr. 3d 273 (Cal. 2007).[19]  Thus, although the Court dismisses this claim, having found no claim as a matter of law, Plaintiffs may move for reconsideration of the dismissal in the event of a contrary ruling from the California Supreme Court in *Fairbanks*.  Because this is the type of pleading deficiency that potentially can be remedied by amendment, the Court also considers American General's other arguments for dismissal.

American General is also correct that because Count Seven is a section 17200 claim based on "fraudulent business act or practice," that claim must be alleged with particularity in accordance with Federal Rule of Civil Procedure 9(b).  *See Vess v. Ciba-Geigy, Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (applying Rule 9(b) pleading requirements to section 17200 claim).  For the reasons stated above with respect to Count Two (the fraud claim), the Court finds that Count Seven has not been stated with sufficient particularity and must be DISMISSED.[20]

False advertising under California Business and Professions Code section 17500 occurs when "any person...to induce the public to enter into any obligation relating thereto...make[s] or disseminate[s] from this state...any statement concerning any circumstance or matter of fact connected with the proposed performance...which is untrue or misleading."  CAL. BUS. & PROF. CODE §17500.  To state a claim under California Business and Professions Code section 17200 for false

---

[19]In fact, the Court has found only one case arguably applying California law in the insurance context in which a court has allowed a claim under the CLRA where the argument has been made that insurance does not fall within the definition of "goods" and "services."  *Keck v. Bank of Am.*, No. C 08-01219 CRB, 2008 WL 1743445, at * 1 (N.D. Cal. Apr. 15, 2008) (denying motion to dismiss without prejudice to renewal after *Fairbanks* decision and without comment as to whether alleged basis of suit was insurance or a lending service).

[20]American General's argument that certain claims are time-barred, and American General Plaintiffs' response that fraudulent concealment and/or equitable tolling apply, are more appropriately addressed in the summary judgment context.

advertising, one must show that "members of the public are likely to be deceived." *Bank of the West v. Super. Ct.*, 833 P.2d 545, 546 (Cal. 1992). Although this claim is subject to Rule 8, not Rule 9, the Court finds that the Complaint fails to provide facts to support a "short and plain statement of the claim." This is particularly so because the Complaint fails even to allege this required element of a false advertising claim. As such, to the extent based on a violation of section 17500, Count Six must be dismissed.

Further, given Plaintiffs' concession that "the 24 Non-American General Plaintiffs are not asserting [§ 17200] claims against American General" (Pl. Consol. Resp. Br. at 89 n. 460), and in light of Plaintiffs' failure to respond to American General's argument that the California-based Non-American General Plaintiffs have no statutory standing to sue American General under § 17200, the Court determines that Counts Six and Seven should be dismissed as to the 24 Non-American General Plaintiffs.

Accordingly, the Court grants American General's motion to dismiss the American General Plaintiffs' claims based on California law. Counts Six and Seven are DISMISSED as to the American General Plaintiffs and the non-American General Plaintiffs.

### 7. Count Eight: Unjust Enrichment

American General moves for dismissal of Plaintiff's unjust enrichment claim arguing that such a claim does not exist under California or Texas law. Putting a label on unjust enrichment has posed some difficulty for the California courts. *Compare McKell v. Washington Mutual, Inc.*, 49 Cal. Rptr.3d 227, 254 (Cal. Ct. App. 2006) (noting that "there is no cause of action for unjust enrichment" under California law) *with First Nationwide Savings v. Perry*, 15 Cal. Rptr.2d 173, 176 (Cal. Ct. App. 1992) (finding that complaint stated a cause of action for unjust enrichment). Debating whether unjust

enrichment is a cause of action seems a pointless exercise, as regardless of the characterization unjust enrichment is fundamentally a description of "the result of a failure to make restitution under circumstances where it is equitable to do so." *Lauriedale Assocs, Ltd v. Wilson*, 9 Cal. Rptr.2d 744, 780 (Cal. Ct. App. 1992); *see also Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.--Dallas 2006, no pet.) ("Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay."). "As a general principle, underlying various legal doctrines and remedies, [unjust enrichment] is synonymous with restitution." *Melchior v. New Line Productions, Inc.*, 131 Cal. Rptr.2d 347, 357 (Cal. Ct. App. 2003).

Plaintiffs appear to agree with the general principle that unjust enrichment is not available as a claim or equitable basis of recovery when a valid contract exists. *California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.*, 114 Cal. Rptr.2d 109, 125 (Cal. Ct. App. 2001) ("as a matter of law, "a quasi-contract action for unjust enrichment does not lie where...express binding agreements exist and define the parties' rights."); *see* Pls.' Resp. Br. at 94. Plaintiffs argue though that their unjust enrichment claim is not based on the insurance policies, but instead on "Defendants' misrepresentations and are separate and apart from the insurance contracts." (Pls.' Resp. Br. at 94). Plaintiffs are correct that "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud." *McBride v. Boughton*, 20 Cal. Rtpr.3d 115, 121 (Cal. Ct. App. 2004). Nonetheless, because a contract exists, the quasi-contract theory of unjust enrichment, whether characterized as a cause of action or not, will not be available if they do not succeed on their fraud claim. *Nibbi Bros.*, 253 Cal. Rptr at 294 (applying requirements for fraud claim to unjust enrichment action predicated on misrepresentations). Under these circumstances,

where the success of the unjust enrichment claim rises and falls with the fraud claim, the Court finds that the attempt to plead "unjust enrichment" as a separate claim adds nothing. *See Jogani v. Super. Ct.*, 81 Cal. Rptr.3d 503, 511 (Cal. Ct. App. 2008). If Plaintiffs are successful on their fraud claim, they may seek restitution as a remedy. There is no need for a separately labeled claim for the same relief based on the same underlying allegations. As such, Count Eight is DISMISSED.

## III. CONCLUSION

Dismissal of a claim short of a merits review is not taken lightly by the Court. Thus, a plaintiff should be given the opportunity to amend a Complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). Moreover, Plaintiffs in this case have specifically requested the opportunity to replead. (Pls.' Consol. Resp. Br. at 108).

Thus, for the reasons discussed above, American General's Motion to Dismiss is GRANTED in part and DENIED in part. Counts One, Two, Three, Four, Five, and Seven of the Complaint are DISMISSED without prejudice to repleading. Count Six is DISMISSED with prejudice with respect to the claim based on the California Consumer Legal Remedies Act. Count Six is otherwise dismissed without prejudice to repleading the claim based on section 17500 for false advertising and fraud. Count Eight of the Complaint is DISMISSED with prejudice. All claims by any Plaintiff who does

not allege that it specifically purchased a life insurance policy issued by American General are hereby DISMISSED for lack of standing.

If Plaintiffs are able to replead any Counts to overcome all of the grounds stated herein for dismissal, they should do so by no later than twenty (20) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than five (5) pages, explaining how the amendments overcome the grounds stated herein for dismissal. Should Plaintiffs replead, American General is hereby granted leave to file a response to Plaintiffs' synopsis. Any such response shall not exceed five (5) pages and must be filed within ten calendar days of the repleading. No further briefing will be permitted.

SO ORDERED.

Dated: March 11, 2009

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE