## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **STEPHEN BERRY,** *et al.,* | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO.** |
| | § | **3-08-CV-0248-B** |
| **VS.** | § | |
| | § | **ECF** |
| **INDIANAPOLIS LIFE INSURANCE** | § | |
| **COMPANY,** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

### SYNOPSIS OF THE SECOND AMENDED COMPLAINT

Plaintiffs respectfully submit this Synopsis of the Second Amended Complaint,[1] pursuant to the Court's two memorandum opinions dated February 19, 2009.

### The IRS Did Not Simply Change the Law

The Court suggested that Plaintiffs appear to be suing for a subsequent change in the law that Defendants could not have predicted prior to the IRS revenue rulings and proposed regulations in February 2004.[2] Plaintiffs perhaps inartfully worded their prior complaint. These IRS actions did ***not*** represent a change in the law. The IRS can neither make nor change law. A revenue ruling is merely the IRS interpretation of existing tax law.[3] And IRS regulations only carry out the will of Congress as expressed in existing tax law.[4] These particular regulations, moreover, simply restated the principle — first stated ***more than fifteen years earlier*** in Announcement 88-51 and Notice 89-25 — that insurance contracts in a qualified plan must be

---

[1] Defined terms used herein shall have the same meaning ascribed to them in the Second Amended Complaint.

[2] Memorandum Opinion at 21 (DE #111) ("Overall, Plaintiffs appear to be attempting to use the ultimate rulings and rule making by the IRS in 2004-2005 . . . to retroactively demonstrate that representations made by Indianapolis Life's alleged agents in 2001-02 were false when made.").

[3] *See* Second Am. Compl. ¶ 250 (citing Rev. Proc. 89-14, 1989-1 C.B. 814 at § 3.01 ("A 'revenue ruling' is an official interpretation by the Service of the internal revenue laws and related statutes . . . .")).

[4] *See id.* (citing *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134 (1936)).

valued at their fair market value, not some artificially suppressed cash value.[5]

Yet Defendants used these "springing cash value" insurance policies to achieve one of the most important purported, misrepresented tax benefits of these 412(i) plans — the short-term and tax-free extraction of the already tax-deductible dollars from the plan.[6]   As expressed in multiple IRS announcements and notices *since 1988*, these policies would not support this exit strategy and would result in disqualification of the plan and loss of the deduction for plan contributions.[7]   These policies also violate several requirements under the Section 412(i) regulations, which were promulgated in *July 1980*, including:  (1) providing for premiums that are payable beyond normal retirement age; (2) providing benefits at normal retirement age in excess of the benefits at normal retirement age under the terms of the plan; and (3) permitting loans to be taken against the policies.[8]   These violations further jeopardize deductibility of plan contributions.[9]

In sum, the IRS did not change the law here.  Indeed, when the IRS criticized these particular 412(i) arrangements in January 2003 (more than a year before its revenue rulings), the IRS officials referred to the arrangements as *"illegal Section 412(i) schemes"* with *"a criminal side to such schemes, beyond any eventual tax penalties or fines."*[10]   In February 2004, the IRS simply issued "guidance" targeting these "specific abuses" of Section 412(i).[11]

---

[5] *See id.* ¶¶ 247, 250 (noting that "these regulations explicitly and repeatedly stated that they only 'clarify' existing tax law"); *see also id.* ¶¶ 67-70 (discussing Announcement 88-51 and Notice 89-25).

[6] *See id.* ¶¶ 60-65, 67, 79-83.

[7] *See id.* ¶¶ 67-70, 81-82, 100.

[8] *See id.* ¶¶ 74-75.

[9] *See id.* ¶ 76.

[10] *See id.* ¶¶ 236-41.  In October 2002, the IRS Chief Actuary stated:  "You hear the old story that there are no new schemes or ideas, but old ideas recycled in different packages, and that is actually true here."  *Id.* ¶¶ 237-39.

[11] *See id.* ¶ 246.

## The Amended Conspiracy Allegations Satisfy *Twombly*

The Court found the conspiracy allegations to be deficient in two respects:  (1) the "highly implausible" theory that the Insurance Defendants conspired together to market competing insurance policies; and (2) a dearth of factual allegations "to suggest that any acts took place in the context of, or as a result of, some prior agreement."[12]  In response to the Court's concerns, Plaintiffs focus upon separate (but related) conspiracies between the Consultant Defendants and each of the Insurance Defendants.  The ILIC Plaintiffs also allege specific facts showing a conspiratorial agreement between the Consultant Defendants and Indianapolis Life.[13]

In mid-March 1999, as the IRS was targeting a different kind of abusive benefit plan funded with Indianapolis Life's specially designed insurance policy,[14] Hartstein proposed that Indianapolis Life market this policy as the "sole funding tool" for a new purported 412(i) plan called the Pendulum Plan.[15]  In June 1999, Hartstein traveled to Indianapolis for meetings with Indianapolis Life's Gary Ryan, Leonard Bielski, and Jim Cassel.[16]  During these meetings, they ***discussed the tax risks*** related to this purported 412(i) arrangement, including the springing cash value aspects of the Indianapolis Life policy.[17]  They nonetheless ***agreed to market this policy*** in connection with the Pendulum Plan through Indianapolis Life's agents and producers nationwide by representing that:  (1) this insurance policy was appropriate for use in funding a 412(i) plan; (2) the Pendulum Plan, as funded with this policy, was a qualified 412(i) plan; (3) the premiums

---

[12] Memorandum Opinion at 15 (DE #111); Memorandum Opinion at 10 (DE #110).

[13] Given the more limited conspiracy now alleged, only the ILIC Plaintiffs have amended their allegations and only as to Indianapolis Life and the Consultant Defendants, pursuant to the Court's two memorandum opinions.  The Non-ILIC Plaintiffs are prepared to re-plead their allegations, if necessary, against the remaining Insurance Defendants and the Consultant Defendants, but have not yet been authorized to do so by the Court.

[14] *See* Second Am. Compl. ¶¶ 84-86.

[15] *See id.* ¶ 87; *see also id.* ¶ 88 (alleging that Hartstein told Gary Ryan that "we can generate millions of dollars of new commissionable premium.  Just give me the chance to run with this, and the results can be unbelievable.").

[16] *See id.* ¶¶ 89-91.

[17] *See id.* ¶ 89.

paid on this policy were fully tax deductible; and (4) the plan participant could purchase the policy after a few years for its suppressed cash value, but take tax-free loans against the policy.[18]

In early February 2000, Indianapolis Life hosted a national training seminar in Indianapolis for dozens of its top agents and producers from nearly twenty different states.[19] Hartstein delivered a lengthy presentation at this seminar regarding the Pendulum Plan, using marketing and training materials that had been *reviewed and approved* by Gary Ryan, Karen Delgado, and others at Indianapolis Life.[20]   Through this presentation, *Hartstein trained Indianapolis Life's agents* to make the above-described marketing pitch without any disclosure of the tax risks related to the Pendulum Plan and the specially designed Indianapolis Life policy used to fund the plan.[21]   Thus, pursuant to their prior agreement, Indianapolis Life and the Consultant Defendants sent dozens of Indianapolis Life's top agents and producers out to market this entire arrangement as a risk-free qualified 412(i) plan.[22]   In return for playing what he described as the "quarterback" of this marketing campaign, *Hartstein received 20% of all commissions* that would otherwise be payable to these agents and producers and an additional *"override" of 5% of all premiums* paid into these purported 412(i) arrangements.[23]

### The Amended Allegations Satisfy Rule 9(b)

The Court found that the ILIC Plaintiffs need to make the following Rule 9(b) allegations to support their fraud, negligent misrepresentation, and Section 17200 claims:  (1) when the representations were made; (2) where the representations were made; (3) why the representations

---

[18] *See id.* ¶¶ 89-91.  Indianapolis Life even renamed its policy as the PenPro policy to recognize its close affiliation with Hartstein's Pendulum Plan.  *See id.* ¶ 90.

[19] *See id.* ¶¶ 102-104.

[20] *See id.*

[21] *See id.* ¶¶ 102-105; *see also id.* ¶ 96, 105 (alleging Hartstein conducted other seminars for Indianapolis Life).

[22] *See id.* ¶¶ 102-105.

[23] *See id.* ¶ 91.

were false or misleading at the time; and (4) what facts did Indianapolis Life fail to disclose to Plaintiffs and why did these omitted facts make the affirmative representations misleading.[24] The detailed allegations in the Second Amended Complaint address each of these concerns.[25] The purported 412(i) arrangements presented several *specific risks under the existing tax law*, and these *risks were fully known* to Indianapolis Life.[26]  These risks, moreover, were so material that it was false and misleading to represent the arrangements as *risk-free, tax-deductible 412(i) plans with a tax-free exit strategy* only a few years later.[27]

### The Amended Allegations Plead Viable Statutory Claims

Finally, the Court stated that Plaintiffs need to allege that "members of the public were likely to be deceived" in order to plead viable Section 17200 claims.[28]  The ILIC Plaintiffs allege this requisite element of their claims and explain that *hundreds of members of the public* were likely to be (and actually were) deceived into believing that these purported 412(i) arrangements: (1) not only allowed participants to take a tax deduction for the premiums paid toward the insurance policies, but to take tax-free loans against the exploding cash value in the policies only a few years later; (2) complied with federal tax law; and (3) presented no material tax risks.[29]

### Conclusion

Plaintiffs respectfully submit that the amended allegations in the Second Amended Complaint overcome the grounds stated for dismissal in the Court's two memorandum opinions.

---

[24] Memorandum Opinion at 18-21, 26 (DE #111).

[25] *See* Second Am. Compl. ¶¶ 113-163.

[26] *See id.* ¶¶ 67-78, 80-83, 97-100, 236-242.

[27] *See id.* ¶¶ 67-78.

[28] Memorandum Opinion at 32 (DE #111).  The Court also found that Plaintiffs, without a Texas resident among them, lacked standing to pursue the Texas statutory claims.  *Id.* at 29-30.  Plaintiffs have not re-pleaded such claims.

[29] *See* Second Am. Compl. ¶ 288; *see also id.* ¶¶ 104-106 (explaining the standard marketing pitch and its appeal).

Respectfully submitted,

**DIAMOND MCCARTHY LLP**

  /s/ Eric D. Madden
Eric D. Madden
State Bar No. 24013079
Brandon V. Lewis
State Bar No. 24060165
1201 Elm Street, Suite 3400
Dallas, Texas  75270
(214) 389-5300 (telephone)
(214) 389-5399 (facsimile)

-and-

**MCKOOL SMITH, PC**
Gary Cruciani
State Bar No. 05177300
Michael P. Fritz
State Bar No. 24036599
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000 (telephone)
(214) 978-4044 (facsimile)

**COUNSEL FOR ALL PLAINTIFFS,
EXCEPT ILIC PLAINTIFFS**

**THE LAW OFFICES OF
STEPHEN F. MALOUF, PC**

  /s/ Stephen F. Malouf
Stephen F. Malouf
State Bar No. 12888100
David Evans
State Bar No. 06714500
Jonathan Nockels
State Bar No. 24056047
3811 Turtle Creek Blvd., Suite 1600
Dallas, Texas 75219
(214) 969-7373 (telephone)
(214) 969-7648 (facsimile)

**COUNSEL FOR ILIC PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all parties listed on this certificate of service will receive a copy of the foregoing document filed electronically with the United States District Court for the Northern District of Texas, Dallas Division, on this 11th day of March, 2009, with notice of case activity generated and ECF notice to be sent electronically by the Clerk of the Court.  A copy will be sent via electronic mail to those who do not receive ECF notice:

Barry A. Chasnoff
David A. Jones
AKIN GUMP STRAUSS HAUER & FELD LLP
300 Convent Street, Suite 1600
San Antonio, Texas  78205

James R. Carroll
Kurt Wm. Hemr
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108-3194

Charles W. Schwartz
Celso M. Gonzalez-Falla
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1000 Louisiana, Suite 6800
Houston, Texas  77002-5026

Michelle L. Davis
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Rodney Square
Wilmington, DE  19899-0636

J. Michael Vaughan
WALTERS BENDER STROHBEHN &
VAUGHAN, P.C.
P.O. Box 26188
Kansas City, Missouri  64194

James F. Jorden
Stephen H. Goldberg
JORDEN BURT, LLP
1025 Thomas Jefferson Street NW
Suite 400 East Lobby
Washington, DC  2007-5208

Jeff Tillotson
LYNN TILLOTSON PINKER & COX, LLP
750 North St. Paul Street, Suite 1400
Dallas, Texas  75201

Lee E. Bains, Jr.
Stephen C. Jackson
Michael D. Mulvaney
MAYNARD, COOPER & GALE, P.C.
2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama  35203-2618

David T. McDowell
BRACEWELL & GIULIANI
711 Louisiana Street, Suite 2300
Houston, Texas  77002

Amy B. Boyea
BRACEWELL & GIULIANI
State Bar No. 24026910
1445 Ross Avenue, Suite 3800
Dallas, Texas  75202

Thomas A. Culpepper
Roshanak Khosravighasemabadi
THOMPSON, COE, COUSINS & IRONS, LLP
Plaza of the Americas, 700 N. Pearl
Twenty-Fifth Floor
Dallas, Texas 75201-2825

*/s/ Eric D. Madden*
Eric D. Madd