UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEPHEN BERRY, et al., § | |
| § | |
| Plaintiffs, § | |
| § | CIVIL ACTION NO. 3:08-CV-0248 |
| v. § | |
| § | |
| INDIANAPOLIS LIFE INSURANCE § | |
| COMPANY, et al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION

On February 19, 2009, the Court issued two decisions in this case, the first granting a motion to dismiss filed by Defendant Economic Concepts, Inc., ECI Pension Services, LLC and Kenneth R. Hartstein ("Hartstein/ECI") (doc. 110), and the second granting a motion to dismiss filed by Defendant Indianapolis Life Insurance Company ("Indianapolis Life") (doc. 111). The Court granted leave to amend as to those Plaintiffs who allegedly purchased life insurance policies from Indianapolis Life (hereinafter, the "ILIC Plaintiffs"[1]). On March 11, 2009, the ILIC Plaintiffs filed a Second Amended Complaint, which is the subject of this Memorandum Opinion.

---

[1] The ILIC Plaintiffs are: Stephen Berry and Fader Higher LLC (Arizona residents); Dr. Robert P. Young and Rocky Mountain Dermatology, Inc. (Utah residents); Tyrone Seils and DP Search, Inc. (California residents); Richard Sarmiento, and Richard Sarmiento and Leilani, a Sole Proprietorship (California residents); and David Hallman, Lynn Hallman, and Accessibility Unlimited, Inc. (Illinois residents). Former ILIC Plaintiffs, Dr. Hodan Rabile and Rabile Family Dentistry (the only Texas residents who allege they purchased life insurance policies from Indianapolis Life), have stipulated to dismissal of their claims.

1

I.

BACKGROUND

This is a putative nationwide class action lawsuit brought by Plaintiffs, who assert various state law causes of action against four insurance companies[2] and their consultants related to Defendants' alleged design, promotion and sale of a tax shelter, marketed as a "defined benefit plan." According to Plaintiffs, Defendants touted the plans, which were funded by specially-designed life insurance policies, as qualifying for tax benefits under Section 412(i) of the Internal Revenue Code. The Internal Revenue Service, on the other hand, after conducting an audit, determined the plans were abusive tax shelters, and assessed audit-related fees and/or substantial tax penalties against Plaintiffs.

At issue is the viability of the ILIC Plaintiffs' Second Amended Complaint, filed March 11, 2009 (doc. 115).[3] Specifically, the Court must determine whether the allegations in the Second Amended Complaint overcome the pleading deficiencies set forth by the Court in its February 19, 2009 decisions granting Indianapolis Life's and Hartstein/ECI's respective motions to dismiss (*see* docs. 110 and 111). In light of the Court's familiarity with the case, and the parties' extensive prior briefing, rather than have the parties engage in yet another round of briefing, the Court directed the ILIC Plaintiffs to file a Synopsis with their Second Amended Complaint detailing how the amended pleadings overcame the deficiencies detailed by the Court in its February 19, 2009 decisions. The

---

[2]The four insurance company defendants are Indianapolis Life, Hartford Life and Annuity Insurance Company ("Hartford"), Pacific Life Insurance Company ("Pacific Life"), and American General Life Insurance Company ("American General").

[3]This Memorandum Opinion pertains only to the ILIC Plaintiffs, and not to those Plaintiffs who allegedly purchased life insurance policies to fund their retirement plans from Defendants Hartford, Pacific Life and American General.

Court permitted Indianapolis Life and Hartstein/ECI to file responses to the Synopsis.

On March 11, 2009, the ILIC Plaintiffs filed their Second Amended Complaint (doc. 115) and Synopsis (doc. 116), contending that the amended pleadings are sufficient to overcome the pleading deficiencies previously outlined by the Court in its February 19, 2009 decisions. On March 25, 2009, Indianapolis Life and Hartstein/ECI filed their respective responses to the Synopsis (docs. 120 and 121), arguing that the amended allegations are still deficient under FED. R. CIV. P. 12(b)(6) and 9(b). The issue is ripe for determination.

## II.

## ANALYSIS

In the Second Amended Complaint, the ILIC Plaintiffs assert the following causes of action against Indianapolis Life: Count One (civil conspiracy), Count Two (common law fraud), Count Three (negligent misrepresentation), and Counts Four and Five (violations of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200).[4]  Count One, alleging civil conspiracy, is the sole cause of action against Hartstein/ECI. To assess the ILIC Plaintiffs' amended pleadings, the Court will consider the grounds for dismissal previously stated in its February 19, 2009 decisions (docs. 110 and 111), the ILIC Plaintiffs' Synopsis (doc. 116), Hartstein/ECI's and Indianapolis Life's respective responses (docs. 120 and 121), as well as applicable law.

A. *Count One of Second Amended Complaint - Civil Conspiracy*

---

[4]In the Second Amended Complaint, the ILIC Plaintiffs no longer allege violations of Texas statutory law (formerly Counts Four and Five of the First Amended Complaint), which the Court dismissed without prejudice for lack of a plaintiff with standing. Nor do they allege violations of CAL. BUS & PROF. CODE § 17200 premised on California's Consumer Legal Remedies Act (formerly included in Counts Six and Seven), or unjust enrichment (formerly Count Eight), as these counts were dismissed with prejudice to repleading.

3

In its February 19, 2009 decisions, the Court granted Indianapolis Life's and Hartstein/ECI's respective motions to dismiss Count One, wherein the ILIC Plaintiffs alleged both a civil conspiracy to commit fraud (i) among the four insurance company defendants, and (ii) between the insurance company defendants and Hartstein/ECI, for failure to adequately plead a civil conspiracy under FED. R. CIV. P. 8(a), and the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The Court determined that the conspiracy allegations were deficient in two major respects: first, they rested upon the "highly implausible theory" that the four insurance company defendants conspired together to market competing insurance policies; and second, the dearth of facts in the pleadings "to suggest that any acts took place in the context of, or as a result of, some prior agreement." (doc. 110 at 9-10; doc. 111 at 15-16.)  The Court also noted that the pleadings were "devoid of any factual allegations supporting [Plaintiffs'] formulaic recitation of at least one of the legal elements of conspiracy." (doc. 110 at 9; doc. 111 at 15.)  Moreover, citing Rule 8(a) and *Twombly*, the Court found deficient Plaintiffs' allegations that Hartstein/ECI proceeded to "work together" with the insurance company defendants to develop and market the tax shelters since, "[r]ead as broadly as possible, the Court cannot say that the allegations of 'working together' satisfy the requirement of pleading a meeting of the minds, or a plan to commit unlawful acts in furtherance of an unlawful purpose." (doc. 110 at 10.)[5]

In an attempt to cure the deficiencies, the ILIC Plaintiffs, in their Second Amended Complaint, have significantly refined their allegations of civil conspiracy. In place of the allegations

---

[5]Further, noting that conspiracy is a derivative tort, the Court held that dismissal of Plaintiffs' fraud claim (Count Two), the offense underlying Plaintiffs' civil conspiracy claim, provided an alternative basis for dismissal of Count One. (doc. 111 at 26.)

rejected by the Court that the four insurance company defendants conspired together to market competing insurance policies, the ILIC Plaintiffs now allege separate but related conspiracies between Hartstein/ECI and each of the insurance company defendants. With regard to allegations of a conspiracy between Hartstein/ECI and Indianapolis Life, the Court has reviewed the amended allegations (*see* Sec. Am. Compl. ¶¶ 84-91, 102-105) and the ILIC Plaintiffs' Synopsis (*see* Synopsis at 3-4), as well as Indianapolis Life's and Hartstein/ECI's respective responses, and determines that the ILIC Plaintiffs have sufficiently alleged a civil conspiracy to satisfy Rule 8(a) and *Twombly*. This does not conclude the inquiry because, as explained below, the underlying tort must also withstand scrutiny under Rule 12(b)(6).

Civil conspiracy is a "derivative tort" in that "a defendant's liability for conspiracy depends on participation in some underlying tort." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). And because the Court concludes directly below that the ILIC Plaintiffs' amended allegations of fraud fail to overcome the deficiencies previously identified by the Court, the ILIC Plaintiffs' civil conspiracy allegations must also be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for lack of an underlying tort on which to base conspirator liability. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997) (granting summary judgment on conspiracy claim noting that "allegations of conspiracy are not actionable absent an underlying [tort]"); *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) (noting that "because the fraud claim fails[,] the fraud based conspiracy claim must fail also").[6] Accordingly, Count One (conspiracy) is hereby DISMISSED.

*B. Counts Two and Three of Second Amended Complaint - Fraud and Negligent Misrepresentation*

---

[6] The Court incorporates by reference the choice of law analysis set forth in its February 19, 2009 decision (*see* doc. 111 at 10-14).

5

In its February 19, 2009 decision granting Indianapolis Life's motion to dismiss, the Court dismissed Counts Two (common law fraud) and Three (negligent misrepresentation) for failure to allege fraud with the requisite specificity required by FED. R. CIV. P. 9(b), including failure to adequately plead: (1) when the alleged representations were made; (2) where the alleged representations were made; (3) why the alleged representations were false or misleading at the time; and (4) what facts did Indianapolis Life allegedly fail to disclose and why did these omitted facts make these affirmative representations misleading. (doc. 111 at 18-21, 26.)  Specifically with regard to dismissal for failure to plead with particularity "why" the alleged representations were false when made, noting that the alleged misrepresentation and omissions occurred in 2001 and 2002, the Court observed that:

> Overall, Plaintiffs appear to be attempting to use the ultimate rulings and rulemaking by the IRS in 2004-2005 . . . to retroactively demonstrate that representations made by Indianapolis Life's alleged agents in 2001-02 were false when made.  That leap of logic does not suffice to provide, as currently pled, an explanation as to why each representation was false when made, particularly in light of a legal opinion to the contrary.[7] Alleging that Indianapolis Life "received warnings" in 1999 about the tax risks of the defined benefit plan being marketed by [Hartstein/ECI] and funded with Indianapolis Life policies and knew of IRS scrutiny of this type of 412(i) plan in the early 2000's is not the same as alleging that the plans and policies were illegal when they were sold or that any specific representation allegedly made was false at any time prior to 2004, much less when it was made.

(*Id.* at 21.)

In addition to dismissing Counts Two (fraud) and Three (negligent misrepresentation) for failure to satisfy Rule 9(b), the Court noted in *dicta* that, "[t]o the extent Plaintiffs are alleging that

---

[7]The Court was referring to Plaintiffs' allegations that, in September 1999, the law firm of Bryan Cave LLP issued a legal opinion that funding this type of defined benefit plan being marketing to Plaintiffs with a life insurance policy issued by Indianapolis Life "'more likely than not' would satisfy section 412(i)."  (doc. 111 at 20 (citing First Am. Compl. ¶ 70).)

6

any [of the alleged representations] are forward-looking or are opinions as to how the IRS would treat 412(i) plans at any time after [Plaintiffs] funded their plans with Indianapolis Life insurance policies in 2001-02, the Court finds those opinions as to future events unactionable as the basis for a fraud claim under the circumstances." (*Id.* at 22.)  Specifically, the Court pointed out that "[e]ach statement allegedly made by [Indianapolis Life's agent(s) and Mr. Hartstein] is a statement regarding federal income tax law or policy, including the policies of a third-party government agency–the IRS." (*Id.*)  On the face of these pleadings, the Court opined, "[a]s a matter of law, any representation or prediction by an Indianapolis Life agent as to how the IRS would treat the 412(i) plans, and the funding thereof, in the future is either an unactionable opinion or was unjustifiably relied upon." (*Id.* at 22-23 (and cases cited therein).)  The Court also pointed out that, even were an exception to the general principle that opinions are not actionable applied, "[i]t is inherently unreasonable for any person to rely on a prediction of future IRS enactment, enforcement, or non-enforcement of the law by someone unaffiliated with the federal government.  As such, the reasonable reliance element of any fraud claim based on these predictions fails as a matter of law." (*Id.* at 23 n.19  (and cases cited therein).)

In their Second Amended Complaint, the ILIC Plaintiffs attempt to remedy the foregoing infirmities by alleging that the representations were false when made in 2001 and 2002 based on IRS pronouncements made prior to 2001 regarding the valuation of insurance contracts distributed from qualified plans, including Announcement 88-51 and Notice 89-25.  (*See* Sec. Am. Compl. ¶¶ 60-65, 67-70, 81-82, 100; Synopsis at 1-2.)  The ILIC Plaintiffs further allege that Revenue Procedure 2004-16 and the 2005 Final Regulations (*see infra* note 8) "did *not* represent a change in the law." (Synopsis at 1 (original emphasis).)  In its response, Indianapolis Life argues that "none of the IRS

7

pronouncements declared [the plans] invalid prior to 2001. Instead, plaintiffs only allege that they presented 'material risks' including 'potential disqualification of the plan and the loss of tax deductions for plan contributions.'" (doc. 121 at 2 (quoting Sec. Am. Compl. ¶¶ 70-76).) Hartstein/ECI, in its response, contends that "Plaintiffs' reliance on IRS Announcement 88-51 and Notice 89-25 as the basis for their argument that the [plans] were improper is misplaced . . . Plaintiffs conveniently ignore the fact that prior to Plaintiffs' purchase, every individual plan established and sold by Defendants, was initially submitted to the IRS in approximately 1999 and ultimately approved. Plaintiffs have failed to cite any evidence or authority that the IRS had any criticism or objection to the submitted plans prior to Plaintiffs' purchase." (doc. 120 at 4.)

Having considered the amended allegations, the parties' legal arguments and the specific IRS pronouncements and regulations at issue, the Court determines that the ILIC Plaintiffs' amended allegations fail to overcome the Rule 9(b) pleading deficiency previously stated by the Court, namely, Plaintiffs have failed to explain *why* the alleged representations by Indianapolis Life's agents were false when made in 2001 and 2002. Simply stated, Announcement 88-51 and Notice 89-25 fail to provide the type of definitive guidance about the legality of funding 412(i) plans with Indianapolis Life's specially-designed insurance policies to support the proposition that Indianapolis Life's agents knew that the alleged representations were false when made in 2001 and 2002. *See* I.R.S. ANNOUNCEMENT 88-51, 1988-13 I.R.B. 34, 1988 WL 561238 (March 28, 1988) (warning that a valuation method other than insurance policy's cash surrender value "*may* have to be used for purposes of determining the taxable amounts under section 72 of the Code") (emphasis added); I.R.S. NOTICE 89-25, 1989-1 C.B. 662, 1989 WL 587481 (March 20, 1989) (the reserve value may be more appropriate approximation of insurance contract's fair market value in certain

8

circumstances). In short, the Court agrees with Indianapolis Life and Hartstein/ECI that the only definitive guidance specifically applicable to the 412(i) plans at issue, and the alleged representation made regarding the tax benefits and legality of the plans, appears in the IRS's 2004 revenue rulings and 2005 final regulations.[8] In sum, given the ILIC Plaintiffs' failure to plead fraud with the requisite particularity, the Court, for the reasons set forth in its February 19, 2009 decision (doc. 111 at 18-26), and for the above-stated reasons, DISMISSES Counts Two and Three of the ILIC Plaintiffs' Second Amended Complaint for failure to satisfy FED. R. CIV. P. 9(b).[9]

The Court now revisits its prior decision, where in *dicta* it stated: "[t]o the extent Plaintiffs are alleging that any [of the alleged representations] are forward-looking or are opinions as to how the IRS would treat 412(i) plans at any time after [Plaintiffs] funded their plans with Indianapolis Life insurance policies in 2001-02, the Court finds those opinions as to future events unactionable as the basis for a fraud claim under the circumstances." (*Id.* at 22.) At the time, the Court did not

---

[8]The 2004 guidance clarified key unsettled valuation issue. *See* REV. PROC. 2004-16, 2004-1 C.B. 559, 2004 WL 258225 (March 8, 2004) (providing interim guidance for valuing distributions of insurance policies used to fund section 412(i) plans since "[t]he current regulations do not define 'fair market value' or 'entire cash value' and questions have arisen regarding the interaction of those two provisions and whether 'entire cash value' includes a reduction for surrender charges"); REV. RUL. 2004-20, 2004-1 C.B. 546, 2004 WL 259195 (March 8, 2004) (clarifying how to deduct plan contributions when 412(i) plans are funded by life insurance policies in excess of participant's death benefit under plan's terms); REV. RUL. 2004-21, 2004-1 C.B. 544, 2004 WL 259196 (March 8, 2004) (providing guidance regarding whether 412(i) plans funded with life insurance contracts will satisfy the non-discrimination requirements). *See also* Value of Life Insurance Contracts When Distributed From a Qualified Retirement Plan, 26 C.F.R. Part 1, 2005 WL 2053238 (Final Regulations) (Aug. 29, 2005) (amending Treasury Regulation § 1.402 to remove the term "entire cash value" and providing instead that "the policy cash value and all other rights under such contract . . . are included in determining the fair market value of the contract.")

[9]Furthermore, as stated in its February 19, 2009 decision, as Plaintiffs "have not urged a separate focus on the negligent misrepresentation claim," but have "effectively pled negligent misrepresentation as a lesser-included offense to their fraud claims," Plaintiffs' negligent misrepresentation claim is similarly subject to the pleading requirements of Rule 9(b), and therefore must also be dismissed. (doc. 111 at 27-28 (and cases cited therein).)

9

dismiss the complaint on this basis, carefully noting that Plaintiffs in response to Indianapolis Life's motion to dismiss stated that they were "not alleging that agents were opining as to future treatment of the defined benefit plans" by the IRS. (doc. 111 at 23.) In light of the foregoing, however, the Court concludes that the deficiency noted in *dicta* -- that, as a matter of law, regulations and rulings by the IRS in 2004 and 2005 cannot be used to show that statements or omissions purportedly made in 2001 and 2002 were false when made – has not been remedied by Plaintiffs. The amended pleadings detailed above lead to only one conclusion, that is, the ILIC Plaintiffs are, indeed, alleging that Indianapolis Life's agents were giving opinions regarding future tax treatment by the IRS. As the Court stated in its February 19, 2009 opinion, "[a]s a matter of law, any representation or prediction by any alleged Indianapolis Life agent as to how the IRS would treat the 412(i) plans, and the funding thereof, in the future is either an non-actionable opinion or was unjustifiably relied upon." (doc. 111 at 22-23 (and cases cited therein).) Further, Indianapolis Life and Hartstein/ECI both contend that the ILIC Plaintiffs' amended allegations do not remedy this deficiency. Accordingly, as the ILIC Plaintiffs' amended pleadings do not overcome this obstacle, in addition to dismissing Count Two under Rule 9(b), for the reasons previously stated in *dicta* in its February 19, 2009 decision (doc. 111 at 18-26 (and cases cited therein)), as well as the reasons stated above, the Court DISMISSES Count Two pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. *See generally Williams v. Sidley, Austin, Brown & Wood, LLP*, 816 N.Y.S.2d 702 (Table), 2006 WL 684599, at *5 (N.Y. Super. Ct. 2006) ("The alleged misrepresentations regarding the purported safety and viability of the Coastal III Fund as a tax sheltered investment fall within the category of predictions or expressions of future events, which are neither affirmations of events that when made, the defendants knew or could have known would not occur, nor assertions of present facts that were

10

exclusively within the defendants' knowledge.")[10]; *see also Borba v. Thomas*, 138 Cal. Rptr. 565, 570 (Cal. App. 1977) (finding no reasonable reliance upon a statement that a government agency would approve the parties' contract, as there is no right to rely on the representation of the "future conduct of public officials").

C. *Counts Four and Five of Second Amended Complaint - Cal. Bus. & Prof. Code § 17200*

In its February 19, 2009 decision granting Indianapolis Life's motion to dismiss, the Court dismissed Counts Six and Seven (alleging violations of CAL. BUS. & PROF. CODE § 17200) of the ILIC Plaintiffs' First Amended Complaint for lack of a plaintiff with standing.[11] The Court first noted

---

[10]The Court finds the *Williams* decision instructive. In *Williams*, the court dismissed a complaint lodged by investors against a law firm, financial institution and accounting firm regarding alleged misrepresentations as to the purported safety and viability under the tax laws of the "Coastal III Fund" or "CTF" in which plaintiffs invested, specifically where the IRS issued a notice three years after the alleged misrepresentations that the claimed tax benefits purportedly generated by the transactions in question were not allowable for federal income tax purposes. Dismissing the complaint on the grounds, *inter alia*, that plaintiffs failed to allege any misrepresentation of fact by defendants which fraudulently induced them to enter into the CTF, the court stated: "Facts regarding positions taken by the IRS in similar instances or with similar types of transactions were not exclusively within the defendant's knowledge, and it may be inferred from the allegations contained within the four corners of the amended complaint that plaintiffs understood the risks, took a gamble that the CTF transactions would achieve the desired tax savings, and lost." *Williams*, 2006 WL 684599, at *5. Similarly, in this case, based on the four corners of the Second Amended Complaint, and as stated by Hartstein/ECI in their response to the ILIC Plaintiffs' Synopsis, "by its very nature, the 'more likely than not' Bryan Cave legal opinion provided Plaintiffs with ample notice that there existed a risk (as great as 49%) that the Pendulum Plan may not satisfy the requirements of 412(i)." (doc. 120 at 3.) The Court notes that the presiding judge in *Williams* later reinstated the complaint after receiving a "deferred prosecution agreement," as well as a "statement of admissions" from a related criminal prosecution according to which defendants "and others purposefully drafted the opinion letters and transactional documents to include misrepresentations regarding the substance, implementation and purpose of the CTF transactions, which went beyond the mere predictions and expressions of future events originally alleged in plaintiffs' amended complaint." *See Williams v. Sidley, Austin, Brown & Wood, LLP*, 824 N.Y.S.2d 759 (Table), 2006 WL 2739013 at *5 (N.Y. Super. Ct. Sept. 22, 2006) (internal punctuation omitted), *aff'd*, 832 N.Y.S.2d 9 (N.Y.A.D. 1 Dept., Mar. 1, 2007). No such allegations are present here.

[11]Section 17200 of California's UCL provides a remedy for any injuries resulting from unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. The UCL does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California. *See Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr. 2d

11

that, "[t]he only Plaintiffs who purchased insurance policies from Indianapolis Life who also allege any connection to California are alleged California residents Sarmiento and Seils." (doc. 111 at 30.) Although Plaintiffs Tyrone Seils and Richard Sarmiento were alleged to be California residents, the Court stated that "there are no allegations as to the Sarmiento and Seils Plaintiffs' residency at the time of the alleged representations or at any time prior to the date of the filing of the Complaint. There are no allegations of when and where any particular misrepresentation occurred to allow the Court to determine whether California state law should apply to Sarmiento and Seils." (*Id.* at 30-31.) Noting that standing was a deficiency that could be cured, the Court also considered Counts Six and Seven on the merits, and dismissed Count Six (alleging unlawful business acts and practices in violation of CAL. BUS. & PROF. CODE § 17200), to the extent it was predicated on a violation of California's False Advertising Law, for Plaintiffs' failure to adequately allege that "members of the public were likely to be deceived." (*Id.* at 32.)[12] As to Count Seven, alleging fraudulent business acts and practices in violation of CAL. BUS. & PROF. CODE § 17200, in the alternative to dismissal for lack of a plaintiff with standing, the Court, incorporating the grounds for dismissal of Plaintiffs' fraud claims, dismissed Count Seven for failure to plead fraud with requisite particularity under FED. R. CIV. P. 9(b). (*Id.* at 34.)

In Count Four of the Second Amended Complaint, the ILIC Plaintiffs allege that Indianapolis

---

18, 25-26 (Cal. Ct. App. 1999).

[12] The Court dismissed Counts Six and Seven with prejudice, however, to the extent Plaintiffs alleged violations of the CAL. BUS. & PROF. CODE § 17200 premised on California's Consumer Legal Remedies Act ("CLRA"), which is limited to transactions "intended to result or which result in the sale or lease of goods or services to any consumer." (CAL. CIVIL CODE § 1770(a)). (*See* doc. 111 at 33 ("It appears that the California Supreme Court would find that insurance is neither a good nor service under the CLRA.").) The California Supreme Court has since held that insurance policies are neither goods nor services under the CLRA. *Fairbanks v. Superior Court*, 205 P.3d 201, 203, 46 Cal. 4th 56, 61(Cal. 2009).

Life violated Section 17200 by engaging in false advertising under California's False Advertising Law ("FAL") (§ 17500), and no longer allege violations of the CLRA.  Further, only those ILIC Plaintiffs who are "California class members" are suing Indianapolis Life in Count Four.  Having considered the amended allegations, the Synopsis and applicable law, the Court concludes that ILIC Plaintiffs Tyrone Seils and Richard Sarmiento have set forth sufficient allegations (previously found lacking) to support their standing to sue Indianapolis Life for violations of CAL. BUS. & PROF. CODE § 17200.  Specifically, Seils and Sarmiento allege they were California residents at the time of the alleged misrepresentations, and that the alleged misrepresentations occurred in California.  In addition, Seils and Sarmiento now allege that "members of the public were likely to be deceived[]" (*see* Sec. Am. Compl. ¶ 288), an allegation the Court found lacking in the First Amended Complaint.  Based on these amended allegations, the Court determines that ILIC Plaintiffs Sarmiento and Seils have sufficiently amended their Section 17200 allegations to overcome the grounds for dismissal in the Court's February 19 decision.

Unlike Count Four (alleging an "unlawful business or practice"), however, because Count Five alleges a Section 17200 claim based on a "fraudulent business act or practice," that claim must be alleged with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1105 (9th Cir. 2003).  For the reasons stated above with respect to Count Two (the fraud claim), the Court concludes that Count Five has not been stated with sufficient particularity and must similarly be dismissed pursuant to Rule 9(b).  Accordingly, Count Five is hereby DISMISSED.

## III.

## CONCLUSION

For the reasons stated above, the Court determines that Count Four of the ILIC Plaintiffs' Second Amended Complaint, brought by California residents and putative class members Tyrone Seils, DP Search, Inc., Richard Sarmiento and Richard and Leilani Sarmiento, a Sole Proprietorship, states a claim under CAL. BUS. & PROF. CODE § 17200 sufficient to overcome the grounds for dismissal detailed by the Court in its February 19, 2009 decision granting Indianapolis Life's motion to dismiss (*see* doc. 111). In all other respects, however, the ILIC Plaintiffs have failed to allege sufficient facts to overcome the previously-stated grounds for dismissal. Accordingly, with respect to the ILIC Plaintiffs' Second Amended Complaint (doc. 115), it is hereby ADJUDGED that: Count One (civil conspiracy) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 12(b)(6); Count Two (fraud) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 9(b) and 12(b)(6); Count Three (negligent misrepresentation) is **DISMISSED with prejudice** pursuant to FED. R. CIV. P. 9(b); and Count Five is **DISMISSED with prejudice** for failure to satisfy the pleading requirements of FED. R. CIV. P. 9(b).

Normally the Court will allow a plaintiff the opportunity to amend where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995); *see also Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."); *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) (while court may dismiss a claim for failing to comply with Rule 9(b), "it should not do so without granting leave to amend,

unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."). In this case, the ILIC Plaintiffs have had multiple opportunities to state a claim, including their Second Amended Complaint, filed after the Court's February 19, 2009 decisions detailing the deficiencies in the pleadings. Under these circumstances, the Court determines that allowing further amendment will be futile and cause needless delay. Moreover, the Court notes that the ILIC Plaintiffs have not requested the opportunity to replead. Accordingly, in its discretion, the Court determines that further amendment of the pleadings is not warranted.

**SO ORDERED.**

Dated: July 16, 2009

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE