# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **STEPHEN BERRY, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL ACTION NO. 3:08-CV-0248-B** |
| **v.** | § | |
| | § | **(and all consolidated cases)** |
| **INDIANAPOLIS LIFE INSURANCE** | § | |
| **COMPANY, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION

Before the Court are: Defendant Pacific Life's Motion to Dismiss and Brief in Support (doc. # 38); and Hartford Life and Annuity Insurance Company's Motion to Dismiss Plaintiffs' First Amended Complaint and Memorandum in Support (docs. 43 & 44). Having considered the motions, Plaintiffs' Consolidated Response (doc. 65), the replies, pleadings, record and applicable law, for the reasons set forth below, the Court GRANTS the motions.

## I.

## BACKGROUND

The Court takes its factual account from Plaintiffs' First Amended Complaint–Class Action, filed May 23, 2008 (Compl., doc. 34),[1] and accepts all well-pleaded facts as true, viewing them in

---

[1]With leave of Court, a Second Amended Complaint (doc. 115) was filed on March 11, 2009 by those Plaintiffs who purchased insurance policies from Defendant Indianapolis Life Insurance Company, namely, Stephen Berry, Fader Higher, LLC, Robert P. Young, M.D., Rocky Mountain Dermatology, Inc., Tyrone M. Seils, DP Search, Inc., David R. Hallman, Lynn Hallman, Accessibility Unlimited, Inc., Richard Sarmiento, and Richard and Leilani Sarmiento, a sole proprietorship. With regard to all remaining Plaintiffs, the First

(continued...)

the light most favorable to the plaintiffs. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

Plaintiffs in this matter are a putative nationwide class consisting primarily of professionals, such as doctors, dentists, and construction company owners, and the companies they operate. (Compl. ¶¶ 5-38.) Plaintiffs' claims concern the design, marketing and sale of life insurance policies Plaintiffs purchased to fund certain defined benefit plans that purportedly complied with Section 412(i) of the Internal Revenue Code, but were later examined by the Internal Revenue Service ("IRS") and determined to be abusive tax shelters. (*Id.* ¶ 1.)[2] Plaintiffs allege that Defendants knew or should have known the plans, as funded by certain life insurance policies, would be scrutinized by the IRS and deemed abusive and illegal. (*Id.* ¶¶ 59-60.) Plaintiffs further allege that four insurance companies, two consultant companies, one individual consultant, and a law firm conspired to market these plans and to sell the life insurance policies used to fund them by making fraudulent or negligent misrepresentations about the tax benefits of the plans and without disclosing any of the risk that the IRS would deem the plans illegal. (*Id.* ¶¶ 59, 73-74.)

The four insurance company defendants are Indianapolis Life Insurance Company ("Indianapolis Life"), Hartford Life and Annuity Insurance Company ("Hartford"), Pacific Life

---

[1](...continued)
Amended Complaint is the live pleading.

[2] A "412(i)" plan under the Internal Revenue Code is an employer-sponsored pension plan that, upon meeting certain requirements, qualifies for favorable tax treatment. *See* 26 U.S.C. § 412(e)(3) (West 2008). The Pension Protection Act of 2006, Pub. L. No. 109-280, amended section 412, and relocated it to section 412(e)(3). The amendments are applicable to plan years beginning after December 31, 2007.

Insurance Company ("Pacific Life"), and American General Life Insurance Company ("American General") (collectively, the "Insurance Defendants"). The consultant companies are Defendants ECI Pension Services, LLC and Economic Concepts, Inc., and the individual consultant is Kenneth Hartstein (collectively, the "Consultant Defendants"). The law firm defendant is Bryan Cave, LLP.

As alleged in Plaintiffs' First Amended Complaint, in September 1999, Bryan Cave, LLP issued a legal opinion that the life insurance policy issued by Indianapolis Life or a "substantially similar policy" "more likely than not . . . can meet the requirements of section 412(i) of the Code" when used as "the funding vehicle" for the defined benefit plans being developed by the Consultant Defendants. (*Id.* ¶ 70.) Thereafter, the Insurance Defendants received "explicit warnings regarding the tax risks and problems associated with" the use of their life insurance policies in funding defined benefit plans from an expert in the pension industry. (*Id.* ¶ 72.) In the early 2000s the IRS began to scrutinize certain defined benefit plans under section 412(i), giving speeches warning that the IRS intended to take steps to prevent the misuse of insurance products in 412(i) plans. (*Id.* ¶ 195.) The IRS focused on insurance policies designed to have low cash surrender values and high premiums for a fixed number of years as well as the sale of those policies at artificially suppressed prices. (*Id.*) In January 2003, Department of Treasury and IRS officials gave a speech at a conference indicating that the IRS intended to give high priority to examining insurance funded defined benefit plans. (*Id.* ¶ 196.)

In February 2004, the IRS issued a press release, two revenue rulings, and proposed regulations regarding abusive tax shelters "involving specially designed life insurance policies in retirement plans, section '412(i) plans.'" (*Id.* ¶ 201.) The IRS's proposed regulations, finalized in August 2005, indicated that the issuance of life insurance policies greatly in excess of the permissible

death benefit under a 412(i) plan is a "listed transaction" that is an abusive tax shelter. (*Id.* ¶¶ 200-201.) The IRS stated that a plan holding such policies cannot be a 412(i) plan. (*Id.* ¶ 201.) In a 2004 revenue ruling, the IRS indicated that funding a 412(i) plan with a different type of insurance policy for highly compensated employees compared with other employees will result in disqualification of the plan. (*Id.* ¶ 202.) In 2005, the IRS began a nationwide audit directed at 412(i) plans and has commenced or is likely to commence audits of Plaintiffs. (*Id.* ¶ 203.) In response, Plaintiffs filed suit.

The motions before the Court concern the life insurance policies sold by Hartford and Pacific Life. Four Plaintiffs in the putative class allege they funded their 412(i) plans with insurance policies purchased from Pacific Life: California resident Mehmet C. Pekerol, M.D ("Dr. Pekerol") and California professional corporation Mehmet C. Pekerol, M.D., P.C. ("Pekerol P.C.") (the "Pekerol Plaintiffs"); and Wisconsin resident Thomas A. Johnson and Wisconsin corporation Direct Electric of Wisconsin, Inc. (the "Direct Electric Plaintiffs") (collectively, the "Pacific Life Plaintiffs"). (*Id.* ¶¶ 7-8, 37-38.) Seven Plaintiffs allege they funded their 412(i) plans with insurance policies purchased from Hartford: Arizona resident Robert W. MacMillan and Arizona corporation MacMillan Construction Co., Inc. (the "MacMillan Plaintiffs"); Washington resident Charles R. Brown, DDS and Washington sole proprietorship Poulsbo Children's Dentistry (the "Poulsbo Plaintiffs"); and California residents Yoram Hakimi and Noam Maor and California corporation Pacific Home Remodeling, Inc. (the "PHR Plaintiffs") (collectively, the "Hartford Plaintiffs"). (*Id.* ¶¶ 16-17, 20-24, 37-38.)

**A.** **Allegations Pertaining to the Pacific Life Plaintiffs**

   *1.* *The Pekerol Plaintiffs*

The Pekerol Plaintiffs allege that in early 2003, Dana Goldinger, a Pacific Life insurance agent, approached Dr. Pekerol regarding establishing the Pekerol P.C. 412(i) defined benefit plan (the "Pekerol DBP"), which would be funded by special life insurance policies issued by Pacific Life. (*Id.* ¶¶ 147-148.)  Goldinger represented that the plan would not only provide certain retirement benefits to Dr. Pekerol and his employees, but also provide federal income tax deductions to Pekerol P.C.  (*Id.* ¶ 149.)  Goldinger represented to Dr. Pekerol orally and/or in writing:

> (a) that the life insurance policies to be issued by Pacific Life were appropriate for use in funding the Pekerol DBP as a qualified 412(i) plan; (b) that these policies provided a permissible death benefit under the Pekerol DBP; (c) that the premiums to be paid on these policies by Pekerol P.C. qualified as a deduction for federal income tax purposes; and (d) that the Pekerol DBP, including the insurance policies that would be used to fund it, complied with federal tax laws and regulations.

(*Id.* ¶ 150.)  Goldinger did not disclose: (1) the risks of the investment activity; (2) the potentially unlawful nature of the program (including operation of the surrender charge; or (3) the IRS's refusal to recognize the purported tax benefits of that type of program.  (*Id.* ¶ 151.)

Based on Goldinger's representations, the Pekerol Plaintiffs established the Pekerol DBP, and purchased certain life insurance policies from Pacific Life to fund the plan.  (*Id.* ¶ 152.)  The Pekerol Plaintiffs paid premiums on the Pacific Life insurance policies and recorded corresponding federal income tax deductions for those payments.  (*Id.* ¶ 153.)

The Pekerol Plaintiffs allege that the Pacific Life insurance policies were not appropriate or legally permissible for Pekerol DBP as a 412(i) plan, in light of an excessively high surrender charge and a springing cash value component that characterize an abusive 412(i) plan.  (*Id.* ¶ 154.)  The

Pekerol Plaintiffs allege, on information and belief, that Pacific Life acted knowingly in marketing and selling such policies. (*Id.*)

    2.    *The Direct Electric Plaintiffs*

The allegations pertaining to the establishment of the Direct Electric Defined Benefit Plan ("Direct Electric DBP") are substantially the same as the Pekerol Plaintiffs' allegations, and therefore will not be repeated for purposes of brevity. (*See* Compl. ¶¶ 155-162 regarding identical representations allegedly made by Pacific Life agent David Lake to the Direct Electric Plaintiffs in discussions in early 2003, including discussion on or about March 28, 2003, April 1, 2003 and July 30, 2003.) The Direct Electric Plaintiffs also similarly allege that Lake failed to reveal the risks associated with this type of investment activity or that the IRS might not recognize the tax benefits of the program. (*Id.* ¶ 159.) Based on Lake's representations, the Direct Electric Plaintiffs established the Direct Electric DBP which was funded with a Pacific Life policy insuring the life of Mr. Johnson. (*Id.* 160.) The Direct Electric Plaintiffs paid premiums on the Pacific Life insurance policies and recorded corresponding federal income tax deductions for those payments. (*Id.* ¶ 161.)

Like the Pekerol Plaintiffs (*see supra*), the Direct Electric Plaintiffs allege that the Pacific Life life insurance policies were not appropriate or legally permissible for Direct Electric DBP as a 412(i) plan, in light of an excessively high surrender charge and a springing cash value component that characterize an abusive 412(i) plan. (*Id.* ¶ 162.) The Direct Electric Plaintiffs allege, on information and belief, that Pacific Life acted knowingly in marketing and selling such policies. (*Id.*)

**B.      Allegations Pertaining to the Hartford Plaintiffs**

       *1.      The MacMillan Plaintiffs*

The allegations pertaining to the establishment of the MacMillan Construction Defined Benefit Plan ("MacMillan Construction DBP"), as funded by Hartford life insurance policies, are essentially the same as the Pacific Life Plaintiffs' allegations.  (*See* Compl. ¶¶ 123-130 regarding identical representations allegedly made by Hartford agents Duane Allen and Kelli Stiles to the MacMillan Plaintiffs in discussions on or about June 19, 2003, and further discussion in late 2003, including on or about September 12, 2003, October 9, 2003 and December 8, 2003.)   The MacMillan Plaintiffs also similarly allege that Hartford's agents failed to reveal the risks associated with this type of investment activity or that the IRS might not recognize the tax benefits of the program.  (*Id.*  ¶ 127.)   Based on Allen's and Stiles's representations, the MacMillan Plaintiffs established the MacMillan Construction DBP which was funded with Hartford life insurance policies.  (*Id.* ¶ 128.)  The MacMillan Plaintiffs paid premiums on the Hartford insurance policies and recorded corresponding federal income tax deductions for those payments.  (*Id.* ¶ 129.)

Like the Pacific Life Plaintiffs (*see supra*), the MacMillan Plaintiffs allege that the Hartford life insurance policies were not appropriate or legally permissible for MacMillan Construction DBP as a 412(i) plan, in light of an excessively high surrender charge and a springing cash value component that characterize an abusive 412(i) plan.  (*Id.* ¶ 130.)  The MacMillan Plaintiffs allege, on information and belief, that Hartford acted knowingly in marketing and selling such policies. (*Id.*)   *2.      The Poulsbo Plaintiffs*

The allegations pertaining to the establishment of the Poulsbo Children's Dentistry Defined Benefit Plan ("Poulsbo Children's Dentistry DBP"), as funded by Hartford life insurance policies, are

essentially the same as the MacMillan Plaintiffs' allegations. (*See* Compl. ¶¶ 131-134 regarding identical representations allegedly made by Hartford agents McGill, Edwards and Braley to the Poulsbo Plaintiffs in discussions in or around September 2002, and follow-up discussions in late 2002 and early 2003, including discussions in October 2002, in November 2002, on April 9, 2003, on April 23, 2003 and in May 2003.) The Poulsbo Plaintiffs also similarly allege that Hartford's agents failed to reveal the risks associated with this type of investment activity or that the IRS might not recognize the tax benefits of the program. (*Id.* ¶ 135.) Based on these representations, the Poulsbo Plaintiffs established the Poulsbo Children's Dentistry DBP which was funded with Hartford life insurance policies. (*Id.* ¶ 136.) The Poulsbo Plaintiffs paid premiums on the Hartford insurance policies and recorded corresponding federal income tax deductions for those payments. (*Id.* ¶ 137.)

Like the MacMillan Plaintiffs (*see supra*), the Poulsbo Plaintiffs allege that the Hartford life insurance policies were not appropriate or legally permissible for Poulsbo Children's Dentistry DBP as a 412(i) plan, in light of an excessively high surrender charge and a springing cash value component that characterize an abusive 412(i) plan. (*Id.* ¶ 138.) The Poulsbo Plaintiffs allege, on information and belief, that Hartford acted knowingly in marketing and selling such policies. (*Id.*)

3. *The PHR Plaintiffs*

The allegations pertaining to the establishment of the PHR Defined Benefit Plan ("PHR DBP"), as funded by Hartford life insurance policies, are essentially the same as the allegations of the Hartford Plaintiffs described above. (*See* Compl. ¶¶ 13-142 regarding identical representations allegedly made by Hartford agents Thornhill and Scopp to PHR Plaintiffs in discussions in or around May and/or June 2003, July 1, 2003, and throughout 2003.) The PHR Plaintiffs also similarly allege that Hartford's agents failed to reveal the risks associated with this type of investment activity or that

the IRS might not recognize the tax benefits of the program.  (*Id.*  ¶ 143.)  Based on these representations, the PHR Plaintiffs established the PHR DBP which was funded with Hartford life insurance policies.  (*Id. 144.*)  The PHR Plaintiffs paid premiums on the Hartford insurance policies and recorded corresponding federal income tax deductions for those payments.  (*Id.* ¶ 145.)

Like the other Hartford Plaintiffs (*see supra*), the PHR Plaintiffs allege that the Hartford life insurance policies were not appropriate or legally permissible for PHR DBP as a 412(i) plan, in light of an excessively high surrender charge and a springing cash value component that characterize an abusive 412(i) plan.  (*Id.* ¶ 146.)  The PHR Plaintiffs allege, on information and belief, that Hartford acted knowingly in marketing and selling such policies.  (*Id.*)

## C. Relevant Procedural History

On February 12, 2008, Plaintiffs brought this putative nationwide class action against the Insurance Defendants, the Consultant Defendants and Bryan Cave, LLP, and filed a First Amended Complaint (doc. 34) on March 23, 2008, asserting causes of action for: civil conspiracy (Count One); common law fraud (Count Two); negligent misrepresentation (Count Three); violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act (Counts Four and Five)[3]; violations of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE, § 17200; and unjust enrichment (Count Eight).

On June 23, 2008, Pacific Life and Hartford each filed a motion to dismiss Plaintiffs' First

---

[3]The Complaint alleges that Counts Four and Five are being brought by "Texas Class Members against the Insurance Defendants" and "All Class Members Against American General."  The Pacific Life and Hartford Plaintiffs are not "Texas Class Member."  Further, on March 11, 2009, the Court ruled that the twenty-four Plaintiffs in the putative class who did not allege they purchased insurance policies from American General did not have standing to sue American General for violations of Texas statutory law.  (*see* doc. 114, 25-26).  Thus, any claims the Pacific Life and Hartford Plaintiffs may be seeking to assert against American General have already been dismissed by prior Court order.  (*See id.*)

Amended Complaint (docs. 38, 43), and each submitted an appendix in support containing the insurance policies, as well as related transaction documents.  (docs. 39, 46.)  In support of dismissal of Plaintiffs' fraud-based claims pursuant to FED. R. CIV. P. 12(b)(6), Pacific Life and Hartford contended that the transaction documents, wherein the insured Plaintiffs' expressly disclaim any reliance on Pacific Life and Hartford for tax or legal advice, demonstrated, as a matter of law, that Plaintiffs could not have justifiably relied on purported oral representations by insurance agents to the contrary.  Plaintiffs filed a motion to strike the transaction documents as outside the pleadings, or, alternatively, requested that the Court convert the motions to dismiss to summary judgment motions.  (doc. 66.)

Pursuant to FED. R. CIV. P. 12(d), on December 17, 2008, the Court converted Defendants Pacific Life's and Hartford's respective motions to dismiss into motions for summary judgment, informing the parties of its intent "to consider certain documents attached in support of the Motions that the Court considers 'matters outside the pleadings.'" (doc. 93.)[4]

On March 26, 2009, the Court issued its Memorandum Opinion, limited to the question of whether, in the face of disclaimers to the contrary, the Pacific Life and Hartford Plaintiffs could have justifiably relied upon representations by insurance agents regarding the legal viability and tax consequences of the 412(i) plans they established. (Mem. Op.,  doc. 122.)  After conducting an extensive choice of law analysis (which the Court incorporates herein by reference (see Mem. Op.

---

[4]The Court's December 17, 2008 conversion order (doc. 93), and subsequent March 26, 2009 summary judgment order (doc. 122) render moot the vast majority of Plaintiffs' objections to the material contained in Pacific Life's and Hartford's respective appendices attached to their motions to dismiss.  As to any remaining objections, the Court previously addressed these same objections in the context of ruling on Plaintiffs' Motion to Strike certain material in the appendices submitted by Indianapolis Life and American General in support of their respective motions to dismiss.  (see doc. 111, 8-10; doc. 114, 7-9.)  The Court incorporates by reference its prior analysis and conclusions pertaining to Plaintiffs' Motion to Strike.

at 22-30)), the Court concluded that, with the exception of the Pekerol and PHR Plaintiffs, whose claims were governed by California law, genuine issues of material fact precluded entry of summary judgment as to all claims requiring a showing of justifiable reliance.  To summarize, the Court:

- granted Defendant Pacific Life's motion as to the claims of fraud, civil conspiracy and negligent misrepresentation brought by the Pekerol Plaintiffs, and dismissed these claims with prejudice (applying California law);

- denied Defendant Pacific Life's motion as to the claims of fraud, civil conspiracy and negligent misrepresentation brought by the Direct Electric Plaintiffs (applying Wisconsin law);

- denied Hartford's motion as to the claims for fraud, civil conspiracy and negligent misrepresentation brought by the MacMillan Plaintiffs (applying Texas law);

- denied Hartford's motion as to the claims for fraud, civil conspiracy and negligent misrepresentation brought by the Poulsbo Plaintiffs (applying Texas law); and

- granted Hartford's motion as to the claims for fraud, civil conspiracy and negligent misrepresentation brought by the PHR Plaintiffs, and dismissed these claims with prejudice (applying California law).[5]

Following this summary judgment ruling regarding the sole issue of justifiable reliance, as

_____

[5]Further, after noting that its analysis of the summary judgment motions was confined to the limited issue of "justifiable reliance," the Court directed the parties to submit position statements regarding whether the Court should consider all remaining claims based on the previously-filed motions to dismiss or as motions for summary judgment with the possibility of further briefing.  After considering the parties' submissions unanimously urging the Court to consider remaining claims pursuant to Rule 12(b)(6) (see docs. 126, 127 & 128), the Court vacated its December 17, 2008 Order converting Pacific Life's and Hartford's Rule 12(b)(6) motions to dismiss into Rule 56 summary judgment motions. (doc. 93.)

against Defendant Pacific Life, the following claims remain, and are the subject of the Court's analysis herein:

- the Pekerol Plaintiffs' claims against Pacific Life for violations of California's UCL (Counts Six and Seven), and unjust enrichment (Count Eight); and

- the Direct Electric Plaintiffs' claims against Pacific Life for: conspiracy (Count One); fraud (Count Two); negligent misrepresentation (Count Three); violations of California's UCL (Counts Six and Seven); and unjust enrichment (Count Eight).

As against Defendant Hartford, the following claims remain:

- the MacMillan Plaintiffs' claims against Hartford for: conspiracy (Count One); fraud (Count Two); negligent misrepresentation (Count Three); violations of California's UCL (Counts Six and Seven); and unjust enrichment (Count Eight);

- the Poulsbo Plaintiffs' claims against Hartford for: conspiracy (Count One); fraud (Count Two); negligent misrepresentation (Count Three); violations of California's UCL (Counts Six and Seven); and unjust enrichment (Count Eight); and

- the PHR Plaintiffs' claims against Hartford for: violations of California's UCL (Counts Six and Seven); and unjust enrichment (Count Eight).

## II.

## ANALYSIS

**A.     Legal Standards**

**1.     FED. R. CIV. P. 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint that fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In analyzing a motion

to dismiss, the Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotations omitted). However, the Complaint must contain "enough facts to state a claim to relief that is plausible on its face" and "raise [that] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff's claim meets the plausibility threshold when he "pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

### 2. FED. R. CIV. P. 9(b)

A dismissal for failure to plead with particularity in accordance with Federal Rule of Civil Procedure 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). Rule 9(b) provides, in pertinent part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the

statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004). Essentially, the standard requires the Complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

## B.     Pending Motions to Dismiss Remaining Claims

The Court now turns to Pacific Life's and Hartford's respective motion to dismiss all remaining claims brought the Pacific Life Plaintiffs and Hartford Plaintiffs. As the Court's jurisdiction is based on diversity in this putative class action lawsuit, 28 U.S.C. §1332(d), the Court will apply Texas state substantive law (including precedent on choice of law), and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).

### 1.     Pacifc Life's Motion to Dismiss

#### a.     *ERISA Preemption*

Pacific Life raises ERISA preemption as a grounds for dismissal of the Pekerol and Direct Electric Plaintiffs' claims. (doc. 38, Pac. Life Mot. to Dismiss at 30-31, 40; doc. 82, Pac Life Reply at 17-18.) Specifically, Pacific Life contends that the remaining claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §1001 *et. seq.* The Court has already rejected this argument in the context of ruling on American General's motion to dismiss identical state-law claims. (*see* doc. 114, 9-10.) Pacific Life's arguments in support of ERISA preemption are no different. Accordingly, the Court incorporates by reference its previous analysis (*see id.*) and, for the reasons stated therein, rejects Pacific Life's argument that ERISA preempts the

Pekerol and Direct Electric Plaintiffs' remaining state-law claims.

### b. *Standing to Bring Counts Six and Seven by non-Pacific Life Plaintiffs*

Prior to examining Pacific Life's arguments supporting dismissal of the remaining claims brought by the Pekerol and Direct Electric Plaintiffs, the Court addresses Pacific Life's more general argument that, other than Dr. Pekerol and Mr. Johnson, who allege they purchased an insurance policy from Pacific Life, "[n]o other plaintiff in this action has any ground whatsoever upon which to assert claims against Pacific Life." (doc. 38, Pac. Life. Mot. to Dismiss at 11.) The Court agrees. To the extent the Complaint asserts that "All Class Members" are bringing Counts Six and Seven (alleging violations of California's UCL) against Pacific Life, the Court rejects this assertion.

It is axiomatic that the Court has no jurisdiction over a claim that does not meet the requirements of Article III, which restricts federal judicial authority to resolution of "cases and controversies." U.S. CONST., ART. III § 2 ("The judicial Power shall extend to all Cases . . . arising under...the Laws of the United States . . . [and] to Controversies . . . between Citizens of different States."); *see generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992) (A prospective plaintiff has standing only if each of three prongs are satisfied: (1) that it has suffered an injury in fact (one that is concrete and actual, not hypothetical), (2) there is a casual connection between the injury and the challenged conduct of the defendants, and (3) the injury will likely be redressed by a favorable decision.") (internal citations omitted); *see also Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 (1976) ("That a suit may be a class action [. . .] adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotations omitted).

Those Plaintiffs who do not allege they purchased an insurance policy from Pacific Life to fund their 412(i) plan cannot, as a matter of law, demonstrate the requisite injury, or any causal connection between any injury and Pacific Life. *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1002 (9th Cir. 2001) (dismissing UCL claims asserted by plaintiff who did not allege he purchased a life insurance policy from defendant). Further, a plaintiff who never purchased an insurance policy from Pacific Life could not have "lost money or property as a result of" Pacific Life's conduct, and thus would not have standing to bring a claim for violations of California's UCL. *Swain v. Cach, LLC*, 699 F. Supp. 2d 1117, 1121 (N.D. Cal. 2009) ("To have standing to bring a cause of action under the UCL, a plaintiff must have suffered 'injury in fact and [ ] lost money or property as a result of unfair competition.'") (quoting CAL. BUS. & PROF. CODE, § 17204); *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d. 1168, 1173-74 (E.D. Cal. 2007) (same).

In light of the foregoing, the Court grants Pacific Life's motion to dismiss Counts Six and Seven as to all Plaintiffs, other than the Pacific Life Plaintiffs, for lack of standing. Accordingly, insofar as the remaining claims set forth above, the Court hereby dismisses Counts Six and Seven of the Complaint as brought by the MacMillan Plaintiffs, the Poulsbo Plaintiffs and the PHR Plaintiffs.[6]

### c.    *The Pekerol Plaintiffs' Remaining Claims*

As stated above, the sole claims remaining by the Pekerol Plaintiffs against Pacific Life are for   for violations of California's UCL (Counts Six and Seven), and unjust enrichment (Count Eight).  The Court addresses these remaining claims in turn.

---

[6]Further, in light of the Court's determination (*see infra*, §II.B.1.d) that the conspiracy claim should be dismissed, Plaintiffs cannot rely on their purported authority that a conspiracy claim conveys standing on all plaintiffs as to claims against all defendants.  Moreover, considering that Plaintiffs do not appear to argue a conspiracy to commit a violation of the California's UCL, it is questionable how that authority would apply to these claims (and Plaintiffs do not explain how it would).  (*See* doc. 65, Pls.' Consol. Resp. Br. at 84-86.)

The Pekerol Plaintiffs assert two claims for violations of California's UCL. Count Six for purported "unlawful" conduct is premised on allegations that Pacific Life violated both the California Consumer Legal Remedies Act ("CLRA") (CAL. CIV. CODE §1770) and the False Advertising Law ("FAL"). Count Seven is premised on alleged "fraudulent conduct." Pacific Life, in support of its motion to dismiss, argues that the Pekerol Plaintiffs have not alleged any facts showing they have "suffered injury in fact and [have] **lost money or property** as a result of unfair competition." (doc. 38, Pac. Life Mot. to Dismiss at 28) (quoting CAL. BUS. & PROF. CODE, § 17204) (Pacific Life's emphasis added). According to Pacific Life, the Pekerol Plaintiffs merely allege that they "will likely" be audited by the IRS which, if it occurred, would cause "audit-related fees and expenses" and "will likely result" in "significant tax liability." (*Id.*) (quoting Compl. ¶ 203.) Second, Pacific Life contends that the Pekerol Plaintiffs' UCL claim fail because they have not alleged a violation of the CLRA or FAL. Plaintiffs oppose these arguments, pointing to their allegations that they paid Pacific Life "substantial premiums with respect to these insurance policies, including more than $278,000 with respect to the Pekerol Policy." (doc. 65, Pls.' Consol. Resp. Br. at 89-90.)

First, the Court agrees with Pacific Life that the Pekerol Plaintiffs' alleged injury is too speculative to satisfy § 17204. To reiterate, § 17204 requires that Plaintiff have "suffered injury in fact and [ ] lost money or property as a result of the unfair competition." CAL. BUS. & PROF. CODE, § 17204. Although the Pekerol Plaintiffs allege they paid premiums to Pacific Life, there are no allegations showing any injury based on these payments, or that these payments are lost money or property, as required by § 17204. Further, allegations that the IRS might audit the Pekerol Plaintiffs, and that audit-related fees and expenses might be incurred, is too speculative to constitute an "injury in act" and "lost money or property," as required to state a claim under the UCL. *See Walker*, 474

F. Supp. 2d at 1172-73 (dismissing UCL claim against insurer for failure to plead "loss of money or property," stating that "an expectation of being paid . . . was merely a contingent interest at best"). Thus, Counts Six and Seven alleging violations of California's UCL must be dismissed for lack of standing.

Even were the Pekerol Plaintiffs to have standing (which they do not), the Court determines that Pacific Life's motion to dismiss should be granted. First, Pacific Life is correct that the UCL claims asserted in Counts Six and Seven, to the extent they are premised on the CLRA, fail to state a claim. The CLRA governs transactions involving a "consumer" defined as an "individual who seeks or acquires by purchase or lease, any goods or services for personal, family, or household purposes." CAL. CIV. CODE §1761(d). In 2009, after the Complaint and the parties' briefs were filed, the California Supreme Court held definitively that insurance policies are neither goods nor services under the CLRA. *Fairbanks v. Superior Court*, 205 P.3d 201, 203, 46 Cal. 4th 56, 61 (Cal. 2009). Accordingly, Pacific Life's motion to dismiss Counts Six and Seven, to the extent they are premised on violations of the CLRA, should be granted on this basis as well.

Again, assuming, *arguendo*, that the Pekerol Plaintiffs had standing under the UCL, the Court nevertheless agrees with Pacific Life that the Pekerol Plaintiffs' UCL claims, to the extent premised on violations of the FAL, should be dismissed. False advertising under California Business and Professions Code, § 17500 occurs when "any person . . . to induce the public to enter into any obligation relating thereto . . . make[s] or disseminate[s] from this state . . . any statement concerning any circumstance or matter of fact connected with the proposed performance . . . which is untrue or misleading." CAL. BUS. & PROF. CODE §17500. To state a claim under California's UCL based on the FAL, one must show that "members of the public are likely to be deceived." *Bank of*

*the West v. Super. Ct.*, 833 P.2d 545, 546 (Cal. 1992). The Court determines that the Complaint fails to provide facts to support a "short and plain statement of the claim." This is particularly so because the Complaint fails even to allege this required element of a false advertising claim. As such, to the extent based on a violation of the FAL, Counts Six and Seven should be dismissed on these grounds as well.

With regard to Count Eight, Pacific Life moves for dismissal of the Pekerol Plaintiff's unjust enrichment claim arguing that such a claim does not exist under California law. Putting a label on unjust enrichment has posed some difficulty for the California courts (as it has for Texas courts). *Compare McKell v. Washington Mutual, Inc.*, 49 Cal. Rptr. 3d 227, 254 (Cal. Ct. App. 2006) (noting that "there is no cause of action for unjust enrichment" under California law) *with First Nationwide Savings v. Perry*, 15 Cal. Rptr.2d 173, 176 (Cal. Ct. App. 1992) (finding that complaint stated a cause of action for unjust enrichment). Debating whether unjust enrichment is a cause of action seems a pointless exercise, as regardless of the characterization unjust enrichment is fundamentally a description of "the result of a failure to make restitution under circumstances where it is equitable to do so." *Lauriedale Assocs, Ltd v. Wilson*, 9 Cal. Rptr.2d 744, 780 (Cal. Ct. App. 1992); *see also Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.--Dallas 2006, no pet.) ("Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay."). "As a general principle, underlying various legal doctrines and remedies, [unjust enrichment] is synonymous with restitution." *Melchior v. New Line Productions, Inc.*, 131 Cal. Rptr.2d 347, 357 (Cal. Ct. App. 2003).

Plaintiffs appear to agree with the general principle that unjust enrichment is not available

as a claim or equitable basis of recovery when a valid contract exists. *California Medical Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc*., 114 Cal. Rptr.2d 109, 125 (Cal. Ct. App. 2001) ("as a matter of law, "a quasi-contract action for unjust enrichment does not lie where . . . express binding agreements exist and define the parties' rights."); *see* Pls.' Consol. Resp. Br. at 94. This is true under Texas law, as well. *See, e.g., Crawford v. Protective Life Ins*., 2000 WL 33348737, at *3 (W.D. Tex. Oct. 20, 2000) (no unjust enrichment where, in exchange for the premium payment it received, insurer provided coverage as agreed under written contract). Plaintiffs argue though that their unjust enrichment claim is not based on the insurance policies, but instead on "Defendants' misrepresentations and are separate and apart from the insurance contracts." Pls.' Consol. Resp. Br. at 94. Plaintiffs are correct that "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud." *McBride v. Boughton*, 20 Cal. Rtpr.3d 115, 121 (Cal. Ct. App. 2004). Nonetheless, because a contract exists, the quasi-contract theory of unjust enrichment, whether characterized as a cause of action or not, will not be available if they do not succeed on their fraud claim. *Nibbi Bros*., 253 Cal. Rptr at 294 (applying requirements for fraud claim to unjust enrichment action predicated on misrepresentations). Under these circumstances, where the success of the unjust enrichment claim rises and falls with the fraud claim, the Court finds that the attempt to plead "unjust enrichment" as a separate claim adds nothing. *See Jogani v. Super. Ct*., 81 Cal. Rptr.3d 503, 511 (Cal. Ct. App. 2008). If the Pekerol Plaintiffs are successful on their fraud claim, they may seek restitution as a remedy. There is no need for a separately labeled claim for the same relief based on the same underlying allegations. As such, Count Eight is dismissed.

### d. The Direct Electric Plaintiffs' Remaining Claims

#### 1. Count One - Civil Conspiracy

Pacific Life move to dismiss Count One alleging civil conspiracy. The Court has had opportunity to consider (and reject) the conspiracy allegations set forth in the First Amended Complaint. Specifically, on February 19, 2009, the Court granted the Consultant Defendants' motion to dismiss Count One (doc. 110, 2-12) and Indianapolis Life's motion to dismiss Count One (doc. 111, 14-16), and on March 11, 2009, the Court granted American General's motion to dismiss Count One (doc. 114, 12-16). The Court incorporates herein by reference its prior analyses of Count One's deficiencies as if fully set forth herein. Accordingly, the Court grants Pacific Life's motion to dismiss Count One as alleged by the Direct Electric Plaintiffs.

#### 2. Count Two - Fraud

Pacific Life has moved to dismiss the Direct Electric Plaintiffs' fraud claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and for failure to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. To the extent Pacific Life is challenging the pleadings under Rule 9(b)'s particularity requirements, in diversity actions, federal law governs pleading requirements. *Colonial Penn. Ins. Co.*, 1 F.3d at 376; *see also Hanna v. Plumer*, 380 U.S. 460, 465-74 (1965).

Pacific Life contends that the Direct Electric Plaintiffs' fraud claims should be dismissed pursuant to Rule 12(b)(6) since the alleged representations made by Mr. Lake, purportedly acting on behalf of Pacific Life, are either "promises" "that are in fact predictions about future events clearly out of Mr. Lake's, or Pacific Life's control (e.g., 'Lake and Pacific Life promised the Direct Electric Plaintiffs that they would receive large, tax-free returns from this arrangement' (Compl. ¶ 159)) or

predictions of how the IRS would (but ultimately did not) treat the premiums paid for the contracts (e.g., '[t]hat the premiums to be paid on these policies . . . qualifies as a [tax] deduction' (Compl. ¶ 158(c))).") (doc. 38, Pac. Life Mot. to Dismiss at 38-39.)

The Court has previously addressed this argument. On July 16, 2009, in the context of considering Indianapolis Life's motion to dismiss similar fraud allegations brought by putative class plaintiffs who alleged they purchased life insurance policies from Indianapolis Life[7], the Court clarified its prior judicial rulings regarding whether such statements as those allegedly made by Dr. Lake are actionable. Specifically, in determining that the Indianapolis Life Plaintiffs failed to state a claim for fraud, the Court stated as follows:

> The Court now revisits *dicta* in its prior decision, where it stated: "[t]o the extent Plaintiffs are alleging that any [of the alleged representations] are forward-looking or are opinions as to how the IRS would treat 412(i) plans at any time after [Plaintiffs] funded their plans with Indianapolis Life insurance policies in 2001-02, the Court finds those opinions as to future events unactionable as the basis for a fraud claim under the circumstances." ([doc. 111] at 22.) At the time, the Court did not dismiss the complaint on this basis, carefully noting that Plaintiffs in response to Indianapolis Life's motion to dismiss stated that they were "not alleging that agents were opining as to future treatment of the defined benefit plans" by the IRS. (doc. 111 at 23.) In light of the foregoing, however, the Court concludes that the deficiency noted in *dicta* -- that, as a matter of law, regulations and rulings by the IRS in 2004 and 2005 cannot be used to show that statements or omissions purportedly made in 2001 and 2002 were false when made – has not been remedied by Plaintiffs. The amended pleadings detailed above lead to only one conclusion, that is, the ILIC Plaintiffs are, indeed, alleging that Indianapolis Life's agents were giving opinions regarding future tax treatment by the IRS. As the Court stated in its February 19, 2009 opinion, "[a]s a matter of law, any representation or prediction by any alleged Indianapolis Life agent as to how the IRS would treat the 412(i) plans, and the funding thereof, in the future is either an non-actionable opinion or was unjustifiably relied upon." (doc. 111 at 22-23 (and cases cited therein).) Further, Indianapolis Life and Hartstein/ECI both contend that the ILIC Plaintiffs' amended allegations do not remedy this deficiency. Accordingly, as the ILIC Plaintiffs' amended pleadings do not

---

[7]These Plaintiffs are listed in footnote 1, *supra*.

overcome this obstacle, in addition to dismissing Count Two under Rule 9(b), for the reasons previously stated in *dicta* in its February 19, 2009 decision (doc. 111 at 18-26 (and cases cited therein)), as well as the reasons stated above, the Court DISMISSES Count Two pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. *See generally Williams v. Sidley, Austin, Brown & Wood, LLP*, 816 N.Y.S.2d 702 (Table), 2006 WL 684599, at *5 (N.Y. Super. Ct. 2006) ("The alleged misrepresentations regarding the purported safety and viability of the Coastal III Fund as a tax sheltered investment fall within the category of predictions or expressions of future events, which are neither affirmations of events that when made, the defendants knew or could have known would not occur, nor assertions of present facts that were exclusively within the defendants' knowledge."); *see also Borba v. Thomas*, 138 Cal. Rptr. 565, 570 (Cal. App. 1977) (finding no reasonable reliance upon a statement that a government agency would approve the parties' contract, as there is no right to rely on the representation of the "future conduct of public officials").

(doc. 142, 9-11.) [8]

The Direct Electric Plaintiffs' allegations pertaining to Mr. Lakes' representations and promises in discussions in early 2003 are the same as those addressed by the Court in connection with the Indianapolis Life Plaintiffs' allegations of fraud based on misrepresentations by Indianapolis Life's purported agents. The Direct Electric Plaintiffs allege that Mr. Lake represented to them orally and/or in writing: "(a) that the life insurance policies to be issued by Pacific Life were appropriate for use in funding the Direct Electric DBP as a qualified 412(i) plan; (b) that these policies provided a permissible death benefit under the Direct Electric DBP; (c) that the premiums to be paid on these policies by Direct Electric qualified as a deduction for federal income tax purposes; and (d) that the Direct Electric DBP, including the insurance policies that would be used to fund it, complied with federal tax laws and regulations." (doc. 34, Compl. ¶ 158.) In the Second Amended Complaint filed by the Indianapolis Life Plaintiffs (doc. 115), which was the subject of the

---

[8] The Court incorporates by reference the entirety of its July 19, 2009 decision as if fully set forth herein.

Court's July 16, 2009 Order, the Indianapolis Life Plaintiffs rely on identical allegations. (*see* doc. 115, Sec. Am. Comp. ¶¶ 115, 122, 132, 146, 157.)

In light of its prior decision in this case (doc. 142), including that portion quoted in detail directly above (*id.* at 9-11), the Court similarly holds, without further analysis necessary, that Mr. Lake's alleged representations as to how the IRS would treat 412(i) plans in the future is unactionable. (*see id.* and cases cited therein.)[9] Further, as stated by the Court in its prior opinion, "even were an exception to the general principle that opinions are not actionable applied, it is inherently unreasonable for any person to rely on a prediction of future IRS enactment, enforcement, or non-enforcement of the law by someone unaffiliated with the federal government. As such, the reasonable reliance element of any fraud claim based on these predictions fails as a matter of law." (*id.* at 7) (internal punctuation omitted). Accordingly, based on its prior decisions in this putative class action lawsuit, the Court grants Pacific Life's motion to dismiss Count Two for failure to state a claim.

Further, Pacific Life moves to dismiss the Direct Plaintiffs' fraud allegations pursuant to Rule 9(b), arguing that they fail to satisfy the Fifth Circuit's requirements pertaining to Rule 9(b) in several respects. The Court agrees. The Direct Electric Plaintiffs' fraud allegations suffer from the same pleading deficiencies as noted by the Court in prior decisions dismissing under Rule 9(b) the Indianapolis Life Plaintiffs' fraud claims (doc. 111, 17-21, 26) and the American General Plaintiffs' fraud claims (doc. 114, 16-21.) The Court incorporates by reference the relevant portions of these

---

[9]To the extent the Direct Electric Plaintiffs' claims are governed by Wisconsin law, the Court finds that the law of Wisconsin does not differ significantly on this issue from the laws of the various states considered by the Court in connection with its analysis of the Indianapolis Life Plaintiffs' fraud-based claims. *See generally Friends of Kenwood v. Green*, 619 N.W.2d 271, 275 (Wis. Ct. App. 2000).

prior opinions in this putative class action lawsuit, and similarly determines that the Direct Electric Plaintiffs' fraud claims should be dismissed for failure to allege fraud with adequate specificity under Rule 9(b).[10]

Based on the foregoing, in addition to dismissal pursuant to Rule 12(b)(6), Count Two is dismissed for failure to comply with Rule 9(b) with respect to both the alleged affirmative misrepresentations and omissions.

The Direct Electric Plaintiffs' failure to state a claim for fraud--the offense underlying its conspiracy claim-- also provides a separate basis upon which the Court finds the Count One conspiracy claim should be, and is therefore, dismissed. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997)(granting summary judgment on conspiracy claim noting that "allegations of conspiracy are not actionable absent an underlying [tort]"); *Askanase v. Fatjo*, 130 F.3d 657, 676 (5th Cir. 1997) (noting that "because the fraud claim fails[,] the fraud based conspiracy claim must fail also").

### 3. Count Three - Negligent Misrepresentation

Pacific Life argues that the Direct Plaintiffs' claim for negligent misrepresentation should be dismissed for the same reasons as its fraud claim. Plaintiffs oppose for the same reasons discussed and evaluated by the Court in connection with the fraud claim. Additionally, however, Plaintiffs

---

[10]The Direct Electric Plaintiffs' fraud claim based on omissions is premised on the affirmative statements made by Mr. Lake, which they claim were false or created a false impression because the agent failed to disclose the risks of the plans he recommended. Because the Direct Electric Plaintiffs' affirmative statements are not well pled under Rule 9(b), as discussed above, their omissions suffer from the same defects by association. Further, the alleged omissions of failing to disclose "the risks" and the "potentially abusive nature of this program" (*see* doc. 34, Compl. ¶ 159) are insufficiently specific to explain exactly what information the Direct Electric Plaintiffs claim Pacific Life knew and did not tell them prior to their purchase of life insurance policies. Thus, the Court determines there are insufficient facts pled with particularity to support any omission as the basis for a fraud claim.

argue that their negligent misrepresentation claim is not subject to the heightened particularity pleading standard of Rule 9(b). The Court disagrees. Relying on an unpublished Fifth Circuit opinion, *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 Fed. Appx. 662 (5th Cir.2004), and a subsequent opinion from this court, *American Realty Trust, Inc. v. Travelers Cas. & Surety Co. of Am.*, 362 F. Supp.2d 744 (N.D. Tex. 2005) (Godbey, J.), the Direct Electric Plaintiffs argue that they should not have to plead with particularity because their negligence and fraud claims are not intertwined. (doc. 65, Pls.' Consolidated Resp. Br. at 40-43.) This argument misinterprets those cases and ignores the reality of the Complaint. The Direct Electric Plaintiffs have effectively pled negligent misrepresentation as a lesser-included offense to their fraud claims. Although they correctly point out that they have labeled the claims separately as two different counts in the Complaint, the factual allegations underlying the claims are verbatim. *Compare* Compl. ¶ 212 to ¶ 220. Under those circumstances, "when the parties have not urged a separate focus on the negligent misrepresentation claims," the Fifth Circuit has found negligent misrepresentations claims subject to Rule 9(b) in the same manner as fraud claims. *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (evaluating negligent misrepresentation in the same manner as fraud in part because both were "based on the same set of alleged facts"); *see also Biliouris v. Sundance Res., Inc.*, 559 F. Supp.2d 733, 737 (N.D. Tex. 2008) (dismissing negligent misrepresentation claim that was based on the same operative facts as an insufficient fraud claim); *Kougl v. Xspedius Mgmt. Co.*, No. 3:04-CV-2518-D, 2005 WL 1421446, at ** 5-6 (N.D. Tex. Jun. 1, 2005) (dismissing negligent misrepresentation claim that restated the same factual basis as a fraud claim for failure to satisfy Rule 9(b)). The Direct Electric Plaintiffs' negligent misrepresentation claim fails to satisfy Rule 9(b) to the same extent and for the same reasons as the fraud claim discussed above. Thus, Count Three

is dismissed.

>    **4.    Counts Six and Seven: Violation of California Business and Professions Code 17200 (Unlawful Business Acts and Fraudulent Business Acts)**

The Court dismisses Counts Six and Seven for the same reasons as those set forth above dismissing Counts Six and Seven as to the Pekerol Plaintiffs. (*see supra*, § II.B.1.c.)[11]

>    **5.    Count Eight: Unjust Enrichment**

Pacific Life moves to dismiss Count Eight, contending that the claim for unjust enrichment fails because Plaintiffs have not alleged that Pacific Life received premiums "under circumstances such that it would be inequitable to retain the benefit without payment." (doc. 38, Pac. Life Mot. to Dismiss at 40) (quoting *Staver v. Milwaukee County*, 712 N.W.2d 387, 393 (Wis. Ct. App. 2006)). The Direct Electric Plaintiffs in response do not make the argument that they meet the requirements for stating a claim for unjust enrichment under Wisconsin law.

Wisconsin law on unjust enrichment claim requires proof of three elements: (1) a benefit that has been conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the benefit; and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment. *Lawlis v. Thompson*, 137 Wis. 2d 490, 496-97, 405 N.W.2d 317 (1987). Having considered Count Eight of the Complaint, the Court concludes that the Direct Electric Plaintiffs have failed to allege it would be inequitable for

---

[11]Further, in addition to lacking standing because of speculative allegations regarding future injury, it is questionable whether Mr. Johnson, who purchased an insurance contract in Wisconsin through a Wisconsin intermediary, can pursue a claim for violations of California's UCL. *See Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18, 25-26 (Cal. Ct. App. 1999) (UCL does not support claims by non-California residents where none of the alleged misconduct or injuries occurred in California.) Other than the general allegation that Pacific Life has its principal place of business in Newport Beach, California, the Court is currently unable to find specific allegations of misconduct or injury taking place in California.

Pacific Life to retain the benefit without payment. Accordingly, the Court dismisses Count Eight.

### 2. Hartford's Motion to Dismiss

#### a. *The Macmillan Plaintiffs*

The Court previously dismissed the MacMillan Plaintiffs' California UCL claims (Counts Six and Seven) for lack of standing. (*See supra*, § II.B.1.b). Thus, remaining are the MacMillan Plaintiffs' claims against Hartford for: conspiracy (Count One); fraud (Count Two); negligent misrepresentation (Count Three); and unjust enrichment (Count Eight).

With regard to Count One, alleging conspiracy, the Court dismisses Count One for the reasons previously set forth in connection with the Court's dismissal of Count One as alleged by the Direct Electric Plaintiffs. (*see supra*, § II.B.1.d.) With regard to Counts Two (fraud) and Three (negligent misrepresentation), the Court dismisses Counts Two and Three pursuant to Rule 9(b) for the reasons set forth above in the Court's dismissal pursuant to Rule 9(b) of Counts Two and Three as alleged by the Direct Electric Plaintiffs.[12] (*see supra*, § II.B.1.d.) As to Count Eight for unjust enrichment, the Court dismisses Count Eight for the reasons stated above in connection with the Court's dismissal of Count Eight as alleged by the Pekerol Plaintiffs. (*see supra*, § II.B.1.c.)

#### b. *The Poulsbo Plaintiffs*

The Court previously dismissed the Poulsbo Plaintiffs' California UCL claims (Counts Six and Seven) for lack of standing. (*See supra*, § II.B.1.b). Thus, remaining are the Poulsbo Plaintiffs'

---

[12]Unlike Pacific Life which moved to dismiss the Pacific Life Plaintiffs' fraud claims pursuant to Rule 9(b) *and* based on the merits of the claim, other than the argument that the transaction documents establish as a matter of law that justifiable reliance is not satisfied (which the Court took up on summary judgment and which is therefore not before the Court at this time), Hartford limits its motion to the Hartford Plaintiffs' failure to satisfy the particularity requirements of Rule 9(b). Accordingly, as federal law pertaining to pleading requirements controls, the Court need not undertake a choice of law analysis at this juncture.

claims against Hartford for: conspiracy (Count One); fraud (Count Two); negligent misrepresentation (Count Three); and unjust enrichment (Count Eight).

With regard to Count One, alleging conspiracy, the Court dismisses Count One for the reasons previously set forth in connection with the Court's dismissal of Count One as alleged by the Direct Electric Plaintiffs. (*see supra*, § II.B.1.d.) With regard to Counts Two (fraud) and Three (negligent misrepresentation), the Court dismisses Counts Two and Three pursuant to Rule 9(b) for the reasons set forth above in the Court's dismissal pursuant to Rule 9(b) of Counts Two and Three as alleged by the Direct Electric Plaintiffs. (*see supra*, § II.B.1.d.) As to Count Eight for unjust enrichment, the Court dismisses Count Eight for the reasons stated above in connection with the Court's dismissal of Count Eight as alleged by the Pekerol Plaintiffs. (*see supra*, § II.B.1.c.)

### c.  *The PHR Plaintiffs*

The Court previously dismissed the PHR Plaintiffs' California UCL claims (Counts Six and Seven) for lack of standing. (*See supra*, § II.B.1.b). Accordingly, the only remaining claim brought by the PHR Plaintiffs is for unjust enrichment (Count Eight). The grounds stated by the Court above in dismissing the Pekerol Plaintiffs' claim for unjust enrichment (*see supra*, §II.B.1.c) apply equally to the PHR Plaintiffs. Accordingly, the Court dismisses Count Eight.

### III.

### CONCLUSION

Based on the foregoing, the Court GRANTS Pacific Life's Motion to Dismiss (doc. 38) the remaining claims asserted by the Pekerol Plaintiffs and Direct Electric Plaintiffs, and GRANTS Hartford's Motion to Dismiss (doc. 43) the remaining claims asserted by the MacMillan Plaintiffs, the Poulsbo Plaintiffs and the PHR Plaintiffs.

With regard to Pacific Life's Motion to Dismiss (doc. 38), as to the Pekerol Plaintiffs, Counts Six, Seven and Eight are DISMISSED pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. As to the Direct Electric Plaintiffs, Counts One, Two, Three, Six, Seven and Eight are DISMISSED pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. Counts Two and Three are also DISMISSED pursuant to FED. R. CIV. P. 9(b) for failure to plead fraud with sufficient particularity. Further, the Court GRANTS Pacific Life's Motion to Dismiss all claims by any Plaintiff in this putative class action who does not allege purchasing a life insurance policy issued by Pacific Life, and these claims are DISMISSED.

With regard to Hartford's Motion to Dismiss (doc. 43), as to the MacMillan Plaintiffs, Counts One and Eight are DISMISSED pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. Counts Two and Three are DISMISSED pursuant to FED. R. CIV. P. 9(b) for failure to plead fraud with sufficient particularity. As to the Poulsbo Plaintiffs, Counts One and Eight are DISMISSED pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim. Counts Two and Three are DISMISSED pursuant to FED. R. CIV. P. 9(b) for failure to plead fraud with sufficient particularity. As to the PHR Plaintiffs, Count Eight is DISMISSED pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim.

A plaintiff should be given the opportunity to amend a Complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) (noting that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so."); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977)

(observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted."). The Court notes that Plaintiffs in this case have specifically requested the opportunity to replead. (doc. 65, Pls.' Consol. Resp. Br. at 108.)

In deciding whether to replead, the Court suggests that counsel for the Pacific Life and Hartford Plaintiffs carefully consider the Court's July 16, 2009 decision in this putative class action lawsuit pertaining to the Indianapolis Life Plaintiffs' attempt to replead their claims against Indianapolis Life (*see* doc. 142, July 16, 2009 Mem. Op.). Specifically, after granting Defendant Indianapolis Life's motion to dismiss the First Amended Complaint, the Court granted the Indianapolis Life Plaintiffs leave to replead. (doc. 111). The Indianapolis Life Plaintiffs thereafter filed a Second Amended Complaint. (doc. 115.) The Court ultimately concluded on July 16, 2009, that the Indianapolis Life Plaintiffs' Second Amended Complaint did not cure the deficiencies which had previously resulted in dismissal of the First Amended Complaint. (*see* doc. 142, July 16, 1009 Mem. Op. at 14-15.)[13] Given the substantial similarity and overlap of the allegations brought by the putative class members against the four Insurance Company Defendants in this case, consideration of the Court's July 16, 2009 decision may prove useful. In that vein, the Court DIRECTS counsel for the Pacific Life and Hartford Plaintiffs to submit to the Court, no later than Friday, September 8, 2010, briefing regarding whether they still wish to replead, and if so, explaining why further amendment of the pleadings would not be futile.

**SO ORDERED.**

---

[13]*See also* doc. 158 (dismissing Count Four of Second Amended Complaint with prejudice).

SIGNED August 26, 2010.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE