UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN BERRY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:08-CV-0248-B |
| | § | |
| INDIANAPOLIS LIFE INSURANCE | § | |
| COMPANY, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Third Amended Complaint[1] filed November 4, 2010 (doc. 218)

against Defendants Hartford Life and Annuity Insurance Company ("Hartford"), Pacific Life

Insurance Company ("Pacific Life"), and American General Life Insurance Company ("American

General") (collectively "the Insurance Defendants"). Also before the Court are Plaintiffs' Synopsis

of the Third Amended Complaint Regarding Claims Against Hartford filed November 4, 2010 (doc.

219) ("Hartford Synopsis"); Plaintiffs' Synopsis of the Third Amended Complaint Regarding Claims

Against Pacific Life filed November 4, 2010 (doc. 220) ("Pacific Life Synopsis"); Plaintiffs' Synopsis

---

[1]With leave of Court, a Second Amended Complaint was filed on March 11, 2009 by those Plaintiffs who purchased insurance policies from Defendant Indianapolis Life Insurance Company, namely, Stephen Berry, Fader Higher, LLC, Robert P. Young, M.D., Rocky Mountain Dermatology, Inc., Tyrone M. Seils, DP Search, Inc., David R. Hallman, Lynn Hallman, Accessibility Unlimited, Inc., Richard Sarmiento, and Richard and Leilani Sarmiento, a sole proprietorship.
   Plaintiffs also filed a proposed third amended complaint on September 10, 2010 (doc. 192-1). The Court rejected this proposed amended complaint and instructed Plaintiffs to file a revised amended complaint in accordance with the Court's prior orders. Order Oct. 25, 2010. The Court refers to Plaintiffs' complaint filed November 4, 2010 as the "Third Amended Complaint" or "TAC." At this stage of the case, only claims against Hartford, Pacific Life, and American General remain.

of the Third Amended Complaint Regarding Claims Against American General filed November 4, 2010 (doc. 221) ("American General Synopsis"); and Hartford's, Pacific Life's, and American General's responses thereto. The Court previously dismissed all claims against Hartford, Pacific Life, and American General and instructed Plaintiffs, if Plaintiffs sought to replead against these Defendants, to file a proposed amended complaint and synopses showing how the amended complaint overcomes the grounds stated for dismissal specifically as to claims against each remaining Defendant in light of the Court's previous orders in this case. For the reasons listed below, all claims in Plaintiffs' Third Amended Complaint are hereby **DISMISSED**.

## I.

## BACKGROUND[2]

Plaintiffs in this matter are a putative nationwide class consisting primarily of professionals, such as doctors, dentists, and construction company owners, and the companies they operate. TAC ¶¶ 5-25. Plaintiffs' claims concern the design, marketing, and sale of life insurance policies Plaintiffs purchased to fund certain defined benefit plans that purportedly complied with Section 412(i) of the Internal Revenue Code ("§ 412(i)"), but were later examined by the Internal Revenue Service ("IRS") and determined to be abusive tax shelters. *Id.* at ¶ 1.[3] Plaintiffs allege that Defendants knew

---

[2]The Court takes its factual account from Plaintiffs' Third Amended Complaint and accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiffs. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court only briefly discusses the facts as alleged given the extensive discussions of these and similar allegations in other opinions issued in this case.

[3]A "§ 412(i)" plan under the Internal Revenue Code is an employer-sponsored pension plan that, upon meeting certain requirements, qualifies for favorable tax treatment. *See* 26 U.S.C. § 412(e)(3) (West 2008). The Pension Protection Act of 2006, Pub. L. No. 109-280, amended section 412, and relocated it to section 412(e)(3). The amendments are applicable to plan years beginning after December 31, 2007.

or should have known the plans, as funded by certain life insurance policies, would be scrutinized by the IRS and deemed abusive and illegal, due to existing tax law as well as various criticisms of these types of plans by industry experts and IRS and Treasury officials. *Id.* at ¶¶ 42-72, 152. Plaintiffs further allege that Defendants conspired to market these plans and to sell the life insurance policies used to fund them by making fraudulent or negligent misrepresentations or omissions about the tax benefits of the plans and without disclosing the risk that the IRS would deem the plans illegal. *Id.* at ¶¶ 153-154.

In February 2004, the IRS issued a press release, two revenue rulings, and proposed regulations regarding abusive tax shelters "involving specially designed life insurance policies in retirement plans, section '412(i) plans.'" *Id.* at ¶ 297. The IRS's proposed regulations, finalized in August 2005, indicated that the issuance of life insurance policies greatly in excess of the permissible death benefit under a § 412(i) plan is a "listed transaction" that is an abusive tax shelter. *Id.* at ¶¶ 298-299. The IRS stated that a plan holding such policies cannot be a § 412(i) plan. *Id.* at ¶ 299. The IRS also stated in a 2004 revenue ruling that funding a § 412(i) plan with a different type of insurance policy for highly compensated employees than those for non-highly compensated employees will result in disqualification of the plan. *Id.* at ¶ 300. In 2005, the IRS began a nationwide audit directed at § 412(i) plans and has commenced audits of Plaintiffs, resulting in substantial audit-related fees and expenses as well as significant tax liability for Plaintiffs, including disallowed deductions, penalties, and interest, and leading to Plaintiffs' instant suit. *Id.* at ¶ 308

The Third Amended Complaint's claims concern the life insurance policies sold by Hartford, Pacific Life, and American General. Four Plaintiffs in the putative class allege they funded their § 412(i) plans with insurance policies purchased from Pacific Life: California resident Mehmet C.

Pekerol, M.D. and California professional corporation Mehmet C. Pekerol, M.D., P.C. (the "Pekerol Plaintiffs"); and Wisconsin resident Thomas A. Johnson and Wisconsin corporation Direct Electric of Wisconsin, Inc. (the "Direct Electric Plaintiffs") (collectively, the "Pacific Life Plaintiffs"). *Id.* at ¶¶ 5-6, 24-25. Seven Plaintiffs allege they funded their § 412(i) plans with insurance policies purchased from Hartford: Arizona resident Robert W. MacMillan and Arizona corporation MacMillan Construction Co., Inc. (the "MacMillan Plaintiffs"); Washington resident Charles R. Brown, DDS and Washington sole proprietorship Poulsbo Children's Dentistry (the "Poulsbo Plaintiffs"); and California residents Yoram Hakimi and Noam Maor and California corporation Pacific Home Remodeling, Inc. (the "PHR Plaintiffs") (collectively, the "Hartford Plaintiffs"). *Id.* at ¶¶ 10-16. Ten Plaintiffs allege they funded their § 412(i) plans with insurance policies purchased from American General: California residents Jamie Hughes and Stanton Greene and California corporation Valley Vista Mortgage, Inc. (collectively with Hughes and Greene, "Valley Vista"); California resident Douglas A. DeSalvo and California corporation Douglas A. DeSalvo Chiropractic, Inc. (collectively "DeSalvo"); California resident Brian E. Kilcourse and California limited partnership BEK Consulting LP (collectively "BEK"); and Colorado residents David George and Deborah George and Colorado corporation Audio Book Services, Inc. (collectively "ABS"). *Id.* at ¶¶ 7-9, 17-23 (collectively the "American General Plaintiffs").

## II.

## PROCEDURAL HISTORY

The Court previously dismissed with prejudice all claims against Defendants Indianapolis Life Insurance Company ("Indianapolis Life"), Economic Concepts, Inc. ("ECI"), ECI Pension Services, LLC ("Pension Services"), and Kenneth R. Hartstein ("Hartstein") for failure to state a claim. Mem.

Op. Feb. 19, 2009 (doc. 110); Mem. Op. Feb. 19, 2009 (doc. 111); Mem. Op. July 16, 2009 (doc. 142); Order Dec. 22, 2009 (doc. 158). In the Court's Order of September 20, 2010 (doc. 198), the Court denied Plaintiffs' Motion for Leave to File Amended Complaint (doc. 192) with prejudice as to claims against Indianapolis Life, ECI, Pension Services, and Hartstein.

The Court previously dismissed all claims against American General in its Memorandum Opinion of March 11, 2009 (doc. 114). The Court dismissed with prejudice the fraud, civil conspiracy and negligent misrepresentation claims brought by the Pekerol Plaintiffs against Pacific Life in its Memorandum Opinion filed March 26, 2009 (doc. 122). The Court then dismissed all remaining claims brought against Pacific Life and Hartford in its August 26, 2010 Memorandum Opinion (doc. 187) granting Pacific Life's and Hartford's motions to dismiss. At issue is whether the Third Amended Complaint cures the deficiencies identified by these opinions.[4] In light of the Court's familiarity with the case, and the parties' extensive prior briefing, rather than have the parties engage in yet another round of briefing, the Court directed the remaining Plaintiffs to file synopses with their Third Amended Complaint detailing how the amended pleadings overcame the deficiencies detailed by the Court in its prior decisions. The Court permitted the remaining Insurance Defendants to file responses to the synopses. The repleading and synopses are now ripe for determination.

---

[4]The Court also notes its multiple opinions in this case concerning claims asserted against Indianapolis Life, Pension Services, ECI, and Hartstein, which provide additional guidance regarding the sufficiency of Plaintiffs' allegations. The Court considers these opinions as the claims against the remaining Insurance Defendants are similar, if not identical, such that the remaining Plaintiffs were put on notice of the Court's findings on these claims that may also apply to claims against the remaining Insurance Defendants.

## II.

## LEGAL STANDARDS

*A.      Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the Court may dismiss a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In analyzing a motion to dismiss, the Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotations omitted). However, the Complaint must contain "enough facts to state a claim to relief that is plausible on its face" and "raise [that] right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plaintiff's claim meets the plausibility threshold when he "pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

*B.      Rule 9(b)*

A dismissal for failure to plead with particularity in accordance with Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also*

*Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (citing *Williams*, 343 F.3d at 177). Essentially, the standard requires the Complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

## III.

## ANALYSIS

The Third Amended Complaint asserts claims for civil conspiracy, common law fraud, negligent misrepresentation, unlawful business acts and practices in violation of California Business and Professions Code Section 17200, *et seq.* (California's Unfair Competition Law, or "UCL"), fraudulent business and practices in violation of California Business and Professions Code Section 17200, *et seq.* (together with the unlawful business acts and practices claim, "the UCL claims"), and unjust enrichment. Although these claims were previously dismissed against the Insurance Defendants, the Plaintiffs' Synopses argue that the Third Amended Complaint cures the deficiencies previously identified by the Court for several reasons. First, the new complaint alleges separate conspiracies between the Consultant Defendants and each Insurance Defendant, rather than a single conspiracy involving all Insurance Defendants. Second, the Third Amended Complaint sets forth additional reasoning on why the alleged representations were false when made or were actionable

opinions or predictions, and why they were reasonably relied upon by the Plaintiffs. Third, the new complaint adds more specificity regarding the UCL claims. Fourth, Plaintiffs argue that their fraud and unjust enrichment claims are not duplicative.[5]

In response, American General, Pacific Life, and Hartford argue that the repleading is deficient in several respects. First, the Insurance Defendants argue that the Third Amended Complaint and Plaintiffs' Synopses present new legal arguments that should have been presented previously and Plaintiffs' repleading and synopses are in effect a disguised motion to reconsider. Second, Defendants argue, even if these new arguments had been presented previously against American General, Pacific Life, and Hartford, most of these arguments were already presented to the Court in Plaintiffs' Second Amended Complaint and the accompanying Synopsis and have already been considered and rejected by the Court in its orders concerning Indianapolis Life. Third, Defendants argue that the UCL claims are fraud-based claims that fail because Plaintiffs' fraud claims fail. Fourth, Defendants argue that the conspiracy claims fail for lack of an underlying tort. For the reasons set forth below, the Court finds the repleading deficient.

A.    *Fraud Claims*

The Court finds that Plaintiffs' Third Amended Complaint fails to cure the deficiencies previously identified in the Court's prior orders with respect to Plaintiffs' fraud claims. The Court previously had the opportunity to examine some of the same IRS guidance and industry criticisms

---

[5]The Court ordered Plaintiffs to file synopses as to claims against the remaining Defendants setting forth how the Third Amended Complaint "overcomes the grounds stated for dismissal specifically as to claims against each remaining Defendant in light of the Court's previous orders in this case." Order Oct. 25, 2010 at 2. Accordingly, Plaintiffs filed three separate synopses, as requested. However, the synopses and the exhibits in support of these synopses are almost identical.

discussed in the Third Amended Complaint when it assessed Plaintiffs' Second Amended Complaint. Despite Plaintiffs' contentions that such guidance and criticism made Indianapolis Life's statements regarding the legality of its § 412(i) plans false when made, the Court found such allegations were insufficient:

> Plaintiffs have failed to explain *why* the alleged representations by Indianapolis Life's agents were false when made in 2001 and 2002. Simply stated, Announcement 88-51 and Notice 89-25 fail to provide the type of definitive guidance about the legality of funding 412(i) plans with Indianapolis Life's specially-designed insurance policies to support the proposition that Indianapolis Life's agents knew that the alleged representations were false when made in 2001 and 2002. *See* I.R.S. ANNOUNCEMENT 88-51, 1988-13 I.R.B. 34, 1988 WL 561238 (March 28, 1988) (warning that a valuation method other than insurance policy's cash surrender value "*may* have to be used for purposes of determining the taxable amounts under section 72 of the Code") (emphasis added); I.R.S. NOTICE 89-25, 1989-1 C.B. 662, 1989 WL 587481 (March 20, 1989) (the reserve value may be more appropriate approximation of insurance contract's fair market value in certain circumstances). In short, the Court agrees with Indianapolis Life and Hartstein/ECI that the only definitive guidance specifically applicable to the 412(i) plans at issue, and the alleged representation made regarding the tax benefits and legality of the plans, appears in the IRS's 2004 revenue rulings and 2005 final regulations.

Mem. Op. July 16, 2009 at 8-9.[6] Given this failure to plead why Indianapolis Life's representations were false when made, the Court dismissed Plaintiffs' fraud claims under Rule 9(b). *Id.* at 9.

This Court then proceeded to examine whether any representations by Indianapolis Life were reasonably relied upon by the Indianapolis Life Plaintiffs:

> The Court now revisits its prior decision, where in *dicta* it stated: "[t]o the extent Plaintiffs are alleging that any [of the alleged representations] are forward-looking or are opinions as to how the IRS would treat 412(i) plans at any time after [Plaintiffs] funded their plans with Indianapolis Life insurance policies in 2001-02, the Court finds those opinions as to future events unactionable as the basis for a fraud claim under the circumstances." At the time, the Court did not dismiss the complaint

_____

[6]The Court noted that the 2004 guidance clarified key unsettled valuation issues. *See* Mem. Op. July 16, 2009 at 9 n.9 (and citations listed therein).

- 9 -

on this basis, carefully noting that Plaintiffs in response to Indianapolis Life's motion to dismiss stated that they were "not alleging that agents were opining as to future treatment of the defined benefit plans" by the IRS. In light of the foregoing, however, the Court concludes that the deficiency noted in *dicta* -- that, as a matter of law, regulations and rulings by the IRS in 2004 and 2005 cannot be used to show that statements or omissions purportedly made in 2001 and 2002 were false when made -- has not been remedied by Plaintiffs. The amended pleadings detailed above lead to only one conclusion, that is, the [Indianapolis Life] Plaintiffs are, indeed, alleging that Indianapolis Life's agents were giving opinions regarding future tax treatment by the IRS. As the Court stated in its February 19, 2009 opinion, "[a]s a matter of law, any representation or prediction by any alleged Indianapolis Life agent as to how the IRS would treat the 412(i) plans, and the funding thereof, in the future is either an non-actionable opinion or was unjustifiably relied upon."

*Id.* at 9-11 (citing Mem. Op. Feb. 19, 2009 at 22-23 and cases cited therein). Accordingly, the Court

dismissed Plaintiffs' fraud claims against Indianapolis Life and the Consultant Defendants under Rule

9(b) and Rule 12(b)(6). *Id.* at 9-10 (citations omitted).

The Court adopted this same reasoning in its August 26, 2010 opinion in finding that the

Pacific Life agent's representations to the Direct Electric Plaintiffs were not false when made, stating:

The Direct Electric Plaintiffs' allegations pertaining to Mr. Lake's representations and promises in discussions in early 2003 are the same as those addressed by the Court in connection with the Indianapolis Life Plaintiffs' allegations of fraud based on misrepresentations by Indianapolis Life's purported agents. The Direct Electric Plaintiffs allege that Mr. Lake represented to them orally and/or in writing: "(a) that the life insurance policies to be issued by Pacific Life were appropriate for use in funding the Direct Electric [Defined Benefit Plan, or "DBP"] as a qualified 412(i) plan; (b) that these policies provided a permissible death benefit under the Direct Electric DBP; (c) that the premiums to be paid on these policies by Direct Electric qualified as a deduction for federal income tax purposes; and (d) that the Direct Electric DBP, including the insurance policies that would be used to fund it, complied with federal tax laws and regulations." FAC ¶ 158. In the Second Amended Complaint filed by the Indianapolis Life Plaintiffs, which was the subject of the Court's July 16, 2009 Order, the Indianapolis Life Plaintiffs rely on identical allegations. SAC ¶¶ 115, 122, 132, 146, 157.

In light of its prior decision in this case . . . the Court similarly holds, without further analysis necessary, that Mr. Lake's alleged representations as to how the IRS would treat 412(i) plans in the future [are] unactionable. Further, as stated by the Court in its prior opinion, "even were an exception to the general principle that

opinions are not actionable applied, it is inherently unreasonable for any person to rely on a prediction of future IRS enactment, enforcement, or non-enforcement of the law by someone unaffiliated with the federal government. As such, the reasonable reliance element of any fraud claim based on these predictions fails as a matter of law." Accordingly, based on its prior decisions in this putative class action lawsuit, the Court grants Pacific Life's motion to dismiss Count Two for failure to state a claim.

Mem. Op. Aug. 26, 2010 at 23-24 (citing Mem. Op. July 16, 2009 at 7, 9-11 and cases cited therein). The Court also dismissed the Direct Electric Plaintiffs' fraud claim for failure to plead fraud with specificity for the same reasons detailed in the Court's opinions dismissing the Plaintiffs' fraud claims against American General and Indianapolis Life. *Id.* at 24-25. The Court then proceeded to dismiss the remaining fraud claims brought by the Hartford Plaintiffs for the reasons set forth in its dismissal of the Direct Electric Plaintiffs. *Id.* at 28-29.

For the same reasons the Court finds the Third Amended Complaint's allegations of fraud deficient. Although Plaintiffs argue that "[t]he purported 412(i) plans violated existing law for many reasons that had nothing to do with the February 2004 revenue rulings and proposed regulations," Hartford Synopsis 2, these arguments and allegations were largely raised in Plaintiffs' Second Amended Complaint and found insufficient in the Court's opinion dismissing the fraud claim with prejudice as to Indianapolis Life.[7] *Compare* SAC ¶¶ 67-70 *with* TAC ¶¶ 58-61 (allegations regarding risks of "springing cash value" policies); *compare* SAC ¶¶ 71-73 *with* TAC ¶¶ 62-64 (discussing "plan

---

[7]Plaintiffs also suggest that the Court follow the holding of another district court which found similar fraud allegations sufficient under Rule 9(b). *See, e.g.,* Hartford Synopsis 2 n.8 (citing *Tolentino v. Hartford Life & Annuity Ins. Co.,* No. 2:09-CV-1327 (D. Nev. Mar. 25, 2010)) (attached to Hartford Synopsis at Ex. 1). This decision is neither binding on this Court nor on point, given that Hartford, in that case, continued to make misrepresentations regarding the legality of its § 412(i) plans after the 2004 IRS guidance. *See* Hartford Synopsis Ex. 1 at 2 ("After the IRS issued a statement in 2004 clarifying the tax liabilities related to [§ 412(i)] plans, defendants allegedly continued to misrepresent the consequences of plaintiffs' participation in the plan.").

permanency" requirement); *compare* SAC ¶¶ 74-76 *with* TAC ¶¶ 65-67 (discussing general § 412(i)

requirements); *compare* SAC ¶¶ 77-78 *with* TAC ¶¶ 68-69 (discussing "non-discrimination" rule);

*compare* SAC ¶¶ 81-82, 97-100, and 236-241 *with* TAC ¶¶ 42-55, 81-82, 99-102, 120-121, 132-135,

142-144, 152, and 287-292 (discussing criticism of particular § 412(i) plans made by Treasury

officials, IRS officials, and industry experts as well as the Insurance Defendants' knowledge of this

criticism). Based on its examination of the Third Amended Complaint, the Court reaffirms its prior

rulings that the "only definitive guidance specifically applicable to the 412(i) plans at issue, and the

alleged representation made regarding the tax benefits and legality of the plans, appears in the IRS's

2004 revenue rulings and 2005 final regulations."[8] Mem. Op. July 16, 2009 at 9. Accordingly, the

Third Amended Complaint does not sufficiently allege that the Insurance Defendants' alleged

representations regarding the legality of the § 412(i) plans prior to these revenue rulings and final

regulations were false when made. Further, as this Court previously determined, given the lack of

definitive guidance on the § 412(i) plans prior to the 2004 revenue rulings and 2005 final

regulations, any statements regarding the legality of these plans were opinions or predictions

regarding future IRS enforcement. The Court reaffirms its prior ruling that "it is inherently

unreasonable for any person to rely on a prediction of future IRS enactment, enforcement, or non-

enforcement of the law by someone unaffiliated with the federal government." Mem. Op. Feb. 19,

---

[8]The Third Amended Complaint does add additional allegations that the Insurance Defendants' § 412(i) plans violated the incidental benefit rule, exclusive benefit rule, and the step transaction doctrine. TAC ¶¶ 56-57, 70-72. However, the Court disagrees that these allegations render the Insurance Defendants' statements false when made given the Court's findings regarding the 2004 revenue rulings and 2005 final regulations. *See generally* Hartford Resp. 2-3 and Pacific Life Resp. 3-4 (discussing how Revenue Ruling 2004-20 clarified existing law regarding § 412(i) plans). Further, such allegations are legal arguments that either should have been raised previously in response to the Defendants' various motions to dismiss or in a motion to reconsider the Court's prior rulings on the Defendants' motions to dismiss.

2009 at 23 n.19. The Third Amended Complaint does not allege that the Insurance Defendants or their agents had any special knowledge or ability to control future IRS enactment or enforcement such that they could have reasonably relied on the Insurance Defendants' representations. As such, the Third Amended Complaint neither pleads fraud with the specificity required by Rule 9(b) nor does it plead the reliance element of fraud as required by Rule 12(b)(6).[9] As such, Plaintiffs' fraud claims against Hartford, Pacific Life, and American General are **DISMISSED**.

B.     *Negligent Misrepresentation Claims*

Plaintiffs' negligent misrepresentation claim fails for the same reasons. Although Plaintiffs' negligent misrepresentation claim is labeled as a separate count from the fraud claim in the complaint, the Third Amended Complaint effectively pleads negligent misrepresentation as a lesser-included offense to the fraud claims. As the Fifth Circuit has explained, "when the parties have not urged a separate focus on the negligent misrepresentation claims," negligent misrepresentation claims are subject to Rule 9(b) in the same manner as fraud claims. *Benchmark Elecs.*, 343 F.3d at 723 (evaluating negligent misrepresentation claim in the same manner as fraud claim in part because both were "based on the same set of alleged facts"); *see also Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 737 (N.D. Tex. 2008) (dismissing negligent misrepresentation claim that was based on the same operative facts as an insufficient fraud claim); *Kougl v. Xspedius Mgmt. Co.*, No. 3:04-CV-2518-D, 2005 WL 1421446, at *5-6 (N.D. Tex. Jun. 1, 2005)(dismissing negligent misrepresentation claim that restated the same factual basis as a fraud claim for failure to satisfy Rule

---

[9]The Court's examination of Wisconsin, Texas, and California state law reveals that reasonable reliance is an element of negligent misrepresentation and fraud in each state. *See generally* Mem. Op. Mar. 26, 2009 at 25-30 (discussing Wisconsin, Texas, and California law regarding fraud claims).

9(b)). Plaintiffs' negligent misrepresentation claim fails to satisfy Rule 9(b) to the same extent and for the same reasons as its fraud claim discussed above. *See* Mem. Op. July 19, 2009 at 9 (dismissing negligent misrepresentation claims asserted by the Indianapolis Life Plaintiffs for failure to satisfy Rule 9(b)). Accordingly, Plaintiffs' negligent misrepresentation claims are **DISMISSED** pursuant to Rule 9(b). Further, Plaintiffs fail to plead that the Insurance Defendants' alleged misrepresentations or omissions were reasonably relied upon, for the reasons discussed in connection with Plaintiffs' fraud claim. Accordingly, the Third Amended Complaints' negligent misrepresentation claims are also **DISMISSED** pursuant to Rule 12(b)(6).

C.    *UCL Claims*

The Court previously dismissed Plaintiffs' UCL claims against American General given that 1) the California Consumer Legal Remedies Act does not govern insurance products, 2) Plaintiffs' claims based on fraudulent business acts or practices did not plead fraud with particularity, 3) Plaintiffs' claims based on false advertising did not allege that members of the public are likely to be deceived,[10] and 4) the non-American General Plaintiffs did not have standing to assert claims against American General. Mem. Op. Mar. 11, 2009 at 27-30. The Court later dismissed all UCL claims asserted by non-Pacific Life plaintiffs against Pacific Life and Hartford due to lack of standing in its August 26, 2010 Memorandum Opinion. Mem. Op. Aug. 26, 2010 at 15-16, 27-29 (dismissing UCL claims asserted by the MacMillan Plaintiffs, the Poulsbo Plaintiffs, and the PHR Plaintiffs). In the same order, the Court dismissed the Pekerol Plaintiffs' UCL claims because 1) these Plaintiffs lacked

---

[10] The First, Second, and Third Amended Complaint specifically point to, *inter alia*, California Business and Professions Code § 17500, *et seq.*, which prohibits false advertising, as the basis for their unlawful business acts or practices claims under California Business and Professions Code § 17200. *See* FAC ¶ 249, SAC ¶ 282, and TAC ¶¶ 341-342.

standing, as the injury alleged was too speculative, 2) the California Consumer Legal Remedies Act does not govern insurance products, and 3) Plaintiffs' claims based on false advertising did not allege that members of the public are likely to be deceived. *Id.* at 17-19. The Court dismissed the Direct Electric Plaintiffs' UCL claims for the same reasons. *Id.* at 27.

The Court had opportunity to address similar claims against other Defendants in reviewing Plaintiffs' First and Second Amended Complaints. Upon review of Indianapolis Life's Motion to Dismiss, the Court dismissed the UCL claims against Indianapolis Life for the same reasons it later dismissed these claims against American General, Pacific Life, and Hartford. Mem. Op. Feb. 19, 2009 at 30-35. On repleading, the Court dismissed the UCL claim for *fraudulent* business acts or practices for failure to plead fraud with particularity. Mem. Op. July 16, 2009 at 13. The Court later determined that Rule 9(b) also applied to Plaintiffs' UCL claim for *unlawful* business acts or practices, finding:

> Rule 9(b) applies not only where a complaint specifically alleges fraud as an essential element of a claim, but also when a claim is grounded in fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). A case is said to be "grounded in fraud" where a plaintiff alleges "a unified course of fraudulent conduct and [relies] entirely on that course of conduct as the basis of a claim." *Id.* at 1103. Claims asserting violations of California's False Advertising Law at Section 17500 are consistently found to be grounded in fraud and, thus, subject to Rule 9(b)'s heightened pleading standard. *See Kennedy v. Natural Balance Pet Foods, Inc.*, No. 07-CV-1082 H(RBB), 2007 WL 2300746, at *5-*6 (S.D. Cal. Aug. 8, 2007); *Germain v. J.C. Penney Co.*, No. CV09-2847, 2009 WL 1971336, at *4 (C.D. Cal. July 6, 2009); *Brosnan v. Tradeline Solutions, Inc.*, No. C-08-0694 JCS, 2009 WL 1604572, at*6-*7 (N.D. Cal. June 5, 2009); *Neu v. Terminix Int'l, Inc.*, No. C 07-6472 CW, 2008 WL 2951390, at *3-*4 (N.D. Cal. July 24, 2008).
>
> The Court finds the Section 17500 claims in this action to be no exception to the rule. The claims assert a unified course of fraudulent conduct and, as such, are clearly grounded in fraud. Accordingly, the claims alleged must meet the pleading requirements of Rule 9(b).

Order Dec. 22, 2009 at 3. The Court proceeded to dismiss Plaintiffs' claim for deceptive

advertisements and statements in violation of California Business and Professions Code § 17500 for failure to plead fraud with particularity. *Id.*

The Third Amended Complaint does add additional allegations regarding damages and how the Insurance Defendants allegedly deceived the public, and it also adds clarification regarding which Plaintiffs assert UCL claims against which Defendants. However, the Court previously found that the Third Amended Complaint does not allege fraud with particularity, *see* Section III(A), *supra*, and for the same reasons Plaintiffs' UCL claims must also fail. The Court reaffirms its prior finding that Plaintiffs' unlawful business practices claims and fraudulent business practices claims are grounded in fraud and therefore subject to Rule 9(b). Given that the Court has already dismissed Plaintiffs' fraud claims under Rule 9(b), Counts Four (unlawful business acts and practices under Section 17200) and Five (fraudulent business acts and practices under Section 17200) must also be and are hereby **DISMISSED** for failure to plead fraud with particularity.

D.      *Civil Conspiracy Claims*

Civil conspiracy is a derivative tort in that a defendant's liability for conspiracy depends on participation in some underlying tort. *See, e.g., Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).[11] Because the Court has already dismissed all other tort claims in this case, Plaintiffs' civil conspiracy claims must also be dismissed under Rule 12(b)(6) for lack of an underlying tort. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex. 1997). Accordingly, Count One (civil conspiracy) of the

---

[11]Wisconsin and California substantive law concerning civil conspiracy similarly require an underlying tort. *See, e.g., Doctors' Co. v. Super. Ct.*, 775 P.2d 508, 510 (Cal. 1989) (superseded by statute on other grounds) (no civil conspiracy cause of action without underlying "civil wrong"); *Taurus IP v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 924 (W.D. Wis. 2007) (noting similarity between Texas and Wisconsin law regarding civil conspiracy and requirement of underlying tort).

Third Amended Complaint is hereby **DISMISSED**.

E.      *Unjust Enrichment Claims*

Plaintiffs' unjust enrichment claim states that "Plaintiffs conferred significant benefits upon Defendants in the form of insurance premiums, commissions, and other fees. Defendants knowingly accepted, appreciated, and retained those benefits under circumstances such that it would be inequitable to retain such benefits without payments." TAC ¶¶ 354-355. The Court previously found that, because a contract exists, "the success of [the Pekerol Plaintiffs'] unjust enrichment claim rises and falls with the fraud claim" such that "the attempt to plead 'unjust enrichment' as a separate claim adds nothing." Mem. Op. Aug. 26, 2010 at 19-20. This Court reasoned that if the Pekerol Plaintiffs succeed on their fraud claim, they may seek restitution, which is synonymous with unjust enrichment, as a remedy, such that "[t]here is no need for a separately labeled claim for the same relief based on the same underlying allegations." *Id.* at 20. The Court also dismissed the MacMillian Plaintiffs', the Poulsbo Plaintiffs', the PHR Plaintiffs', and the American General Plaintiffs' unjust enrichment claims under the same reasoning. *Id.* at 28-29; Mem. Op. Mar. 11, 2009 at 30-32.[12] Plaintiffs' synopses merely argue that their fraud claims and unjust enrichment claims are not duplicative, *see* Pacific Life Synopsis at 5 and Hartford Synopsis at 5, and do not convince the Court that its prior rulings regarding Plaintiffs' unjust enrichment claims were in error. As such, for the reasons stated in its March 11, 2009 and August 26, 2010 Memorandum Opinions, Count Six

---

[12]Plaintiffs' unjust enrichment claims against American General were previously dismissed with prejudice. Mem. Op. Mar. 11, 2009 at 32.

(unjust enrichment) of the Third Amended Complaint is hereby **DISMISSED**.[13]

## III.

## CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs have failed to allege sufficient facts to overcome the previously-stated grounds for dismissal. Accordingly, with respect to Plaintiffs' Third Amended Complaint, Count One (civil conspiracy) is hereby **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6); Count Two (fraud) is **DISMISSED WITH PREJUDICE** pursuant to Rule 9(b) and Rule 12(b)(6); Count Three (negligent misrepresentation) is **DISMISSED WITH PREJUDICE** pursuant to Rule 9(b) and Rule 12(b)(6); Count Four (unlawful business practices) and Count Five (fraudulent business practices) are **DISMISSED WITH PREJUDICE** pursuant to Rule 9(b); and Count Six (unjust enrichment) is **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) and Rule 9(b).

Normally the Court will allow a plaintiff the opportunity to amend where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995); *see also Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be

---

[13]The Court previously dismissed the Direct Electric Plaintiffs' unjust enrichment claim for failure to allege that it would be inequitable for Pacific Life to retain a benefit without payment, applying Wisconsin law. Mem. Op. Aug. 26, 2010 at 27-28. The Third Amended Complaint now alleges that Hartford retained a benefit under inequitable circumstances. TAC ¶¶ 353-55. However, although unjust enrichment is an independent cause of action under Wisconsin law, *Lawlis v. Thompson*, 405 N.W. 2d 317, 319-20 (Wis. 1987), the Court finds that this claim is grounded in fraud as it is based on the same misrepresentations and omissions underlying the Direct Electric Defendants' fraud claims. Accordingly, the Direct Electric Plaintiffs' unjust enrichment claim, and the unjust enrichment claims asserted by all remaining Plaintiffs, are similarly subject to Rule 9(b) and must be dismissed for failure to plead fraud with particularity.

granted"); *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (while court may dismiss a claim for failing to comply with Rule 9(b), "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so").

In this case, Plaintiffs have had multiple opportunities to state a claim, including their Third Amended Complaint, filed after the Court's March 11, 2009 decision detailing the deficiencies in the pleadings as to American General and the Court's August 26, 2010 decision detailing the deficiencies in the pleadings as to Hartford and Pacific Life. Further, the remaining Plaintiffs have also had the benefit of the Court's previous opinions and the findings therein with respect to Indianapolis Life and the Consultant Defendants. Under these circumstances, the Court determines that allowing further amendment will be futile and cause needless delay. Accordingly, in its discretion, the Court determines that further amendment of the pleadings is not warranted. As such Plaintiffs' claims against American General, Hartford, and Pacific Life are hereby **DISMISSED WITH PREJUDICE**. Given that the Court has now dismissed all claims filed by all Plaintiffs in this case, Plaintiffs' Third Amended Complaint is hereby **DISMISSED**.

SO ORDERED.

SIGNED: August 11, 2011.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE